| | | |
|---|---|---|
| | | Report, # 2 Exhibit Exhibit B - Cited Excerpts of Professor Hemphill's Deposition, # 3 Exhibit Exhibit C - Cited Excerpts of Professor Hemphill's Reply Report, # 4 Exhibit Exhibit D - Cited Excerpts of Susan McDougal's Deposition).(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 631 | ***SELECTED PARTIES*** MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Certain Expert Testimony of Professor C. Scott Hemphill*. Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio.Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 632 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 631 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Certain Expert Testimony of Professor C. Scott Hemphill.* . Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio. (Attachments: # 1 Exhibit Exhibit A - Cited Excerpts of Professor Hemphill's Opening Report, # 2 Exhibit Exhibit B - Cited Excerpts of Professor Hemphill's Deposition, # 3 Exhibit Exhibit C - Cited Excerpts of Professor Hemphill's Reply Report, # 4 Exhibit Exhibit D - Cited Excerpts of Susan McDougal's Deposition)Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 633 | MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Testimony of Plaintiffs' FDA Rebuttal Expert Mansoor Khan*. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC..(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 634 | MEMORANDUM OF LAW in Support re: 633 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Testimony of Plaintiffs' FDA Rebuttal Expert Mansoor Khan*. . Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC..(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 635 | DECLARATION of Steven A. Reed in Support re: 633 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Testimony of Plaintiffs' FDA Rebuttal Expert Mansoor Khan*.. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit 1 - Expert Reply Report of Mansoor A. Khan R.Ph., Ph.D., # 2 Exhibit 2 - Transcript of the Deposition of Mansoor A. Khan, R.Ph., Ph.D. (Excerpted), # 3 Exhibit 3 - Plaintiffs' Disclosure of Reply Experts).(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 636 | ***SELECTED PARTIES*** MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Testimony of Plaintiffs' FDA Rebuttal Expert Mansoor Khan*. Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of |

|  |  | Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio.Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |
|---|---|---|
| 11/29/2021 | 637 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 636 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Testimony of Plaintiffs' FDA Rebuttal Expert Mansoor Khan*. . Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio. Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 638 | ***SELECTED PARTIES***DECLARATION of Steven A. Reed in Support re: 636 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Testimony of Plaintiffs' FDA Rebuttal Expert Mansoor Khan*.. Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio. (Attachments: # 1 Exhibit 1 - Expert Reply Report of Mansoor A. Khan R.Ph., Ph.D., # 2 Exhibit 2 - Transcript of the Deposition of Mansoor A. Khan, R.Ph., Ph.D. (Excerpted), # 3 Exhibit 3 - Plaintiffs' Disclosure of Reply Experts)Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 639 | MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Strike Improperly Designated Testimony*. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC.. (Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 640 | MEMORANDUM OF LAW in Support re: 639 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Strike Improperly Designated Testimony*. . Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC..(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 641 | DECLARATION of Nicholas A. Passaro in Support re: 639 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Strike Improperly Designated Testimony*.. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A - Email Correspondence Between the Parties, # 2 Exhibit B - Plaintiffs' Final Witness List, # 3 Exhibit C - Excerpts of the Deposition of Christopher Lau).(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 642 | ***SELECTED PARTIES*** MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Strike Improperly Designated Testimony*. Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio.Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |

| 11/29/2021 | 643 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 642 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Strike Improperly Designated Testimony*. . Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio. Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |
|---|---|---|
| 11/29/2021 | 644 | ***SELECTED PARTIES***DECLARATION of Nicholas A. Passaro in Support re: 642 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Strike Improperly Designated Testimony*.. Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio. (Attachments: # 1 Exhibit A - Email Correspondence Between the Parties, # 2 Exhibit B - Plaintiffs' Final Witness List, # 3 Exhibit C - Excerpts of the Deposition of Christopher Lau)Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 645 | REPLY MEMORANDUM OF LAW in Support re: 633 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Testimony of Plaintiffs' FDA Rebuttal Expert Mansoor Khan*. . Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit 1 - Cited Excerpts of Deposition Transcript of Sheldon Bradshaw, # 2 Exhibit 2 - Cited Excerpts of Deposition Transcript of Mansoor Khan). (Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 646 | ORDER: It is hereby ORDERED that the Court reserves decision on any objections presented by Shkreli other than his objections regarding authenticity. IT IS FURTHER ORDERED that the objection to the admissibility of GX 5006 and 5007 on the ground that the plaintiffs have not shown they are authentic transcripts of Retrophin investor calls made while Shkreli was CEO of Retrophin is denied. IT IS FURTHER ORDERED that the objection to the admissibility of GX 1338 on the ground that the plaintiffs have not shown that it is a text sent by Shkreli to co-defendant Mulleady is denied. The text chain begins with "its shkreli" and is sent from a number that Mulleady has identified as belonging to Shkreli. (As further set forth in this Order.) SO ORDERED. (Signed by Judge Denise L. Cote on 11/29/2021) (vfr) (Entered: 11/29/2021) |
| 11/29/2021 | 647 | ***SELECTED PARTIES*** REPLY MEMORANDUM OF LAW in Support re: 636 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Testimony of Plaintiffs' FDA Rebuttal Expert Mansoor Khan*. . Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio. (Attachments: # 1 Exhibit 1 - Cited Excerpts of Deposition Transcript of Sheldon Bradshaw, # 2 Exhibit 2 - Cited Excerpts of Deposition Transcript |

|  |  | of Mansoor Khan)Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |
|---|---|---|
| 11/29/2021 | 648 | REPLY MEMORANDUM OF LAW in Support re: 629 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Certain Expert Testimony of Professor C. Scott Hemphill*. . Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC..(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 649 | MOTION in Limine */ Notice Of Defendant Kevin Mulleadys Motion In Limine To Exclude Certain Of Plaintiffs Proposed Trial Exhibits And Deposition Testimony As Against Mr. Mulleady*. Document filed by Kevin Mulleady(individually)..(David, Kenneth) (Entered: 11/29/2021) |
| 11/29/2021 | 650 | MEMORANDUM OF LAW in Support re: 649 MOTION in Limine */ Notice Of Defendant Kevin Mulleadys Motion In Limine To Exclude Certain Of Plaintiffs Proposed Trial Exhibits And Deposition Testimony As Against Mr. Mulleady*. . Document filed by Kevin Mulleady(individually)..(David, Kenneth) (Entered: 11/29/2021) |
| 11/29/2021 | 651 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 11/29/2021) |
| 11/29/2021 | 652 | ***SELECTED PARTIES***PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC.Motion or Order to File Under Seal: 487 .(Casey, Christopher) (Entered: 11/29/2021) |
| 11/29/2021 | 653 | PRETRIAL MEMORANDUM. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 11/29/2021) |
| 11/29/2021 | 654 | ***SELECTED PARTIES***PRETRIAL MEMORANDUM. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC.Motion or Order to File Under Seal: 487 .(Casey, Christopher) (Entered: 11/29/2021) |
| 11/29/2021 | 655 | REPLY MEMORANDUM OF LAW in Support re: 639 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Strike Improperly Designated Testimony*. . Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 11/29/2021) |
| 11/29/2021 | 656 | MOTION in Limine *Martin Shkreli's Notice of Motion in Limine to Preclude Evidence Relating to Retrophin*. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 11/29/2021) |

| 11/29/2021 | 657 | MEMORANDUM OF LAW in Support re: 656 MOTION in Limine *Martin Shkreli's Notice of Motion in Limine to Preclude Evidence Relating to Retrophin*. . Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 11/29/2021) |
| --- | --- | --- |
| 11/29/2021 | 658 | MOTION in Limine *Martin Shkreli's Notice of Motion in Limine to Exclude Certain of Plaintiffs' Proposed Trial Exhibits and Deposition Testimony as Against Mr. Shkreli*. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 11/29/2021) |
| 11/29/2021 | 659 | MEMORANDUM OF LAW in Support re: 658 MOTION in Limine *Martin Shkreli's Notice of Motion in Limine to Exclude Certain of Plaintiffs' Proposed Trial Exhibits and Deposition Testimony as Against Mr. Shkreli*. . Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 11/29/2021) |
| 11/29/2021 | 660 | ***SELECTED PARTIES***PRETRIAL MEMORANDUM. Document filed by Kevin Mulleady(individually), ASD Healthcare, AmerisourceBergen Corporation, Cardinal Health, Inc., CaremarkPCS Health, LLC, Cerovene, Inc., Commonwealth of Pennsylvania, Commonwealth of Virginia, Dr. Reddys Laboratories, Inc., FERA Pharmaceuticals, LLC, Federal Trade Commission, Infectious Diseases Society of America, Medisca, Inc., Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(as an owner and director of Phoenixus AG), Optime Care, Inc., Phoenixus AG, Pisgah Labs Inc., Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Teva Pharmaceuticals USA, Inc., Vyera Pharmaceuticals, LLC.Motion or Order to File Under Seal: 487 .(David, Kenneth) (Entered: 11/29/2021) |
| 11/29/2021 | 661 | PRETRIAL MEMORANDUM. Document filed by Kevin Mulleady(individually).. (David, Kenneth) (Entered: 11/29/2021) |
| 11/29/2021 | 662 | ***SELECTED PARTIES***PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Document filed by Kevin Mulleady(individually), ASD Healthcare, AmerisourceBergen Corporation, Cardinal Health, Inc., CaremarkPCS Health, LLC, Cerovene, Inc., Commonwealth of Pennsylvania, Commonwealth of Virginia, Dr. Reddys Laboratories, Inc., FERA Pharmaceuticals, LLC, Federal Trade Commission, Infectious Diseases Society of America, Medisca, Inc., Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(as an owner and director of Phoenixus AG), Optime Care, Inc., Phoenixus AG, Pisgah Labs Inc., Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Teva Pharmaceuticals USA, Inc., Vyera Pharmaceuticals, LLC.Motion or Order to File Under Seal: 487 .(David, Kenneth) (Entered: 11/29/2021) |
| 11/29/2021 | 663 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Document filed by Kevin Mulleady(individually)..(David, Kenneth) (Entered: 11/29/2021) |
| 11/29/2021 | 664 | ***SELECTED PARTIES***PRETRIAL MEMORANDUM. Document filed by State of New York, Commonwealth of Pennsylvania, State of Ohio, Commonwealth of Virginia, State of North Carolina, State of California, State of Illinois, ASD Healthcare, |

|  |  | AmerisourceBergen Corporation, Cardinal Health, Inc., CaremarkPCS Health, LLC, Cerovene, Inc., Dr. Reddys Laboratories, Inc., FERA Pharmaceuticals, LLC, Federal Trade Commission, Infectious Diseases Society of America, Medisca, Inc., Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Optime Care, Inc., Phoenixus AG, Pisgah Labs Inc., Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), Teva Pharmaceuticals USA, Inc., Vyera Pharmaceuticals, LLC.Motion or Order to File Under Seal: 487 .(Kasha, Jeremy) (Entered: 11/29/2021) |
|---|---|---|
| 11/29/2021 | 665 | PRETRIAL MEMORANDUM. Document filed by Commonwealth of Pennsylvania, Commonwealth of Virginia, State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio..(Kasha, Jeremy) (Entered: 11/29/2021) |
| 11/29/2021 | 666 | ***SELECTED PARTIES***PROPOSED PRE-TRIAL ORDER. Document filed by Federal Trade Commission, Commonwealth of Pennsylvania, Commonwealth of Virginia, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B-1, # 3 Exhibit B-2, # 4 Exhibit B-2 (Shkreli), # 5 Exhibit C-1, # 6 Exhibit C-2, # 7 Exhibit D-1, # 8 Exhibit D-2) Motion or Order to File Under Seal: 580 .(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 667 | PROPOSED PRE-TRIAL ORDER. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B-1, # 3 Exhibit B-2, # 4 Exhibit B-2 (Shkreli), # 5 Exhibit C-1, # 6 Exhibit C-2, # 7 Exhibit D-1, # 8 Exhibit D-2).(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 668 | BRIEF *Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion in Limine to Exclude Certain Testimony of Defendants' Expert John S. Russell*. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC..(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 669 | ***SELECTED PARTIES*** BRIEF *Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion in Limine to Exclude Certain Testimony of Defendants' Expert John S. Russell*. Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio.Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 670 | BRIEF *Defendants' Opposition to Plaintiffs' Motion in Limine to Exclude the Expert Testimony of Sheldon Bradshaw*. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC..(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 671 | PRETRIAL MEMORANDUM. Document filed by Federal Trade Commission. (Attachments: # 1 Appendix A).(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 672 | ***SELECTED PARTIES*** BRIEF *Defendants' Opposition to Plaintiffs' Motion in Limine to Exclude the Expert Testimony of Sheldon Bradshaw*. Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth |

| | | |
|---|---|---|
| | | of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio.Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 673 | ***SELECTED PARTIES***PRETRIAL MEMORANDUM. Document filed by Federal Trade Commission, Commonwealth of Pennsylvania, Commonwealth of Virginia, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Appendix A)Motion or Order to File Under Seal: 580 .(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 674 | BRIEF *Defendants' Opposition to Plaintiffs' Motion In Limine to Preclude 30(b)(6) Testimony Not Based on Personal Knowledge*. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC..(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 675 | PRETRIAL MEMORANDUM. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 676 | ***SELECTED PARTIES*** BRIEF *Defendants' Opposition to Plaintiffs' Motion In Limine to Preclude 30(b)(6) Testimony Not Based on Personal Knowledge*. Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio.Motion or Order to File Under Seal: 487 .(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 677 | BRIEF *Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion in Limine to Preclude Certain Testimony of Defendants' Expert Dr. Anupam B. Jena*. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A - Cited Excerpts of Expert Report of Anupam B. Jena, M.D., Ph.D., # 2 Exhibit B - Cited Excerpts from Dr. Jena's Deposition Transcript, # 3 Exhibit C - Cited Excerpts of Expert Report of C. Scott Hemphill, Ph.D., J.D., # 4 Exhibit D - Cited Excerpts of Proving Antitrust Damages, # 5 Exhibit E - Mitani (2020) Small Data Challenges of Studying Rare Diseases).(Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 678 | MOTION in Limine *to Preclude 30(b)(6) Testimony Not Based on Personal Knowledge*. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 679 | MEMORANDUM OF LAW in Support re: 678 MOTION in Limine *to Preclude 30(b)(6) Testimony Not Based on Personal Knowledge*. . Document filed by Federal Trade Commission. (Attachments: # 1 Appendix A).(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 680 | ***SELECTED PARTIES*** BRIEF *Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion in Limine to Preclude Certain Testimony of Defendants' Expert Dr. Anupam B. Jena*. Document filed by Vyera Pharmaceuticals, LLC, Phoenixus AG, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), |

| | | |
|---|---|---|
| | | Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio. (Attachments: # 1 Exhibit A - Cited Excerpts of Expert Report of Anupam B. Jena, M.D., Ph.D., # 2 Exhibit B - Cited Excerpts from Dr. Jena's Deposition Transcript, # 3 Exhibit C - Cited Excerpts of Expert Report of C. Scott Hemphill, Ph.D., J.D., # 4 Exhibit D - Cited Excerpts of Proving Antitrust Damages, # 5 Exhibit E - Mitani (2020) Small Data Challenges of Studying Rare Diseases)Motion or Order to File Under Seal: 487 . (Reed, Steven) (Entered: 11/29/2021) |
| 11/29/2021 | 681 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 678 MOTION in Limine *to Preclude 30(b)(6) Testimony Not Based on Personal Knowledge*. . Document filed by Federal Trade Commission, Commonwealth of Pennsylvania, Commonwealth of Virginia, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Appendix A)Motion or Order to File Under Seal: 580 .(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 682 | PROPOSED ORDER. Document filed by Federal Trade Commission. Related Document Number: 678 ..(Meier, Markus) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 11/29/2021) |
| 11/29/2021 | 683 | MOTION in Limine *to Exclude the Expert Testimony of Sheldon Bradshaw*. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 684 | MEMORANDUM OF LAW in Support re: 683 MOTION in Limine *to Exclude the Expert Testimony of Sheldon Bradshaw*. . Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C).(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 685 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 683 MOTION in Limine *to Exclude the Expert Testimony of Sheldon Bradshaw*. . Document filed by Federal Trade Commission, Commonwealth of Pennsylvania, Commonwealth of Virginia, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)Motion or Order to File Under Seal: 580 .(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 686 | PROPOSED ORDER. Document filed by Federal Trade Commission. Related Document Number: 683 ..(Meier, Markus) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 11/29/2021) |
| 11/29/2021 | 687 | MOTION in Limine *to Exclude Certain Expert Testimony of Dr. Anupam B. Jena*. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 688 | MOTION in Limine *to Exclude Certain Expert Testimony of Dr. Anupam B. Jena*. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |

| 11/29/2021 | 689 | MEMORANDUM OF LAW in Support re: 688 MOTION in Limine *to Exclude Certain Expert Testimony of Dr. Anupam B. Jena.* . Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D). (Meier, Markus) (Entered: 11/29/2021) |
|---|---|---|
| 11/29/2021 | 690 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 688 MOTION in Limine *to Exclude Certain Expert Testimony of Dr. Anupam B. Jena.* . Document filed by Federal Trade Commission, Commonwealth of Pennsylvania, Commonwealth of Virginia, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)Motion or Order to File Under Seal: 580 . (Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 691 | PROPOSED ORDER. Document filed by Federal Trade Commission. Related Document Number: 688 ..(Meier, Markus) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 11/29/2021) |
| 11/29/2021 | 692 | MOTION in Limine *to Exclude Certain Testimony of John S. Russell.* Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 693 | MOTION in Limine *to Exclude Certain Testimony of John S. Russell.* Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 694 | MEMORANDUM OF LAW in Support re: 693 MOTION in Limine *to Exclude Certain Testimony of John S. Russell.* . Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C).(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 695 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 693 MOTION in Limine *to Exclude Certain Testimony of John S. Russell.* . Document filed by Federal Trade Commission, Commonwealth of Pennsylvania, Commonwealth of Virginia, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)Motion or Order to File Under Seal: 580 .(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 696 | PROPOSED ORDER. Document filed by Federal Trade Commission. Related Document Number: 693 ..(Meier, Markus) **Proposed Order to be reviewed by Clerk's Office staff.** (Entered: 11/29/2021) |
| 11/29/2021 | 697 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 698 | ***SELECTED PARTIES***PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Document filed by Federal Trade Commission, Commonwealth of Pennsylvania, Commonwealth of Virginia, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a |

| | | |
|---|---|---|
| | | former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC.Motion or Order to File Under Seal: 580 .(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 699 | CERTIFICATE OF SERVICE of Pretrial filings served on Vyera Pharmaceuticals, LLC, Phoenixus AG, Martin Shkreli, Kevin Mulleady on October 20. Service was made by E-Mail. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 700 | MEMORANDUM OF LAW in Opposition re: 639 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Strike Improperly Designated Testimony*. . Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J).(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 701 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 639 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Strike Improperly Designated Testimony*. . Document filed by Federal Trade Commission, Commonwealth of Pennsylvania, Commonwealth of Virginia, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)Motion or Order to File Under Seal: 580 .(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 702 | MEMORANDUM OF LAW in Opposition re: 658 MOTION in Limine *Martin Shkreli's Notice of Motion in Limine to Exclude Certain of Plaintiffs' Proposed Trial Exhibits and Deposition Testimony as Against Mr. Shkreli*., 649 MOTION in Limine / *Notice Of Defendant Kevin Mulleadys Motion In Limine To Exclude Certain Of Plaintiffs Proposed Trial Exhibits And Deposition Testimony As Against Mr. Mulleady*. . Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 703 | MEMORANDUM OF LAW in Opposition re: 629 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Certain Expert Testimony of Professor C. Scott Hemphill*. . Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A).(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 704 | MEMORANDUM OF LAW in Opposition re: 656 MOTION in Limine *Martin Shkreli's Notice of Motion in Limine to Preclude Evidence Relating to Retrophin*. . Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 705 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 629 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Certain Expert Testimony of Professor C. Scott Hemphill*. . Document filed by Federal Trade Commission, Commonwealth of Pennsylvania, Commonwealth of Virginia, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A)Motion or Order to File Under Seal: 580 .(Meier, Markus) (Entered: 11/29/2021) |

| 11/29/2021 | 706 | MEMORANDUM OF LAW in Opposition re: 633 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Testimony of Plaintiffs' FDA Rebuttal Expert Mansoor Khan.* . Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A - Excerpts of Deposition of Sheldon Bradshaw.(Meier, Markus) (Entered: 11/29/2021) |
|---|---|---|
| 11/29/2021 | 707 | REPLY MEMORANDUM OF LAW in Support re: 683 MOTION in Limine *to Exclude the Expert Testimony of Sheldon Bradshaw*. . Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 708 | ***SELECTED PARTIES*** REPLY MEMORANDUM OF LAW in Support re: 683 MOTION in Limine *to Exclude the Expert Testimony of Sheldon Bradshaw*. Document filed by Federal Trade Commission, Commonwealth of Pennsylvania, Commonwealth of Virginia, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. Motion or Order to File Under Seal: 580 .(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 709 | REPLY MEMORANDUM OF LAW in Support re: 688 MOTION in Limine *to Exclude Certain Expert Testimony of Dr. Anupam B. Jena*. . Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 710 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 633 MOTION in Limine *Defendants' Notice of Joint Motion in Limine to Exclude Testimony of Plaintiffs' FDA Rebuttal Expert Mansoor Khan*. . Document filed by Federal Trade Commission, Commonwealth of Pennsylvania, Commonwealth of Virginia, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A - Excerpts of Deposition of Sheldon Bradshaw)Motion or Order to File Under Seal: 580 . (Meier, Markus) (Entered: 11/29/2021) |
| 11/29/2021 | 711 | REPLY MEMORANDUM OF LAW in Support re: 693 MOTION in Limine *to Exclude Certain Testimony of John S. Russell*. . Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B).(Meier, Markus) (Entered: 11/29/2021) |
| 11/30/2021 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER. Document No. 686 Proposed Order 682 Proposed Order 691 Proposed Order 696 Proposed Order was reviewed and approved as to form. (km)** (Entered: 11/30/2021) |
| 11/30/2021 | 712 | LETTER addressed to Judge Denise L. Cote from Steven A. Reed dated November 30, 2021 re: Defendants' opposition to Plaintiffs' motion to quash (ECF No. 615). Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC..(Reed, Steven) (Entered: 11/30/2021) |
| 11/30/2021 | 713 | LETTER MOTION for Leave to File Sealed Pretrial Memorandum with Correct Access Permissions *(to replace or correct ECF No. 664)* addressed to Judge Denise L. Cote from Jeremy Kasha dated Nov. 30, 2021. Document filed by State of New York..(Kasha, Jeremy) (Entered: 11/30/2021) |

| 11/30/2021 | 714 | MOTION for Sean P. McConnell to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25399682. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Martin Shkreli(individually). (Attachments: # 1 Declaration, # 2 Text of Proposed Order Proposed Order).(McConnell, Sean) (Entered: 11/30/2021) |
| --- | --- | --- |
| 11/30/2021 | 715 | ORDER terminating 713 Letter Motion for Leave to File Document. The Clerk of Court shall restrict access to #664 to only plaintiffs and defendants. (Signed by Judge Denise L. Cote on 11/30/2021) (vfr) (Entered: 11/30/2021) |
| 11/30/2021 | 716 | LETTER MOTION for Extension of Time *for the parties to submit to the Court any unresolved disputes regarding the Individual Defendants' motions in limine to exclude as hearsay certain statements of Vyera employees offered by Plaintiffs* addressed to Judge Denise L. Cote from Kenneth R. David dated November 30, 2021. Document filed by Kevin Mulleady(individually)..(David, Kenneth) (Entered: 11/30/2021) |
| 11/30/2021 | 717 | ORDER granting 716 Letter Motion for Extension of Time. Granted. (Signed by Judge Denise L. Cote on 11/30/2021) (vfr) (Entered: 11/30/2021) |
| 12/01/2021 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 714 MOTION for Sean P. McConnell to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-25399682. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 12/01/2021) |
| 12/01/2021 | 718 | ORDER granting 714 Motion for Sean P. McConnell to Appear Pro Hac Vice. (HEREBY ORDERED by Judge Denise L. Cote)(Text Only Order) (jwh) (Entered: 12/01/2021) |
| 12/01/2021 | 719 | LETTER MOTION for Extension of Time *to present the Court with exemplars of 30(b)(6) testimony based on personal knowledge (unopposed)* addressed to Judge Denise L. Cote from Steven A. Reed dated December 1, 2021. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC..(Reed, Steven) (Entered: 12/01/2021) |
| 12/01/2021 | 720 | ORDER granting 719 Letter Motion for Extension of Time. Granted. (Signed by Judge Denise L. Cote on 12/1/2021) (vfr) (Entered: 12/01/2021) |
| 12/01/2021 | 721 | LETTER MOTION for Extension of Time *to raise with the Court any disputes regarding the testimony of Sheldon Bradshaw (unopposed)* addressed to Judge Denise L. Cote from Steven A. Reed dated December 1, 2021. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC..(Reed, Steven) (Entered: 12/01/2021) |
| 12/01/2021 | 722 | ORDER granting 721 Letter Motion for Extension of Time. Granted. (Signed by Judge Denise L. Cote on 12/1/2021) (mml) (Entered: 12/02/2021) |
| 12/05/2021 | 723 | NOTICE OF CHANGE OF ADDRESS by Eric M. Creizman on behalf of Optime Care, Inc.. New Address: Armstrong Teasdale LLP, 7 Times Square, Fl. 44, New York, New York, USA 10036, (212) 209-4358..(Creizman, Eric) (Entered: 12/05/2021) |
| 12/06/2021 | 724 | LETTER MOTION to Seal *Application for Redaction of Highly Confidential Materials* addressed to Judge Denise L. Cote from Stephen M. Faraci, Sr. dated 12/6/2021. Document filed by Infectious Diseases Society of America. (Attachments: # 1 Exhibit A). (Faraci, Stephen) (Entered: 12/06/2021) |
| 12/06/2021 | 725 | LETTER MOTION to Seal *Courtroom and Exhibits* addressed to Judge Denise L. Cote from Eric D. Wong dated December 6, 2021. Document filed by Dr. Reddys Laboratories, Inc...(Wong, Eric) (Entered: 12/06/2021) |
| 12/06/2021 | 726 | ***SELECTED PARTIES***DECLARATION of Eric D. Wong in Support re: 725 LETTER MOTION to Seal *Courtroom and Exhibits* addressed to Judge Denise L. Cote |

| | | |
|---|---|---|
| | | from Eric D. Wong dated December 6, 2021.. Document filed by Dr. Reddys Laboratories, Inc., Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Phoenixus AG, Martin Shkreli (as an owner and former director of Phoenixus AG), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A DX-137, # 2 Exhibit B DX-370, # 3 Exhibit C DX-370a, # 4 Exhibit D DX-370b, # 5 Exhibit E GX 3380, # 6 Exhibit F GX 3387, # 7 Exhibit G GX 3388, # 8 Exhibit H GX 3388, # 9 Exhibit I GX3262, # 10 Exhibit J GX3381, # 11 Exhibit K GX3382, # 12 Exhibit L GX3383, # 13 Exhibit M GX3385, # 14 Exhibit N GX3386, # 15 Exhibit O GX3399, # 16 Exhibit P GX3498, # 17 Exhibit Q GX8009, # 18 Exhibit R Mukhopadhay Dep Transcript)Motion or Order to File Under Seal: 725 .(Wong, Eric) (Entered: 12/06/2021) |
| 12/06/2021 | 727 | LETTER addressed to Judge Denise L. Cote from John Kokkinen dated December 6, 2021 re: Requesting Redaction or Sealing. Document filed by Optum, Inc...(Goldberger, Daniel) (Entered: 12/06/2021) |
| 12/06/2021 | 728 | LETTER MOTION to Seal addressed to Judge Denise L. Cote from Joseph DeDonato, Esq. dated December 6, 2021. Document filed by Cerovene, Inc.. (Attachments: # 1 Text of Proposed Order, # 2 Affidavit of Manish Shah, # 3 Affidavit of Ray DiFalco, # 4 Affidavit of Joseph DeDonato, Esq., # 5 Exhibit A (fully redacted), # 6 Exhibit B (fully redacted)).(DeDonato, Joseph) (Entered: 12/06/2021) |
| 12/06/2021 | 729 | LETTER MOTION to Seal *the courtroom during trial to prevent the public disclosure of information* addressed to Judge Denise L. Cote from Christopher T. Holding dated December 6, 2021. Document filed by Teva Pharmaceuticals USA, Inc...(Holding, Christopher) (Entered: 12/06/2021) |
| 12/06/2021 | 730 | LETTER MOTION for Leave to File Amended Joint Pretrial Order *to Add Trial Counsel* addressed to Judge Denise L. Cote from Christopher H. Casey dated December 6, 2021. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 12/06/2021) |
| 12/06/2021 | 731 | LETTER MOTION to Seal addressed to Judge Denise L. Cote from Joseph DeDonato, Esq. dated December 6, 2021. Document filed by Cerovene, Inc.. (Attachments: # 1 Text of Proposed Order, # 2 Affidavit of Manish Shah, # 3 Affidavit of Ray DiFalco, # 4 Affidavit of Joseph DeDonato, Esq., # 5 Exhibit A (redacted), # 6 Exhibit B (redacted)). (DeDonato, Joseph) (Entered: 12/06/2021) |
| 12/06/2021 | 732 | LETTER MOTION to Seal *Courtroom* addressed to Judge Denise L. Cote from Irving Wiesen dated 12/6/21. Document filed by Medisca, Inc.. (Attachments: # 1 Affidavit Declaration of Natalie Avram).(Wiesen, Irving) (Entered: 12/06/2021) |
| 12/06/2021 | 733 | LETTER MOTION to Seal *the courtroom (or otherwise redact certain information) to preclude the public disclosure of confidential information contained in evidence that may be used at trial,* addressed to Judge Denise L. Cote from Rosa M. Morales, Esq. dated 12/6/2021. Document filed by Cardinal Health, Inc.. (Attachments: # 1 Ex. 1 (placeholder), # 2 Ex. 2 (placeholder), # 3 Ex. 3 (placeholder), # 4 Ex. 4 (placeholder), # 5 Ex. 5 (placeholder), # 6 Ex. 6 (placeholder), # 7 Ex. 7 (placeholder), # 8 Ex. 8 (placeholder)).(Morales, Rosa) (Entered: 12/06/2021) |
| 12/06/2021 | 734 | LETTER MOTION to Seal addressed to Judge Denise L. Cote from WENDY R. STEIN, Esq. dated 12/6/2021. Document filed by Pisgah Labs Inc...(Stein, Wendy) (Entered: 12/06/2021) |

| 12/06/2021 | 735 | LETTER addressed to Judge Denise L. Cote from Stacey Anne Mahoney dated December 6, 2021 re: Correspondence from foreign third party, RL Fine Chem, Pvt. Ltd.. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A - Emails from Mr. Jacob Mathew and Mr. Ramachandra).(Mahoney, Stacey) (Entered: 12/06/2021) |
|---|---|---|
| 12/06/2021 | 736 | ***SELECTED PARTIES***REDACTION to 734 LETTER MOTION to Seal addressed to Judge Denise L. Cote from WENDY R. STEIN, Esq. dated 12/6/2021. by Pisgah Labs Inc. (Attachments: # 1 Exhibit A Part 2 of 2 Sealed, # 2 Exhibit B Sealed, # 3 Exhibit C Unredacted, # 4 Exhibit C Highlighted, # 5 Exhibit D Unredacted, # 6 Exhibit D Highlighted, # 7 Exhibit E Unredacted, # 8 Exhibit E Highlighted, # 9 Exhibit F Unredacted, # 10 Exhibit F Highlighted, # 11 Exhibit G Unredacted, # 12 Exhibit G Highlighted, # 13 Exhibit H Unredacted, # 14 Exhibit H Highlighted, # 15 Exhibit I Unredacted, # 16 Exhibit I Highlighted, # 17 Declaration of D. Bailey)Motion or Order to File Under Seal: 734 .(Stein, Wendy) (Entered: 12/06/2021) |
| 12/06/2021 | 737 | ***SELECTED PARTIES*** LETTER MOTION for Leave to File (under seal) exhibits in support of Movant Cardinal Health, Inc.'s motion to seal the courtroom or otherwise redact from public disclosure certain confidential information contained in evidence that may be used at the trial addressed to Judge Denise L. Cote from Rosa M. Morales, Esq. dated 12/6/2021. Document filed by Cardinal Health, Inc., Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit 1 - Cardinal Affidavit Information Redactions - Plaintiff, # 2 Exhibit 2 - Deposition of Courtney Johnson Redactions, # 3 Exhibit 3 - GX7002 Redactions - Plaintiff, # 4 Exhibit 4 - GX7003 Redactions - Plaintiff, # 5 Exhibit 5 Part 1- GX1045 Redactions - Plaintiff, # 6 Exhibit 5 Part 2- GX1045 Redactions - Plaintiff, # 7 Exhibit 6 - GX1485 Redactions - Plaintiff, # 8 Exhibit 7 - GX3327 Redactions - Plaintiff, # 9 Exhibit 8 - Defendants Designations Redactions)Motion or Order to File Under Seal: 733 .(Morales, Rosa) (Entered: 12/06/2021) |
| 12/06/2021 | 738 | NOTICE OF APPEARANCE by Scott M. Himes on behalf of Ron Tilles..(Himes, Scott) (Entered: 12/06/2021) |
| 12/06/2021 | 739 | LETTER MOTION to Seal *Letter re Sealing Non-Party Information* addressed to Judge Denise L. Cote from Markus H. Meier dated December 6, 2021. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 12/06/2021) |
| 12/06/2021 | 740 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 6, 2021 re: Sealing Non-Party Information. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A).(Meier, Markus) (Entered: 12/06/2021) |
| 12/06/2021 | 741 | FIRST LETTER MOTION to Seal *Deposition Testimony of Ron Tilles* addressed to Judge Denise L. Cote from Scott M. Himes dated December 6, 2021. Document filed by Ron Tilles..(Himes, Scott) (Entered: 12/06/2021) |
| 12/06/2021 | 742 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 6, 2021 re: Sealing Non-Party Information. Document filed by Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, Commonwealth of Pennsylvania, Martin |

| | | |
|---|---|---|
| | | Shkreli(individually), Commonwealth of Virginia, State of North Carolina, Kevin Mulleady(individually), State of California, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), Vyera Pharmaceuticals, LLC, State of Illinois, Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG. (Attachments: # 1 Exhibit A)Motion or Order to File Under Seal: 739 .(Meier, Markus) (Entered: 12/06/2021) |
| 12/06/2021 | 743 | LETTER MOTION to Seal addressed to Judge Denise L. Cote from Eric M. Creizman dated December 6, 2021. Document filed by Optime Care, Inc.. (Attachments: # 1 Exhibit A-DX-474 (Filed under Seal), # 2 Exhibit B-GX-1048 (Filed under Seal), # 3 Exhibit C-GX-3433 (Filed under Seal), # 4 Exhibit D-GX-3434 (Filed under Seal), # 5 Exhibit E-Excerpts of D. Quill Deposition (Filed under Seal)).(Creizman, Eric) (Entered: 12/06/2021) |
| 12/06/2021 | 744 | ***SELECTED PARTIES***REDACTION to 743 LETTER MOTION to Seal addressed to Judge Denise L. Cote from Eric M. Creizman dated December 6, 2021. by Optime Care, Inc., Federal Trade Commission, Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), Vyera Pharmaceuticals, LLC (Attachments: # 1 Exhibit A-DX-474, # 2 Exhibit B-GX-1048, # 3 Exhibit C-GX-3433, # 4 Exhibit D-GX-3434, # 5 Exhibit E-Excerpts of D. Quill Deposition (Filed under Seal))Motion or Order to File Under Seal: 743 .(Creizman, Eric) (Entered: 12/06/2021) |
| 12/06/2021 | 745 | LETTER MOTION to Seal *portions of exhibits and transcripts to be introduced at trial* addressed to Judge Denise L. Cote from Mariellen Dugan dated December 6, 2021. Document filed by CaremarkPCS Health, LLC..(Morrow, Philip) (Entered: 12/06/2021) |
| 12/06/2021 | 746 | DECLARATION of Philip Morrow in Support re: 745 LETTER MOTION to Seal *portions of exhibits and transcripts to be introduced at trial* addressed to Judge Denise L. Cote from Mariellen Dugan dated December 6, 2021.. Document filed by CaremarkPCS Health, LLC. (Attachments: # 1 Exhibit A - GX 3429 with Caremark's proposed redactions applied, # 2 Exhibit B - GX 3431 with Caremark's proposed redactions applied, # 3 Exhibit C - Wessels Transcript with Caremark's proposed redactions applied, # 4 Exhibit D - Hemphill affidavit with Caremark's proposed redactions applied). (Morrow, Philip) (Entered: 12/06/2021) |
| 12/06/2021 | 747 | LETTER MOTION to Seal *Courtroom to Prevent Disclosure of Highly Confidential Third Party Business Information* addressed to Judge Denise L. Cote from Matthew S. Olesh dated December 6, 2021. Document filed by ASD Healthcare, AmerisourceBergen Corporation, Integrated Commercialization Solutions. (Attachments: # 1 Proposed Order, # 2 Declaration in Support of Motion).(Olesh, Matthew) (Entered: 12/06/2021) |
| 12/06/2021 | 748 | ***SELECTED PARTIES***DECLARATION of Philip Morrow in Support re: 745 LETTER MOTION to Seal *portions of exhibits and transcripts to be introduced at trial* addressed to Judge Denise L. Cote from Mariellen Dugan dated December 6, 2021.. Document filed by CaremarkPCS Health, LLC, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Kevin Mulleady(as an owner and director of Phoenixus AG), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit A - GX 3429 with Caremark's proposed redactions highlighted, # 2 Exhibit B - GX 3431 with Caremark's proposed redactions highlighted, # 3 Exhibit C - Wessels Transcript with Caremark's proposed redactions highlighted, # 4 Exhibit D - Hemphill affidavit with Caremark's proposed |

| | | |
|---|---|---|
| | | redactions highlighted)Motion or Order to File Under Seal: <u>745</u> .(Morrow, Philip) (Entered: 12/06/2021) |
| 12/06/2021 | <u>749</u> | LETTER MOTION to Seal *Courtroom During Trial* addressed to Judge Denise L. Cote from Paul W. Garrity dated December 6, 2021. Document filed by FERA Pharmaceuticals, LLC..(Garrity, Paul) (Entered: 12/06/2021) |
| 12/06/2021 | <u>750</u> | ***SELECTED PARTIES***DECLARATION of Paul W. Garrity in Support re: <u>749</u> LETTER MOTION to Seal *Courtroom During Trial* addressed to Judge Denise L. Cote from Paul W. Garrity dated December 6, 2021.. Document filed by FERA Pharmaceuticals, LLC, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as an owner and director of Phoenixus AG), Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. Motion or Order to File Under Seal: <u>580</u> .(Garrity, Paul) (Entered: 12/06/2021) |
| 12/07/2021 | <u>751</u> | ORDER granting <u>730</u> Letter Motion for Leave to File Document. Granted. (Signed by Judge Denise L. Cote on 12/7/2021) (vfr) (Entered: 12/07/2021) |
| 12/07/2021 | <u>752</u> | ORDER granting <u>739</u> Letter Motion to Seal. Granted. (Signed by Judge Denise L. Cote on 12/7/2021) (vfr) (Entered: 12/07/2021) |
| 12/07/2021 | <u>753</u> | JOINT MOTION for Settlement *for Entry of Stipulated Order for Permanent Injunction*. Document filed by Federal Trade Commission. (Attachments: # <u>1</u> Exhibit A).(Meier, Markus) (Entered: 12/07/2021) |
| 12/07/2021 | <u>754</u> | STIPULATED ORDER FOR PERMANENT INJUNCTION AND EQUITABLE MONETARY RELIEF: 1. The Settling Defendants stipulate that venue for this matter is proper in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c), and under Section 13(b) of the FTC Act, U.S.C. § 53(b). 2. The Settling Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order. 3. The Plaintiffs and the Settling Defendants have agreed that entry of this Order fully and finally resolves all claims and litigations between them arising from or based primarily on the allegations described in the Amended Complaint and precludes further litigation against Phoenixus, Vyera, and/or Mulleady, as defined herein, arising from or based primarily on the allegations except for purposes of enforcing or modifying this Order. 4. The Plaintiffs and Settling Defendants stipulate that they will each bear their own costs in this matter and shall not make any claims against the other for attorneys' fees or costs. IT IS HEREBY ORDERED: The Corporate Defendants, directly or through any Person, are hereby restrained and enjoined from entering into or enforcing any contract, arrangement, mutual understanding, or agreement that prohibits, or in any manner interferes with or restricts the ability of: Any purchaser (including hospitals and pharmacies), reseller, wholesaler, or distributor of a Drug Product to provide that Drug Product to a Pharmaceutical Company or its agent(s) or representative(s) for the purposes of the Development of a Therapeutic Equivalent or Biosimilar of that Drug Product by that Pharmaceutical Company, Provided, however, this provision does not prohibit the Corporate Defendants from entering an agreement with a distributor that restricts that distributor to certain channels of sale so long as it permits the distributor to sell the Drug Product to a Pharmaceutical Company or its agent(s) or representative(s) for the purposes of the Development of a Therapeutic Equivalent or Biosimilar of the Drug Product, as further set forth herein. For a period ending 7 years after this Order is entered, Mulleady is hereby banned, restrained, and enjoined from, directly, or through any other Person: 1. Participating in the research, Development, manufacture, commercialization, distribution, marketing, importation, or |

sale of a Drug Product or API, including participating in the formulation, determination, or direction of any business decisions of any Pharmaceutical Company, as further set forth herein. Mulleady is hereby restrained and enjoined from acquiring, holding, or voting more than 8% of the Ownership Interest (based on the latest information available to shareholders from the issuer) in any Pharmaceutical Company (other than an Exempted Company), either directly or through any other Person, as further set forth herein. The Corporate Defendants shall provide, within 21 days of the entry of this Order, written notification in the form of Appendix A to this Order to all their Customers and Suppliers, and going forward shall provide such notification to any Customer or Supplier to whom the Corporate Defendants have not previously provided notification under this Section III, Provided, however, the Corporate Defendants need not provide notice to Customers entering into an agreement to purchase generic prescription drugs so long as the agreement does not also include branded prescription drugs or an API. A. The Corporate Named Defendants shall pay up to $40 million to the Settlement Fund (defined below), comprised of a guaranteed payment of $10 million, and contingent payments of up to $30 million pursuant to Paragraph V.C. B. The Corporate Named Defendants shall pay $10 million as equitable monetary relief, which shall be used for a settlement fund in accordance with the terms of this Order ("Settlement Fund"). The Corporate Named Defendants will make this payment within 30 business days of the entry of this Order by electronic fund transfer into the Settlement Fund in accordance with instructions provided by the Plaintiff States. The money deposited into the Settlement Fund shall be held in escrow and distributed in the manner prescribed in Paragraph V.D herein. C. The Corporate Named Defendants are ordered to make additional payments of equitable monetary relief, not to exceed $30 million in the aggregate, to the Settlement Fund as described below: 1. For any Corporate Asset other than a Priority Review Voucher, Corporate Named Defendants will: a) Pay 20% of the total Net Proceeds from the sale, license, transfer, or other monetization of an asset that results from a transaction that is executed within 5 years after this Order is entered; and b) Pay 20% of the total Net Proceeds from a transaction monetizing the remaining royalty stream related to Ketamine assets that is executed prior to entry of this Order or within 5 years after this Order is entered. Judgment in the amount of two hundred and fifty thousand dollars ($250,000) is entered in favor of the Plaintiff States against Mulleady as equitable monetary relief in connection with a negotiated resolution of this action and not as part of any final adjudication of any issue of fact or law. The judgment is suspended unless and until there is a final unappealable judgment of contempt against Mulleady (i.e., all parties have exhausted their rights to appeal the judgment of contempt or the time for all such appeals has lapsed). A final unappealable judgment of contempt against Mulleady shall lift the suspension of the judgment and Mulleady shall be required to pay the judgment within 90 days of delivery of instructions by a Designated State Representative. Neither party will contest the other party's right to appeal any order or judgment of contempt or other violation of this Order. The Court shall retain jurisdiction of this matter for the purposes of construction, modification, and enforcement of this Order. This Order shall expire 10 years after the date is entered. This action is hereby dismissed with prejudice as to the Settling Defendants. Each party to bear its own costs. (As further set forth in this Order.) SO ORDERED this 7th day of December, 2021. (Signed by Judge Denise L. Cote on 12/7/2021) (vfr) Transmission to Finance Unit (Cashiers) for processing. (Entered: 12/07/2021)

| | | |
|---|---|---|
| 12/07/2021 | 755 | LETTER MOTION to Seal *re Letter re Courts Opinion on Third-Party 30(b)(6) Testimony (ECF 586)* addressed to Judge Denise L. Cote from Markus H. Meier dated 12/7/2021. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 12/07/2021) |
| 12/07/2021 | 756 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated 12/7/2021 re: Courts Opinion on Third-Party 30(b)(6) Testimony (ECF 586). Document filed by |

| | | |
|---|---|---|
| | | Federal Trade Commission. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Appendix A).(Meier, Markus) (Entered: 12/07/2021) |
| 12/07/2021 | 757 | LETTER MOTION to Seal *Mr. Shkreli's Response to the Courts November 15, 2021 Order Concerning Rule 30(b)(6) testimony (ECF 586)* addressed to Judge Denise L. Cote from Christopher H. Casey dated December 7, 2021. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 12/07/2021) |
| 12/07/2021 | 758 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 7, 2021 re: Mr. Shkreli's Response to the Courts November 15, 2021 Order Concerning Rule 30(b)(6) testimony (ECF 586). Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit A).(Casey, Christopher) (Entered: 12/07/2021) |
| 12/07/2021 | 759 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated 12/7/2021 re: Courts Opinion on Third-Party 30(b)(6) Testimony (ECF 586). Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Appendix A)Motion or Order to File Under Seal: 755 . (Meier, Markus) (Entered: 12/07/2021) |
| 12/07/2021 | 760 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 7, 2021 re: Mr. Shkreli's Response to the Courts November 15, 2021 Order Concerning Rule 30(b)(6) testimony (ECF 586). Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit A)Motion or Order to File Under Seal: 757 .(Casey, Christopher) (Entered: 12/07/2021) |
| 12/07/2021 | 761 | BRIEF re: 547 Memorandum & Opinion,,, *Response to Court's November 10 Order Concerning Inadmissible Hearsay Statements*. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit A).(Casey, Christopher) (Entered: 12/07/2021) |
| 12/07/2021 | 762 | BRIEF re: 547 Memorandum & Opinion,,, *Exemplars of Remaining Hearsay Disputes*. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A).(Meier, Markus) (Entered: 12/07/2021) |
| 12/08/2021 | 763 | ORDER granting 755 Letter Motion to Seal. Granted. (Signed by Judge Denise L. Cote on 12/8/2021) (vfr) (Entered: 12/08/2021) |
| 12/08/2021 | 764 | ORDER granting 757 Letter Motion to Seal. Granted. (Signed by Judge Denise L. Cote on 12/8/2021) (vfr) (Entered: 12/08/2021) |
| 12/08/2021 | 765 | LETTER MOTION to Seal *Letter re: Amendment to JPTO to Add Exhibits to Plaintiffs' Exhibit List* addressed to Judge Denise L. Cote from Markus H. Meier dated December 8, 2021. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 12/08/2021) |

| 12/08/2021 | 766 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 8, 2021 re: Amendment to JPTO to Add Exhibits to Plaintiffs' Exhibit List. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A).(Meier, Markus) (Entered: 12/08/2021) |
|---|---|---|
| 12/08/2021 | 767 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 8, 2021 re: Amendment to JPTO to Add Exhibits to Plaintiffs' Exhibit List. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit A)Motion or Order to File Under Seal: 765 .(Meier, Markus) (Entered: 12/08/2021) |
| 12/08/2021 | 768 | LETTER MOTION to Seal *Letter re Improper Expert Testimony of Sheldon Bradshaw* addressed to Judge Denise L. Cote from Markus H. Meier dated December 8, 2021. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 12/08/2021) |
| 12/08/2021 | 769 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 8, 2021 re: Improper Expert Testimony of Sheldon Bradshaw. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A).(Meier, Markus) (Entered: 12/08/2021) |
| 12/08/2021 | 770 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 8, 2021 re: Improper Expert Testimony of Sheldon Bradshaw. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit A)Motion or Order to File Under Seal: 768 .(Meier, Markus) (Entered: 12/08/2021) |
| 12/08/2021 | 771 | LETTER MOTION to Seal *Mr. Shkreli's Response to the Court's November 16, 2021 Order re Bradshaw Affidavit* addressed to Judge Denise L. Cote from Christopher H. Casey dated December 8, 2021. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 12/08/2021) |
| 12/08/2021 | 772 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 8, 2021 re: Mr. Shkreli's Response to the Court's November 16, 2021 Order re Bradshaw Affidavit. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit A).(Casey, Christopher) (Entered: 12/08/2021) |
| 12/08/2021 | 773 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 8, 2021 re: Mr. Shkreli's Response to the Court's November 16, 2021 Order re Bradshaw Affidavit. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit A)Motion or Order to File Under Seal: 771 .(Casey, Christopher) (Entered: 12/08/2021) |
| 12/08/2021 | 774 | MOTION to Amend/Correct 487 Memo Endorsement, Set Deadlines *Letter Motion from Steven A. Reed to Judge Denise L. Cote requesting amendment of ECF No. 487 to the extent it requires the parties to file the Daubert briefing related to Justin McLean on the* |

| | | |
|---|---|---|
| | | *public docket (unopposed)*. Document filed by Phoenixus AG, Vyera Pharmaceuticals, LLC..(Reed, Steven) (Entered: 12/08/2021) |
| 12/09/2021 | [775](#) | LETTER MOTION for Leave to File Amended Joint Pretrial Order *to add trial counsel* addressed to Judge Denise L. Cote from Jeremy R. Kasha dated Dec. 9, 2021. Document filed by State of New York..(Kasha, Jeremy) (Entered: 12/09/2021) |
| 12/09/2021 | [776](#) | TRANSCRIPT of Proceedings re: conference held on 11/16/2021 before Judge Denise L. Cote. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/30/2021. Redacted Transcript Deadline set for 1/10/2022. Release of Transcript Restriction set for 3/9/2022..(Moya, Goretti) (Entered: 12/09/2021) |
| 12/09/2021 | [777](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 11/16/2021 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 12/09/2021) |
| 12/09/2021 | [778](#) | ORDER granting [765](#) Letter Motion to Seal. Granted. (Signed by Judge Denise L. Cote on 12/9/2021) (vfr) (Entered: 12/09/2021) |
| 12/09/2021 | [779](#) | ORDER granting [768](#) Letter Motion to Seal. Granted. (Signed by Judge Denise L. Cote on 12/9/2021) (vfr) (Entered: 12/09/2021) |
| 12/09/2021 | [780](#) | ORDER granting [771](#) Letter Motion to Seal. Granted. (Signed by Judge Denise L. Cote on 12/9/2021) (vfr) (Entered: 12/09/2021) |
| 12/09/2021 | [781](#) | MEMO ENDORSEMENT on re: [767](#) Letter,, filed by State of North Carolina, Commonwealth of Pennsylvania, Federal Trade Commission, Martin Shkreli, State of Ohio, State of California, State of Illinois, Commonwealth of Virginia, State of New York. ENDORSEMENT: Granted. (Signed by Judge Denise L. Cote on 12/9/2021) (tg) (Entered: 12/09/2021) |
| 12/09/2021 | [782](#) | MEMO ENDORSEMENT granting [774](#) Motion to Amend/Correct [487](#) Memo Endorsement, Set Deadlines Letter Motion from Steven A. Reed to Judge Denise L. Cote requesting amendment of ECF No. 487 to the extent it requires the parties to file the Daubert briefing related to Justin McLean. ENDORSEMENT: Granted. (Signed by Judge Denise L. Cote on 12/9/2021) (vfr) (Entered: 12/09/2021) |
| 12/09/2021 | [783](#) | ORDER granting [775](#) Letter Motion for Leave to File Document. Granted. (Signed by Judge Denise L. Cote on 12/9/2021) (vfr) (Entered: 12/09/2021) |
| 12/09/2021 | [784](#) | LETTER MOTION to Seal *Proposed Amended Answer* addressed to Judge Denise L. Cote from Christopher H. Casey dated 12/9/2021. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 12/09/2021) |
| 12/09/2021 | [785](#) | ***SELECTED PARTIES*** LETTER MOTION for Leave to File Amended Answer addressed to Judge Denise L. Cote from Christopher H. Casey dated 12/9/2021. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), Commonwealth of Pennsylvania, Commonwealth of Virginia, |

| | | Federal Trade Commission, State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio. (Attachments: # 1 Exhibit 1 - Unredacted Proposed Amended Answer)Motion or Order to File Under Seal: 784 .(Casey, Christopher) (Entered: 12/09/2021) |
|---|---|---|
| 12/09/2021 | 786 | LETTER MOTION for Leave to File Amended Answer addressed to Judge Denise L. Cote from Christopher H. Casey dated 12/9/2021. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit 1 - Redacted Proposed Amended Answer).(Casey, Christopher) (Entered: 12/09/2021) |
| 12/10/2021 | 787 | ORDER granting 784 Letter Motion to Seal. Granted. (Signed by Judge Denise L. Cote on 12/10/2021) (tg) (Entered: 12/10/2021) |
| 12/10/2021 | 788 | ORDER granting 785 Letter Motion for Leave to File Document. Granted. (Signed by Judge Denise L. Cote on 12/10/2021) (tg) (Entered: 12/10/2021) |
| 12/10/2021 | 789 | ORDER: Trial in this action set to begin on December 14, 2021. On December 6, fifteen third parties submitted requests to redact or seal trial exhibits and to close the courtroom during the presentation of certain evidence (the "Third Party Sealing Applications"). As set forth on the record at the final pretrial conference held on December 10, it is hereby ORDERED that a conference shall be held on December 13, 2021, at 2:00 pm in Courtroom 18B, 500 Pearl Street. The parties and any third parties that elect to appear shall be prepared to address the Third Party Sealing Applications. (Oral Argument set for 12/13/2021 at 02:00 PM before Judge Denise L. Cote.) (Signed by Judge Denise L. Cote on 12/10/2021) (jwh) (Entered: 12/10/2021) |
| 12/10/2021 | | Minute Entry for proceedings held before Judge Denise L. Cote: Final Pretrial Conference held on 12/10/2021. (Court Reporter Sharonda Jones) (jwh) (Entered: 12/10/2021) |
| 12/10/2021 | 790 | ORDER re: 772 Letter filed by Martin Shkreli, 771 LETTER MOTION to Seal: ORDERED that all objections are sustained except for the objections to the last sentence in paragraph 37. IT IS FURTHER ORDERED that the plaintiffs shall advise the Court by December 11 at 5:00 pm whether they intend to call Mansoor A. Khan as a rebuttal expert witness at trial, and the extent to which any portions of his testimony are subject to an objection from the defendant. (Signed by Judge Denise L. Cote on 12/10/2021) (jwh) (Entered: 12/10/2021) |
| 12/10/2021 | 791 | ***SELECTED PARTIES***AMENDED ANSWER to 87 Amended Complaint,,,,. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio. Motion or Order to File Under Seal: 787 .(Casey, Christopher) (Entered: 12/10/2021) |
| 12/10/2021 | 792 | AMENDED ANSWER to 86 Amended Complaint,,. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 12/10/2021) |
| 12/11/2021 | 793 | EMERGENCY LETTER MOTION for Conference re: 789 Order, Set Hearings,,,, *requesting to appear by telephone at Conference* addressed to Judge Denise L. Cote from Eric D. Wong dated December 11, 2021. Document filed by Dr. Reddys Laboratories, Inc.. Return Date set for 12/13/2021 at 02:00 PM..(Wong, Eric) (Entered: 12/11/2021) |

| 12/11/2021 | 794 | MEMO ENDORSEMENT on re: 793 EMERGENCY LETTER MOTION for Conference re: 789 Order, Set Hearings,,,, *requesting to appear by telephone at Conference* addressed to Judge Denise L. Cote from Eric D. Wong dated December 11, 2021. filed by Dr. Reddys Laboratories, Inc. Denied. (Signed by Judge Denise L. Cote on December 11, 2021) (ST) (Entered: 12/11/2021) |
| --- | --- | --- |
| 12/11/2021 | 795 | EMERGENCY LETTER MOTION to Seal *Telephonic Appearance at Conference* addressed to Judge Denise L. Cote from Irving Wiesen dated 12/11/2021. Document filed by Medisca, Inc...(Wiesen, Irving) (Entered: 12/11/2021) |
| 12/11/2021 | 796 | MEMO ENDORSEMENT on re: 795 EMERGENCY LETTER MOTION to Seal *Telephonic Appearance at Conference* addressed to Judge Denise L. Cote from Irving Wiesen dated 12/11/2021. filed by Medisca, Inc.: Denied. (Signed by Judge Denise L. Cote on December 11, 2021) (ST) (Entered: 12/11/2021) |
| 12/12/2021 | 797 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 12, 2021 re: Testimony of Mansoor A. Khan and Sheldon T. Bradshaw. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC).. (Casey, Christopher) (Entered: 12/12/2021) |
| 12/12/2021 | 798 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated 12/12/2021 re: Additional Exemplar of Deposition Testimony Objection. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC).. (Casey, Christopher) (Entered: 12/12/2021) |
| 12/12/2021 | 799 | LETTER MOTION to Seal *Mr. Shkreli Letter re 30(b)(6) Objections* addressed to Judge Denise L. Cote from Christopher H. Casey dated December 12, 2021. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC).. (Casey, Christopher) (Entered: 12/12/2021) |
| 12/12/2021 | 800 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 12, 2021 re: Letter re 30b6 Objections. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit A)Motion or Order to File Under Seal: 799 .(Casey, Christopher) (Entered: 12/12/2021) |
| 12/12/2021 | 801 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 12, 2021 re: Letter re 30b6 Objections. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit A).(Casey, Christopher) (Entered: 12/12/2021) |
| 12/12/2021 | 802 | SUPPLEMENTAL LETTER MOTION to Seal *Courtroom During Trial* addressed to Judge Denise L. Cote from Paul W. Garrity dated December 12, 2021. Document filed by FERA Pharmaceuticals, LLC..(Garrity, Paul) (Entered: 12/12/2021) |
| 12/12/2021 | 803 | DECLARATION of Susan McDougal in Support re: 802 SUPPLEMENTAL LETTER MOTION to Seal *Courtroom During Trial* addressed to Judge Denise L. Cote from Paul W. Garrity dated December 12, 2021.. Document filed by FERA Pharmaceuticals, LLC.. (Garrity, Paul) (Entered: 12/12/2021) |

| 12/12/2021 | 804 | ***SELECTED PARTIES***DECLARATION of Susan McDougal in Support re: 802 SUPPLEMENTAL LETTER MOTION to Seal *Courtroom During Trial* addressed to Judge Denise L. Cote from Paul W. Garrity dated December 12, 2021.. Document filed by FERA Pharmaceuticals, LLC, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Kevin Mulleady(as an owner and director of Phoenixus AG), Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Unredacted Copy of Letter Motion to Seal Courtroom (Doc. No. 802)))Motion or Order to File Under Seal: 580 .(Garrity, Paul) (Entered: 12/12/2021) |
| --- | --- | --- |
| 12/12/2021 | 805 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated 12/12/2021 re: 30(b)(6) & Other Dispute Exemplars. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5). (Meier, Markus) (Entered: 12/12/2021) |
| 12/12/2021 | 806 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated 12/12/2021 re: Correction to Exhibits to Letter ECF 805. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit 3).(Meier, Markus) (Entered: 12/12/2021) |
| 12/12/2021 | 807 | MEMO ENDORSEMENT on re: 799 LETTER MOTION to Seal *Mr. Shkreli Letter re 30(b)(6) Objections* addressed to Judge Denise L. Cote from Christopher H. Casey dated December 12, 2021. filed by Martin Shkreli. Granted. (Signed by Judge Denise L. Cote on December 12, 2021) (ST) (Entered: 12/12/2021) |
| 12/12/2021 | | ***DELETED DOCUMENT. Deleted document number 809 Order. The document was incorrectly filed in this case, and was a duplicate of 807. (jwh)** (Entered: 12/13/2021) |
| 12/13/2021 | 808 | NOTICE OF APPEARANCE by Mark Thomas Hall on behalf of Cerovene, Inc...(Hall, Mark) (Entered: 12/13/2021) |
| 12/13/2021 | 809 | EMERGENCY LETTER MOTION for Extension of Time *to permit counsel for nonparty Optime Care Inc. to arrive late to the hearing scheduled for 2 p.m. or to participate remotely by telephone* addressed to Judge Denise L. Cote from Eric M. Creizman dated December 13, 2021. Document filed by Optime Care, Inc.. Return Date set for 12/13/2021 at 02:00 PM..(Creizman, Eric) (Entered: 12/13/2021) |
| 12/13/2021 | 810 | MEMO ENDORSEMENT on re: 809 EMERGENCY LETTER MOTION for Extension of Time *to permit counsel for nonparty Optime Care Inc. to arrive late to the hearing scheduled for 2 p.m. or to participate remotely by telephone* addressed to Judge Denise L. Cote from Eric M. Creizman da filed by Optime Care, Inc.: You have permission to arrive late. Granted. (Signed by Judge Denise L. Cote on December 13, 2021) (ST) (Entered: 12/13/2021) |
| 12/13/2021 | 811 | LETTER MOTION to Seal *revised exhibits previously submitted for sealing (see ECF Nos. 733 & 737),* addressed to Judge Denise L. Cote from Rosa M. Morales, Esq. dated 12/13/2021. Document filed by Cardinal Health, Inc... (Attachments: # 1 Ex. 1 placeholder, # 2 Ex. 2 placeholder, # 3 Ex. 3 placeholder, # 4 Ex. 4 to Cardinal's 12/13/21 letter-motion, # 5 Ex. 8 placeholder).(Morales, Rosa) (Entered: 12/13/2021) |
| 12/13/2021 | 812 | ***SELECTED PARTIES*** LETTER MOTION for Leave to File (under seal) revised versions of exhibits previously submitted as ECF Nos. 733 & 737 addressed to Judge Denise L. Cote from Rosa M. Morales, Esq. dated 12/13/2021. Document filed by Cardinal Health, Inc., Commonwealth of Pennsylvania, Commonwealth of Virginia, |

| | | |
|---|---|---|
| | | Federal Trade Commission, Kevin Mulleady(as an owner and director of Phoenixus AG), Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Phoenixus AG, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Ex. 1 referenced in Cardinal 12/13/21 letter motion, # 2 Ex. 2 referenced in Cardinal 12/13/21 letter motion, # 3 Ex. 3 referenced in Cardinal 12/13/21 letter motion, # 4 Ex. 8 referenced in Cardinal 12/13/21 letter motion)Motion or Order to File Under Seal: 811 . (Morales, Rosa) (Entered: 12/13/2021) |
| 12/13/2021 | 813 | NOTICE OF APPEARANCE by Anthony Peter Badaracco on behalf of Optum, Inc... (Badaracco, Anthony) (Entered: 12/13/2021) |
| 12/13/2021 | | Minute Entry for proceedings held before Judge Denise L. Cote: Oral Argument held on 12/13/2021 re: 749 LETTER MOTION to Seal, 725 LETTER MOTION to Seal, 732 LETTER MOTION to Seal, 747 LETTER MOTION to Sea, 802 SUPPLEMENTAL LETTER MOTION to Seal. (Court Reporter Paula Horovitz and Elena Lynch) (jwh) (Entered: 12/13/2021) |
| 12/13/2021 | 814 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated 12/13/2021 re: Filing Written Direct Testimony. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 12/13/2021) |
| 12/13/2021 | 815 | MEMO ENDORSEMENT on re: 814 Letter filed by Federal Trade Commission. Granted. (Signed by Judge Denise L. Cote on December 13, 2021) (ST) (Entered: 12/13/2021) |
| 12/14/2021 | 816 | LETTER addressed to Judge Denise L. Cote from Mariellen Dugan dated December 14, 2021 re: Caremark's Motion to Seal. Document filed by CaremarkPCS Health, LLC.. (Morrow, Philip) (Entered: 12/14/2021) |
| 12/14/2021 | | Minute Entry for proceedings held before Judge Denise L. Cote: Bench Trial begun on 12/14/2021. (Court Reporter Andrew Walker and Steven Greenblum) (jwh) (Entered: 12/14/2021) |
| 12/14/2021 | 817 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 14, 2021 re: Written Direct Testimony of James R. Bruno. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit GX8001).(Meier, Markus) (Entered: 12/14/2021) |
| 12/14/2021 | 818 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 14, 2021 re: Written Direct Testimony of James R. Bruno. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit GX8001 (Sealed))Motion or Order to File Under Seal: 789 .(Meier, Markus) (Entered: 12/14/2021) |
| 12/14/2021 | 819 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 14, 2021 re: Written Direct Testimony of Nicholas Pelliccione, PhD. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit DX539).(Casey, Christopher) (Entered: 12/14/2021) |
| 12/15/2021 | 820 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 15, 2021 re: Written Direct Testimony of W. David Hardy, M.D.. Document filed by Federal |

| | | |
|---|---|---|
| | | Trade Commission. (Attachments: # 1 Exhibit GX8003).(Meier, Markus) (Entered: 12/15/2021) |
| 12/15/2021 | 821 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 15, 2021 re: Written Direct Testimony of Frank DellaFera. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit GX8007 (Public)).(Meier, Markus) (Entered: 12/15/2021) |
| 12/15/2021 | 822 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 15, 2021 re: Written Direct Testimony of Frank DellaFera. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit GX8007 (Sealed))Motion or Order to File Under Seal: 789 .(Meier, Markus) (Entered: 12/15/2021) |
| 12/15/2021 | | Minute Entry for proceedings held before Judge Denise L. Cote: Bench Trial held on 12/15/2021. (Court Reporter Andrew Walker and Steven Greenblum) (jwh) (Entered: 12/16/2021) |
| 12/16/2021 | 823 | LETTER MOTION to Seal *ECF 817* addressed to Judge Denise L. Cote from Markus H. Meier dated December 16, 2021. Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 12/16/2021) |
| 12/16/2021 | 824 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 16, 2021 re: Written Direct Testimony of James R. Bruno (Corrected). Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit GX8001).(Meier, Markus) (Entered: 12/16/2021) |
| 12/16/2021 | 825 | ORDER granting 823 Letter Motion to Seal: Granted. (Signed by Judge Denise L. Cote on 12/16/2021) (jwh) (Entered: 12/16/2021) |
| 12/16/2021 | 826 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 16, 2021 re: Written Direct Testimony of Edward V. Conroy. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit GX8002).(Meier, Markus) (Entered: 12/16/2021) |
| 12/16/2021 | 827 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 16, 2021 re: Written Direct Testimony of Susan McDougal. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit GX8008 (Public)).(Meier, Markus) (Entered: 12/16/2021) |
| 12/16/2021 | 828 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 16, 2021 re: Written Direct Testimony of Susan McDougal. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit GX8008 (Sealed))Motion or Order to File Under Seal: 789 .(Meier, Markus) (Entered: 12/16/2021) |
| 12/16/2021 | 829 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 16, 2021 re: Written Direct Testimony of Abhishek Mukhopadhyay. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit GX8009 (Public)).(Meier, Markus) (Entered: 12/16/2021) |

| 12/16/2021 | 830 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 16, 2021 re: Written Direct Testimony of Abhishek Mukhopadhyay. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit GX8009 (Sealed))Motion or Order to File Under Seal: 789 .(Meier, Markus) (Entered: 12/16/2021) |
|---|---|---|
| 12/16/2021 | | Minute Entry for proceedings held before Judge Denise L. Cote: Bench Trial held on 12/16/2021. (Court Reporter Andrew Walker and Steven Greenblum) (jwh) (Entered: 12/17/2021) |
| 12/17/2021 | 831 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated 12/17/2021 re: Written Direct Testimony of Nilesh Patel. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit GX8010 (Public)).(Meier, Markus) (Entered: 12/17/2021) |
| 12/17/2021 | 832 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated 12/17/2021 re: Written Direct Testimony of Nilesh Patel. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit GX8010 (Sealed))Motion or Order to File Under Seal: 789 .(Meier, Markus) (Entered: 12/17/2021) |
| 12/17/2021 | | Minute Entry for proceedings held before Judge Denise L. Cote: Bench Trial held on 12/17/2021. (Court Reporter Andrew Walker and Steven Greenblum) (jwh) (Entered: 12/17/2021) |
| 12/17/2021 | 833 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated 12/17/2021 re: Written Direct Testimony of Manish S. Shah. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit GX8011 (Public)).(Meier, Markus) (Entered: 12/17/2021) |
| 12/17/2021 | 834 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated 12/17/2021 re: Written Direct Testimony of Manish S. Shah. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit GX8011 (Sealed))Motion or Order to File Under Seal: 789 .(Meier, Markus) (Entered: 12/17/2021) |
| 12/20/2021 | 835 | TRANSCRIPT of Proceedings re: CONFERENCE held on 12/10/2021 before Judge Denise L. Cote. Court Reporter/Transcriber: Sharonda Jones, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/10/2022. Redacted Transcript Deadline set for 1/20/2022. Release of Transcript Restriction set for 3/21/2022..(Moya, Goretti) (Entered: 12/20/2021) |
| 12/20/2021 | 836 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 12/10/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically |

| | | available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 12/20/2021) |
|---|---|---|
| 12/20/2021 | 837 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 20, 2021 re: Written Direct Testimony of Martin Shkreli. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit DX546 - written direct testimony of Martin Shkreli).(Casey, Christopher) (Entered: 12/20/2021) |
| 12/20/2021 | 838 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 20, 2021 re: Written Direct Testimony of Anne Kirby. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit DX538).(Casey, Christopher) (Entered: 12/20/2021) |
| 12/20/2021 | 839 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 20, 2021 re: Written Direct Testimony of Kevin Mulleady. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit DX545 (Public-Redacted).(Casey, Christopher) (Entered: 12/20/2021) |
| 12/20/2021 | 840 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 20, 2021 re: Written Direct Testimony of Kevin Mulleady (Sealed). Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit 545 (Sealed))Motion or Order to File Under Seal: 815 .(Casey, Christopher) (Entered: 12/20/2021) |
| 12/20/2021 | 841 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 20, 2021 re: Written Direct Testimony of C. Scott Hemphill, Ph.D., J.D.. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit GX8004).(Meier, Markus) (Entered: 12/20/2021) |
| 12/20/2021 | 842 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 20, 2021 re: Written Direct Testimony of Dr. Anupam B. Jena, MD, Ph.D,. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit DX541 (Public) - Part 1 of 3, # 2 Exhibit DX541 (Public) - Part 2 of 3, # 3 Exhibit DX541 (Public) - Part 3 of 3).(Casey, Christopher) (Entered: 12/20/2021) |
| 12/20/2021 | 843 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated December 20, 2021 re: Written Direct Testimony of C. Scott Hemphill, Ph.D., J.D.. Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit GX8004 (Sealed))Motion or Order to File Under Seal: 789 .(Meier, Markus) (Entered: 12/20/2021) |
| 12/20/2021 | 844 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 20, 2021 re: Written Direct Testimony of Dr. Anupam B. Jena, MD, Ph.D, (Sealed). Document filed by Martin Shkreli (as an owner |

| | | and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit DX541 (Sealed))Motion or Order to File Under Seal: 815 .(Casey, Christopher) (Entered: 12/20/2021) |
|---|---|---|
| 12/20/2021 | 845 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 20, 2021 re: Written Direct Testimony of John S. Russell. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit DX542 (Public) - Part 1 of 4, # 2 Exhibit DX542 (Public) - Part 2 of 4, # 3 Exhibit DX542 (Public) - Part 3 of 4, # 4 Exhibit DX542 (Public) - Part 4 of 4).(Casey, Christopher) (Entered: 12/20/2021) |
| 12/20/2021 | 846 | ***SELECTED PARTIES*** LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated December 20, 2021 re: Written Direct Testimony of John S. Russell (Sealed). Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), State of New York, Federal Trade Commission, State of Ohio, State of North Carolina, State of California, Commonwealth of Pennsylvania, Martin Shkreli(individually), Commonwealth of Virginia, Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of Illinois. (Attachments: # 1 Exhibit DX542 (Sealed))Motion or Order to File Under Seal: 815 .(Casey, Christopher) (Entered: 12/20/2021) |
| 12/20/2021 | | Minute Entry for proceedings held before Judge Denise L. Cote: Bench Trial held on 12/20/2021. (Court Reporter Andrew Walker and Steven Greenblum) (jwh) (Entered: 12/21/2021) |
| 12/21/2021 | | Minute Entry for proceedings held before Judge Denise L. Cote: Bench Trial held on 12/21/2021. (Court Reporter Andrew Walker and Steven Greenblum) (jwh) (Entered: 12/21/2021) |
| 12/22/2021 | | Minute Entry for proceedings held before Judge Denise L. Cote: Bench Trial completed on 12/22/2021. (Court Reporter Andrew Walker and Steven Greenblum) (jwh) (Entered: 12/22/2021) |
| 12/28/2021 | 847 | MOTION for Kip David Sturgis to Withdraw as Attorney *for the State of North Carolina*. Document filed by State of North Carolina..(Sturgis, Kip) (Entered: 12/28/2021) |
| 12/30/2021 | 848 | TRANSCRIPT of Proceedings re: TRIAL held on 12/14/2021 before Judge Denise L. Cote. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/20/2022. Redacted Transcript Deadline set for 1/31/2022. Release of Transcript Restriction set for 3/30/2022..(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 849 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 12/14/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 850 | TRANSCRIPT of Proceedings re: TRIAL held on 12/15/2021 before Judge Denise L. Cote. Court Reporter: Steven Greenblum, (212) 805-0300. Transcript may be |

| | | viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/20/2022. Redacted Transcript Deadline set for 1/31/2022. Release of Transcript Restriction set for 3/30/2022..(Moya, Goretti) (Entered: 12/30/2021) |
|---|---|---|
| 12/30/2021 | 851 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 12/15/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 852 | TRANSCRIPT of Proceedings re: TRIAL held on 12/16/2021 before Judge Denise L. Cote. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/20/2022. Redacted Transcript Deadline set for 1/31/2022. Release of Transcript Restriction set for 3/30/2022..(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 853 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 12/16/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 854 | TRANSCRIPT of Proceedings re: TRIAL held on 12/17/2021 before Judge Denise L. Cote. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/20/2022. Redacted Transcript Deadline set for 1/31/2022. Release of Transcript Restriction set for 3/30/2022..(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 855 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 12/17/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 856 | TRANSCRIPT of Proceedings re: TRIAL held on 12/20/2021 before Judge Denise L. Cote. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/20/2022. Redacted Transcript Deadline set for 1/31/2022. Release of Transcript Restriction set for 3/30/2022..(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 857 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 12/20/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no |

| | | |
|---|---|---|
| | | such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 858 | TRANSCRIPT of Proceedings re: TRIAL held on 12/21/2021 before Judge Denise L. Cote. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/20/2022. Redacted Transcript Deadline set for 1/31/2022. Release of Transcript Restriction set for 3/30/2022..(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 859 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 12/21/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 860 | TRANSCRIPT of Proceedings re: TRIAL held on 12/22/2021 before Judge Denise L. Cote. Court Reporter/Transcriber: Steven Greenblum, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/20/2022. Redacted Transcript Deadline set for 1/31/2022. Release of Transcript Restriction set for 3/30/2022..(Moya, Goretti) (Entered: 12/30/2021) |
| 12/30/2021 | 861 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 12/22/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days....(Moya, Goretti) (Entered: 12/30/2021) |
| 01/03/2022 | 862 | MEMO ENDORSEMENT granting 847 Motion to Withdraw as Attorney. ENDORSEMENT: Granted. Attorney Kip David Sturgis terminated. (Signed by Judge Denise L. Cote on 1/3/2022) (vfr) (Entered: 01/03/2022) |
| 01/06/2022 | 863 | LETTER MOTION for Extension of Time *to Sign Collateral Agreement* addressed to Judge Denise L. Cote from Joseph S. Betsko dated 1/6/2022. Document filed by Commonwealth of Pennsylvania..(Betsko, Joseph) (Entered: 01/06/2022) |
| 01/06/2022 | 864 | ORDER granting 863 Letter Motion for Extension of Time. Granted. (Signed by Judge Denise L. Cote on 1/6/2022) (vfr) (Entered: 01/06/2022) |
| 01/14/2022 | 865 | OPINION AND ORDER: Shkreli is liable on each on the claims presented in this action. An injunction shall issue banning him for life from participating in the pharmaceutical industry in any capacity. He is ordered to pay the Plaintiff States $64.6 million in disgorgement. (Signed by Judge Denise L. Cote on 1/14/2022) (vfr) (Entered: 01/14/2022) |
| 01/14/2022 | 866 | ORDER: The Court's Findings of Fact and Conclusions of Law following trial in the above-captioned case was filed on January 14, 2022. It is hereby ORDERED that the Plaintiffs shall present any proposed judgment to the defendant Martin Shkreli within five business days. IT IS FURTHER ORDERED that the Plaintiffs shall file the proposed judgment with any objections to its terms by January 28, 2022. (Signed by Judge Denise L. Cote on 1/14/2022) (vfr) (Entered: 01/14/2022) |

SDNY CM/ECF NextGen Version 1.6

| | | |
|---|---|---|
| 01/28/2022 | 867 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated 1/28/2022 re: Proposed Order for Permanent Injunction and Equitable Monetary Relief and Defendant Shkreli's Objections. Document filed by Federal Trade Commission. (Attachments: # 1 Proposed Order, # 2 Defendant Shkreli's Objections).(Meier, Markus) (Entered: 01/28/2022) |
| 01/31/2022 | 868 | MEMO ENDORSEMENT on re: 867 Letter, filed by Federal Trade Commission. ENDORSEMENT: Granted. (Signed by Judge Denise L. Cote on 1/31/2022) (vfr) (Entered: 01/31/2022) |
| 02/02/2022 | 869 | LETTER addressed to Judge Denise L. Cote from Markus H. Meier dated February 2, 2022 re: Response to Shkreli Objections to Proposed Order. Document filed by Federal Trade Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C).(Meier, Markus) (Entered: 02/02/2022) |
| 02/03/2022 | 870 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated February 3, 2022 re: Defendant's Intent to Reply to Plaintiffs' Revised Proposed Order. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC).. (Casey, Christopher) (Entered: 02/03/2022) |
| 02/03/2022 | 871 | MEMO ENDORSEMENT on re: 870 Letter, filed by Martin Shkreli. Any response must be submitted by February 4, 2022 at noon. (Signed by Judge Denise L. Cote on February 3, 2022) (ST) (Entered: 02/03/2022) |
| 02/04/2022 | 872 | LETTER MOTION for Extension of Time *to Sign Collateral Agreement* addressed to Judge Denise L. Cote from Joseph S. Betsko dated 2/4/2022. Document filed by Commonwealth of Pennsylvania. Return Date set for 2/4/2022 at 03:00 PM..(Betsko, Joseph) (Entered: 02/04/2022) |
| 02/04/2022 | 873 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated February 4, 2022 re: Mr. Shkreli's Reply In Support of His Objections to Plaintiffs' Proposed Order and Revised Proposed Order. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 02/04/2022) |
| 02/04/2022 | 874 | ORDER granting 872 Letter Motion for Extension of Time. An extension is granted to 2/25/22. (Signed by Judge Denise L. Cote on 2/4/2022) (vfr) (Entered: 02/04/2022) |
| 02/04/2022 | 875 | OPINION AND ORDER: Having considered the injunction proposed by the plaintiffs and Shkreli's objections, an injunction and final judgment has been issued today. This Opinion addresses Shkreli's objections to the injunction. These objections are overruled. To the extent that Shkreli is concerned that the inspection of financial records will occur at his home, the injunction recognizes that any inspection will occur in the presence of Shkreli's counsel and during business hours. It does not dictate the location. His production of his books and records could occur at any appropriate location of his choosing, including his counsel's office. (Signed by Judge Denise L. Cote on 2/4/2022) (jwh) (Entered: 02/04/2022) |
| 02/04/2022 | 876 | ORDER FOR PERMANENT INJUNCTION AND EQUITABLE MONETARY RELIEF: IT IS FURTHER ORDERED that Defendant Shkreli is hereby banned and enjoined for life from directly or indirectly participating in any manner in the pharmaceutical industry, including by: A. Participating in or directing the research, Development, manufacture, commercialization, distribution, marketing, importation, or sale of a Drug Product or API, whether through compensated or uncompensated employment, consulting, advising, board membership, or otherwise, and as further set forth in this order. IT IS FURTHER ORDERED that: A. Judgment in the amount of $64.6 million is entered in favor of |

| | | |
|---|---|---|
| | | Plaintiff States against Defendant Shkreli, provided that up to $40 million of the judgment is subject to a setoff equal to the equitable monetary relief paid by the Corporate Defendants to the Plaintiff States on or before December 6, 2031 pursuant to the Stipulated Order for Permanent Injunction and Equitable Monetary Relief entered in this matter on December 7, 2021, and as further set forth in this order. IT IS FURTHER ORDERED that: A. Defendant Shkreli shall submit to the Commission and to each of the Designated State Representatives verified written reports ("Compliance Reports") setting forth in detail the manner and form in which he intends to comply, has complied, and is complying with this Order, in accordance with the following: 1. Within 60 days of the entry of this Order; 2. One year after the entry of this Order, and annually thereafter until the later of 10 years or payment of the monetary judgment ordered herein; and 3. At such other times as the Commission or a Plaintiff State may require, and as further set forth in this order. IT IS FURTHER ORDERED that Plaintiff States may seek attorneys' fees, costs, and related nontaxable expenses in this matter. Any application for attorneys' fees, costs, and related nontaxable expenses must be filed by motion within 30 days of the entry of this Order. IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for the purposes of construction, modification, and enforcement of this Order. (Signed by Judge Denise L. Cote on 2/4/2022) (jwh) (Entered: 02/04/2022) |
| 02/04/2022 | | Terminate Transcript Deadlines (jwh) (Entered: 02/04/2022) |
| 03/07/2022 | 877 | MOTION for Attorney Fees . Document filed by Commonwealth of Pennsylvania. (Attachments: # 1 Plaintiff States Summary of Attorneys Fees and Declarations, # 2 Exhibit Attorney Time Records, # 3 Exhibit USAO Fitzpatrick Matrix, # 4 Text of Proposed Order).(Scannell, Stephen) (Entered: 03/07/2022) |
| 03/07/2022 | 878 | MEMORANDUM OF LAW in Support re: 877 MOTION for Attorney Fees . . Document filed by Commonwealth of Pennsylvania..(Scannell, Stephen) (Entered: 03/07/2022) |
| 03/07/2022 | 879 | MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Order for Permanent Injunction Pending Appeal*. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 03/07/2022) |
| 03/07/2022 | 880 | MEMORANDUM OF LAW in Support re: 879 MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Order for Permanent Injunction Pending Appeal*. . Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 03/07/2022) |
| 03/07/2022 | 881 | LETTER MOTION to Seal *Portions of Mr. Shkreli's Memorandum of Law in Support of Motion to Stay Execution of Monetary Judgment Pending Appeal and Mr. Shkreli's March 5, 2022 Declaration* addressed to Judge Denise L. Cote from Christopher H. Casey dated March 7, 2022. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 03/07/2022) |
| 03/07/2022 | 882 | MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Execution of Monetary Judgment Pending Appeal*. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 03/07/2022) |
| 03/07/2022 | 883 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Support re: 882 MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Execution of Monetary Judgment Pending Appeal*. . Document filed by Martin Shkreli (as |

| | | |
|---|---|---|
| | | an owner and former director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), ASD Healthcare, AmerisourceBergen Corporation, Cardinal Health, Inc., CaremarkPCS Health, LLC, Cerovene, Inc., Commonwealth of Pennsylvania, Commonwealth of Virginia, Dr. Reddys Laboratories, Inc., FERA Pharmaceuticals, LLC, Federal Trade Commission, Infectious Diseases Society of America, Integrated Commercialization Solutions, Medisca, Inc., Kevin Mulleady(as an owner and director of Phoenixus AG), Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Optime Care, Inc., Optum, Inc., Phoenixus AG, Pisgah Labs Inc., State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Teva Pharmaceuticals USA, Inc., Ron Tilles, Vyera Pharmaceuticals, LLC. (Attachments: # 1 Exhibit March 5, 2022 Declaration of Martin Shkreli)Motion or Order to File Under Seal: 881 .(Casey, Christopher) (Entered: 03/07/2022) |
| 03/07/2022 | 884 | MEMORANDUM OF LAW in Support re: 882 MOTION to Stay re: 876 Permanent Injunction,,,,,,, *Defendant Martin Shkreli's Motion to Stay Execution of Monetary Judgment Pending Appeal. [REDACTED]*. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Exhibit March 5, 2022 Declaration of Martin Shkreli).(Casey, Christopher) (Entered: 03/07/2022) |
| 03/08/2022 | 885 | ORDER granting 881 Letter Motion to Seal. Granted. (Signed by Judge Denise L. Cote on 3/8/2022) (ate) (Entered: 03/08/2022) |
| 03/08/2022 | 886 | ORDER: It is hereby ORDERED that any opposition is due March 28, 2022. Any reply is due April 11, 2022. ( Responses due by 3/28/2022, Replies due by 4/11/2022.) (Signed by Judge Denise L. Cote on 3/8/2022) (ate) (Entered: 03/08/2022) |
| 03/08/2022 | 887 | ORDER: On March 7, 2022, the defendant Martin Shkreli filed a motion to stay the execution of the February 4, 2022 Order for Equitable Monetary Relief pending appeal. It is hereby ORDERED that any opposition is due March 14, 2022. Any reply is due March 16, 2022. SO ORDERED. ( Responses due by 3/14/2022, Replies due by 3/16/2022.) (Signed by Judge Denise L. Cote on 3/8/2022) (vfr) (Entered: 03/08/2022) |
| 03/08/2022 | 888 | ORDER: On March 7, 2022, the plaintiff States of California, Illinois, and Ohio, and the Commonwealth of Pennsylvania filed a motion for attorney's fees and costs. It is hereby ORDERED that any opposition is due March 28, 2022. Any reply is due April 11, 2022. SO ORDERED. ( Responses due by 3/28/2022, Replies due by 4/11/2022.) (Signed by Judge Denise L. Cote on 3/8/2022) (vfr) (Entered: 03/08/2022) |
| 03/14/2022 | 889 | ***SELECTED PARTIES*** MEMORANDUM OF LAW in Opposition re: 882 MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Execution of Monetary Judgment Pending Appeal.* . Document filed by State of New York, Commonwealth of Pennsylvania, Commonwealth of Virginia, Federal Trade Commission, Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), State of California, State of Illinois, State of North Carolina, State of Ohio. Motion or Order to File Under Seal: 885 .(McFarlane, Amy) (Entered: 03/14/2022) |
| 03/14/2022 | 890 | MEMORANDUM OF LAW in Opposition re: 882 MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Execution of Monetary Judgment Pending Appeal. REDACTED.* Document filed by State of New York.. (McFarlane, Amy) (Entered: 03/14/2022) |

| 03/16/2022 | 891 | LETTER MOTION to Seal *Portions of Mr. Shkreli's Reply in Further Support of His Motion to Stay Execution of Monetary Judgment* addressed to Judge Denise L. Cote from Christopher H. Casey dated March 16, 2022. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 03/16/2022) |
|---|---|---|
| 03/16/2022 | 892 | ***SELECTED PARTIES*** REPLY MEMORANDUM OF LAW in Support re: 882 MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Execution of Monetary Judgment Pending Appeal.* . Document filed by Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli(individually), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC), ASD Healthcare, AmerisourceBergen Corporation, Cardinal Health, Inc., CaremarkPCS Health, LLC, Cerovene, Inc., Commonwealth of Pennsylvania, Commonwealth of Virginia, Dr. Reddys Laboratories, Inc., FERA Pharmaceuticals, LLC, Federal Trade Commission, Infectious Diseases Society of America, Integrated Commercialization Solutions, Medisca, Inc., Kevin Mulleady(as an owner and director of Phoenixus AG), Kevin Mulleady(as a former executive of Vyera Pharmaceuticals, LLC), Kevin Mulleady(individually), Optime Care, Inc., Optum, Inc., Phoenixus AG, Pisgah Labs Inc., State of California, State of Illinois, State of New York, State of North Carolina, State of Ohio, Teva Pharmaceuticals USA, Inc., Ron Tilles, Vyera Pharmaceuticals, LLC. Motion or Order to File Under Seal: 891 . (Casey, Christopher) (Entered: 03/16/2022) |
| 03/16/2022 | 893 | REPLY MEMORANDUM OF LAW in Support re: 882 MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Execution of Monetary Judgment Pending Appeal. [REDACTED].* Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 03/16/2022) |
| 03/16/2022 | 894 | ORDER granting 891 Letter Motion to Seal. Granted. (Signed by Judge Denise L. Cote on 3/16/2022) (vfr) (Entered: 03/16/2022) |
| 03/17/2022 | 895 | MEMORANDUM OPINION AND ORDER re: 879 MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Order for Permanent Injunction Pending Appeal.* filed by Martin Shkreli, 882 MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Execution of Monetary Judgment Pending Appeal.* filed by Martin Shkreli.The defendant's March 7, 2022 motion to stay the execution of the monetary judgment pending appeal is denied. (Signed by Judge Denise L. Cote on 3/17/2022) (tg) (Entered: 03/17/2022) |
| 03/28/2022 | 896 | MEMORANDUM OF LAW in Opposition re: 879 MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Order for Permanent Injunction Pending Appeal.* . Document filed by Federal Trade Commission..(Meier, Markus) (Entered: 03/28/2022) |
| 03/28/2022 | 897 | RESPONSE in Opposition to Motion re: 877 MOTION for Attorney Fees . . Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC).. (Casey, Christopher) (Entered: 03/28/2022) |
| 03/29/2022 | 898 | LETTER addressed to Judge Denise L. Cote from Christopher H. Casey dated March 29, 2022 re: Corrected Version of Martin Shkreli's Memorandum of Law in Opposition to Plaintiff States' Motion for Attorney's Fees and Costs Under Section 16 of the Clayton Act. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and |

| | | former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 03/29/2022) |
|---|---|---|
| 03/29/2022 | 899 | RESPONSE in Opposition to Motion re: 877 MOTION for Attorney Fees . *(CORRECTED)*. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 03/29/2022) |
| 04/04/2022 | | ***DELETED DOCUMENT. Deleted document number NOTICE OF APPEAL. The document was incorrectly filed in this case. (laq)** (Entered: 04/05/2022) |
| 04/05/2022 | 900 | NOTICE OF APPEAL from 876 Permanent Injunction,,,,,,,,. Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Attachments: # 1 Exhibit A).(Casey, Christopher) (Entered: 04/05/2022) |
| 04/07/2022 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 900 Notice of Appeal. (tp) (Entered: 04/07/2022) |
| 04/07/2022 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 900 Notice of Appeal, filed by Martin Shkreli were transmitted to the U.S. Court of Appeals. (tp) (Entered: 04/07/2022) |
| 04/11/2022 | 901 | REPLY MEMORANDUM OF LAW in Support re: 877 MOTION for Attorney Fees . . Document filed by Commonwealth of Pennsylvania..(Scannell, Stephen) (Entered: 04/11/2022) |
| 04/11/2022 | 902 | **FILING ERROR - DEFICIENT DOCKET ENTRY - (SEE DOCUMENT#903)** DECLARATION of Joseph S Betsko in Support re: 877 MOTION for Attorney Fees .. Document filed by Commonwealth of Pennsylvania. (Attachments: # 1 Exhibit Amended Schedule).(Betsko, Joseph) Modified on 4/12/2022 (lb). (Entered: 04/11/2022) |
| 04/11/2022 | 903 | DECLARATION of Joseph S Betsko in Support re: 877 MOTION for Attorney Fees .. Document filed by Commonwealth of Pennsylvania. (Attachments: # 1 Exhibit Amended Schedule).(Betsko, Joseph) (Entered: 04/11/2022) |
| 04/11/2022 | 904 | REPLY MEMORANDUM OF LAW in Support re: 879 MOTION to Stay re: 876 Permanent Injunction,,,,,,,, *Defendant Martin Shkreli's Motion to Stay Order for Permanent Injunction Pending Appeal*. . Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 04/11/2022) |
| 04/12/2022 | 905 | MOTION for Christopher H. Casey, Andrew John Rudowitz, James Manly Parks, Jeffrey S. Pollack, Sarah O'Laughlin Kulik, Sarah Fehm Stewart, and Sean P. McConnell to Withdraw as Attorney . Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC)..(Casey, Christopher) (Entered: 04/12/2022) |
| 04/12/2022 | 906 | MEMORANDUM OF LAW in Support re: 905 MOTION for Christopher H. Casey, Andrew John Rudowitz, James Manly Parks, Jeffrey S. Pollack, Sarah O'Laughlin Kulik, Sarah Fehm Stewart, and Sean P. McConnell to Withdraw as Attorney . . Document filed by Martin Shkreli(individually), Martin Shkreli (as an owner and former director of Phoenixus AG), Martin Shkreli (as a former executive of Vyera Pharmaceuticals, LLC). (Attachments: # 1 Declaration of Christopher H. Casey, Esq.).(Casey, Christopher) (Entered: 04/12/2022) |

| 04/13/2022 | | USCA Appeal Fees received $ 505.00 receipt number 465401296772 on 04/13/2022 re: 900 Notice of Appeal filed by Martin Shkreli. **[USCA Case No. 22-0728]**..(nd) (Entered: 04/14/2022) |
|---|---|---|
| 04/15/2022 | 907 | ORDER: granting 905 Motion to Withdraw as Attorney. Accordingly, it is hereby ORDERED that Duane Morris is Granted leave to withdraw. IT IS FURTHER ORDERED that the Clerk of Court shall mail a copy of this Order to the defendant at the below address and note service on the docket: Martin Shkreli, Register No. 87850-053, FCI Allenwood Low Federal Correctional Institution, P.O. Box 1000White Deer, PA 17887. SO ORDERED. Attorney James Manly Parks; Jeffrey S Pollack; Andrew John Rudowitz; Sarah Fehm Stewart; Christopher H. Casey and Sean P. McConnell terminated. (Signed by Judge Denise L. Cote on 4/15/2022) (ama) (Entered: 04/15/2022) |
| 04/15/2022 | | Transmission to Docket Assistant Clerk. Transmitted re: 907 Order on Motion to Withdraw as Attorney,,, to the Docket Assistant Clerk for case processing..(ama) (Entered: 04/15/2022) |
| 04/18/2022 | | Mailed a copy of 907 Order on Motion to Withdraw as Attorney, to Martin Shkreli, Register No. 87850-053, FCI Allenwood Low Federal Correctional Institution, P.O. Box 1000White Deer, PA 17887. (dsh) (Entered: 04/18/2022) |
| 04/25/2022 | 908 | OPINION AND ORDER: Shkreli's March 7 motion to stay or to modify the February 4 Injunction pending appeal is denied. The Clerk of Court shall mail a copy of this Opinion to Martin Shkreli and note service on the docket. (Signed by Judge Denise L. Cote on 4/25/2022) (vfr) Transmission to Docket Assistant Clerk for processing. (Entered: 04/25/2022) |
| 04/25/2022 | | Mailed a copy of 908 Memorandum & Opinion, to Martin Shkreli, Register No. 87850-053, FCI Allenwood Low Federal Correctional Institution, P.O. Box 1000White Deer, PA 17887. (dsh) (Entered: 04/25/2022) |
| 04/26/2022 | 909 | ORDER terminating 877 Motion for Attorney Fees. The Moving States will be given an opportunity to submit supplemental declarations that describe any particular tasks for which they contend they are entitled to be compensated and a revised lodestar calculation. The Clerk of Court shall mail a copy of this Order to Martin Shkreli and note service on the docket. (Signed by Judge Denise L. Cote on 4/26/2022) (vfr) Transmission to Docket Assistant Clerk for processing. Modified on 4/26/2022 (vfr). (Entered: 04/26/2022) |
| 04/26/2022 | 910 | ORDER: It is hereby ORDERED that, pursuant to the Order of April 26, the Moving States may file supplemental declarations and a revised lodestar calculation by May 2, 2022. Should they make a supplemental submission, they shall serve those submissions on the defendant Martin Shkreli. IT IS FURTHER ORDERED that any response by Shkreli shall be filed by May 31, 2022. IT IS FURTHER ORDERED that the Clerk of Court shall mail a copy of this Order to Shkreli and note service on the docket. SO ORDERED. (Signed by Judge Denise L. Cote on 4/26/2022) (vfr) Transmission to Docket Assistant Clerk for processing. (Entered: 04/26/2022) |
| 04/27/2022 | | Mailed a copy of 909 Order, 910 Order, to Martin Shkreli, Register No. 87850-053, FCI Allenwood Low Federal Correctional Institution, P.O. Box 1000White Deer, PA 17887. (dsh) (Entered: 04/27/2022) |
| 05/02/2022 | 911 | DECLARATION in Support re: 877 MOTION for Attorney Fees .. Document filed by Commonwealth of Pennsylvania. (Attachments: # 1 Exhibit Supplemental Time Records).(Scannell, Stephen) (Entered: 05/02/2022) |
| 05/26/2022 | 912 | PRO SE MEMORANDUM, dated 5/16/22 re: CHANGE OF ADDRESS for Martin Shkreli. New Address: 94-38 58th Ave., Apt. 5B, Elmhurst, New York, 11373. (sc) |

|  |  | (Entered: 05/26/2022) |
|---|---|---|
| 06/02/2022 | 913 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for Quyen D. Toland to Appear Pro Hac Vice *MOTION FOR ADMISSION PRO HAC VICE*. Filing fee $ 200.00, receipt number ANYSDC-26226822. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by State of California. (Attachments: # 1 Affidavit Affidavit of Quyen Toland, # 2 Text of Proposed Order Proposed Order). (Toland, Quyen) Modified on 6/3/2022 (sgz). (Entered: 06/02/2022) |
| 06/03/2022 |  | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice to RE-FILE Document No. 913 MOTION for Quyen D. Toland to Appear Pro Hac Vice *MOTION FOR ADMISSION PRO HAC VICE*. Filing fee $ 200.00, receipt number ANYSDC-26226822. Motion and supporting papers to be reviewed by Clerk's Office staff.</FON.. The filing is deficient for the following reason(s): Affidavit Not Notarized;. Re-file the motion as a Motion to Appear Pro Hac Vice - attach the correct signed PDF - select the correct named filer/filers - attach valid Certificates of Good Standing issued within the past 30 days - attach Proposed Order. (sgz) (Entered: 06/03/2022)** |
| 06/07/2022 | 914 | MOTION for Quyen D. Toland to Appear Pro Hac Vice *MOTION FOR ADMISSION PRO HAC VICE*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by State of California. (Attachments: # 1 Affidavit Affidavit of Quyen Toland (Notarized), # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order Proposed Order).(Toland, Quyen) (Entered: 06/07/2022) |
| 06/08/2022 |  | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 914 MOTION for Quyen D. Toland to Appear Pro Hac Vice *MOTION FOR ADMISSION PRO HAC VICE*. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (sgz)** (Entered: 06/08/2022) |
| 06/08/2022 | 915 | ORDER granting 914 Motion for Quyen D. Toland to Appear Pro Hac Vice (HEREBY ORDERED by Judge Denise L. Cote)(Text Only Order) (jwh) (Entered: 06/08/2022) |
| 06/08/2022 | 916 | MOTION for Michael D. Battaglia to Withdraw as Attorney . Document filed by State of California..(Battaglia, Michael) (Entered: 06/08/2022) |
| 06/10/2022 | 917 | MEMO ENDORSEMENT granting 916 Motion to Withdraw as Attorney. ENDORSEMENT: Granted. Attorney Michael Battaglia terminated. (Signed by Judge Denise L. Cote on 6/10/2022) (vfr) (Entered: 06/10/2022) |
| 06/10/2022 | 918 | ORDER: It is hereby ORDERED that the Moving States' unopposed supplemental motion for attorneys' fees is granted. IT IS FURTHER ORDERED that the Clerk of Court shall enter judgment in the amount of $853,440.80 in favor of the Moving States. Additionally, the Clerk of Court shall mail a copy of this Order to Shkreli at the below address and note service on the docket. Martin Shkreli, 94-38 58th Ave., Apt. 5B, Elmhurst, New York, 11373. SO ORDERED. (Signed by Judge Denise L. Cote on 6/10/2022) (vfr) Transmission to Docket Assistant Clerk for processing. Transmission to Orders and Judgments Clerk for processing. (Entered: 06/10/2022) |
| 06/13/2022 |  | Mailed a copy of 918 Order, to Martin Shkreli, 94-38 58th Ave., Apt. 5B, Elmhurst, New York, 11373. (dsh) (Entered: 06/13/2022) |
| 06/13/2022 | 919 | JUDGMENT FOR ATTORNEY'S FEES in favor of Commonwealth of Pennsylvania, State of California, State of Illinois, State of Ohio against Martin Shkreli in the amount of $853,440.80. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Order dated June 10, 2022, judgment is entered in the |

SDNY CM/ECF NextGen Version 1.6

| | | amount of $853,440.80 in favor of the Moving States. (Signed by Clerk of Court Ruby Krajick on 6/13/2022) (Attachments: # 1 Right to Appeal) (Entered: 06/13/2022) |
| 07/18/2022 | | Received returned mail re: 918 Order. Mail was addressed to Martin Shkreli, 94-38 58th Ave., Apt. 5B, Elmhurst, New York 11373 and was returned for the following reason(s): Return To Sender Attempted - Not Known Unable To Forward. (vn) (Entered: 07/19/2022) |
| 09/23/2022 | 920 | ORDER: Accordingly, it is hereby ORDERED that any opposition to the Receiver's request be filed by September 27, 2022. If no such opposition is filed, the Court shall issue the Receiver's proposed order. (Signed by Judge Denise L. Cote on 9/23/2022) (mml) (Entered: 09/23/2022) |

**PACER Service Center**

**Transaction Receipt**

12/21/2022 11:24:20

| PACER Login: | teamrpacc | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:20-cv-00706-DLC |
| Billable Pages: | 30 | Cost: | 3.00 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

FEDERAL TRADE COMMISSION,
    600 Pennsylvania Ave., NW
    Washington, DC 20580

STATE OF NEW YORK,
    28 Liberty Street
    New York, NY 10005

STATE OF CALIFORNIA,
    455 Golden Gate Avenue Suite
    11000 San Francisco, CA 94102

STATE OF ILLINOIS,
    100 West Randolph Street
    Chicago, IL 60601

STATE OF NORTH CAROLINA,
    114 West Edenton Street
    Raleigh, NC 27603

STATE OF OHIO,
    150 E. Gay Street, 22nd Floor
    Columbus, OH 43215

COMMONWEALTH OF PENNSYLVANIA,
    Strawberry Square
    Harrisburg, PA 17120

    and

COMMONWEALTH OF VIRGINIA,
    202 North Ninth Street
    Richmond, VA 23219

                Plaintiffs,

    v.

VYERA PHARMACEUTICALS, LLC,
    600 Third Ave., 10th Floor
    New York, NY 10016

PHOENIXUS AG,
    Hadlenstrasse 5

Case No. 1:20-cv-00706-DLC

6340 Baar, Switzerland

MARTIN SHKRELI, individually, as an
owner and former director of Phoenixus AG
and a former executive of Vyera
Pharmaceuticals, LLC,
      FCI Allenwood Low
      Federal Correctional Institution
      P.O. Box 1000
      White Deer, PA 17887

      and

KEVIN MULLEADY, individually, as an
owner and director of Phoenixus AG and a
former executive of Vyera Pharmaceuticals,
LLC,
      330 East 38th St., Apt. 54K
      New York, NY 10016

                Defendants.

**Redacted Amended Complaint for Injunctive and Other Equitable Relief**

Plaintiffs, the Federal Trade Commission ("FTC" or "the Commission"), by its

designated attorneys, and the states of New York, California, Illinois, North Carolina, Ohio,

Pennsylvania, and Virginia, by and through their Attorneys General, petition this Court, pursuant

to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), Section 16 of the

Clayton Act, 15 U.S.C § 26, Section 342 of the New York General Business Law, Section 63(12)

of the New York Executive Law, Sections 16700 *et seq.* and 17200 *et seq.* of the California

Business and Professions Code, Section 7 of the Illinois Antitrust Act, 740 ILCS 10/1 *et seq.*,

North Carolina Unfair or Deceptive Practices Act, N.C. Gen. Stat. §75-1 *et seq.*, Chapter 1331

and Section 109.81 of the Ohio Revised Code, Pennsylvania Unfair Trade Practices and

Consumer Protection Law, 73 P.S. § 201-1 *et seq.* and Common Law Doctrine against Restraints

of Trade proceeding under 71 P.S. §732-204 (c), and the Virginia Antitrust Act, Virginia Code §

59.1-9.1 *et seq.*; for a permanent injunction and other equitable relief, including equitable

monetary relief, against Defendants Vyera Pharmaceuticals, LLC ("Vyera"), Phoenixus AG

("Phoenixus"), Martin Shkreli, and Kevin Mulleady to undo and prevent their anticompetitive

conduct and unfair methods of competition in or affecting commerce in violation of Sections 1

and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, Section 5(a) of the Federal Trade Commission Act,

15 U.S.C. § 45(a), and state law.

**I.      Nature of the Case**

1.      This case challenges a comprehensive scheme by Vyera, its parent company

Phoenixus, and two of the companies' owners and executives, Shkreli and Mulleady, to block

lower-cost generic competition to Daraprim, an essential drug used to treat the potentially fatal

parasitic infection toxoplasmosis. Their unlawful scheme to maintain a monopoly on Daraprim

continues to this day.

2.      Daraprim had been sold as an affordable, life-saving treatment for more than 60

years. In 2015, however, Defendants acquired the U.S. rights to Daraprim from the only existing

supplier and immediately raised the price from $17.50 to $750 per tablet—an increase of more

than 4,000%. This massive price hike delivered immediate benefits to Defendants, increasing

Daraprim's annual revenues from ███████ to over ███████.

3.      Defendants knew, though, that this revenue boon could be short lived: Daraprim

had no patent or regulatory protection and the massive price increase would attract competition

from lower-priced generic products. To preserve the Daraprim revenue stream, Vyera and

Phoenixus—under the direction of Shkreli and Mulleady—executed an elaborate, multi-part

scheme to block generic entry.

4.      First, Defendants created a complex web of contractual restrictions that prohibit

distributors and purchasers from reselling Daraprim to generic companies or their agents.

3

Defendants understood that restricting access to branded Daraprim could stifle generic competition. The U.S. Food & Drug Administration ("FDA") requires any generic applicant to conduct bioequivalence testing comparing its product to samples of the branded drug. Vyera's resale restrictions made it virtually impossible for generic companies to purchase sufficient quantities of Daraprim to conduct these FDA-required tests. Indeed, several generic companies tried for more than a year to secure enough branded Daraprim samples for testing, but were unable to do so. At least one other generic company simply abandoned its development plans.

5.     Second, Defendants cut off competitors' access to pyrimethamine—the active pharmaceutical ingredient ("API") necessary to manufacture Daraprim. Defendants first locked up Fukuzyu Pharmaceutical Co., Ltd., the only supplier approved to manufacture pyrimethamine for the U.S. market. Under the exclusive supply agreement, Fukuzyu unequivocally agreed not to sell pyrimethamine for human use in the United States to anyone other than Defendants.

6.     After locking up Fukuzyu, Defendants moved to sideline a new potential manufacturer, RL Fine Chem Pvt. Ltd. Upon learning that multiple generic companies had been working with RL Fine to develop their generic Daraprim products, Defendants executed another exclusive supply agreement. Defendants had no need for a second source of API, never purchased any API from RL Fine, and never even completed the regulatory work necessary to use RL Fine's API in Daraprim. Nonetheless, under this agreement, Phoenixus has paid RL Fine nearly ████ not to supply its potential competitors—while it has paid Fukuzyu only ███ for the API it actually uses in its Daraprim product.

7.     Third, Defendants signed "data-blocking" agreements with Vyera's distributors to prevent them from selling their Daraprim sales data to third-party data reporting companies, such as IQVIA. These reporting companies purchase, compile, and sell sales data on pharmaceutical

4

products, which generic companies then buy. These data are critical for generic companies'
assessment of whether a given development opportunity is worth pursuing. Defendants' data-
blocking agreements prevented the reporting companies from obtaining accurate information
about Daraprim sales. By obscuring these sales, Defendants sought to prevent generic companies
from accurately assessing the market opportunity for a generic Daraprim product and thereby
deter them from even pursuing development of a generic product.

8.     The purpose and effect of Defendants' anticompetitive conduct has been to thwart
potential generic competition and protect the Daraprim revenues resulting from Vyera's
shocking price increase. Absent Defendants' anticompetitive conduct, Daraprim would have
faced generic competition years ago. Instead, toxoplasmosis patients who need Daraprim to
survive were denied the opportunity to purchase a lower-cost generic version, forcing them and
other purchasers to pay tens of millions of dollars a year more for this life-saving medication.

## II.     Jurisdiction and Venue

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
§§ 1331, 1337(a), and 1345, as well as under the principles of supplemental jurisdiction codified
in 28 U.S.C. § 1367(a). This Court's exercise of supplemental jurisdiction over Plaintiffs' state
law claims would avoid unnecessary duplication and multiplicity of actions, and should be
exercised in the interests of judicial economy, convenience, and fairness.

10.    This Court has personal jurisdiction over Vyera, Phoenixus, Shkreli, and
Mulleady because each has the requisite constitutional contacts with the United States of
America pursuant to 15 U.S.C. § 53(b). This Court also has personal jurisdiction over Vyera,
Phoenixus, Shkreli, and Mulleady because each has the requisite constitutional contacts with the
state of New York due to their domicile, extent of their business transactions within New York,
contracts to supply goods and services in New York, soliciting business in New York, and/or

committing illegal acts as alleged herein within the state of New York, pursuant to N.Y. CPLR §§301, 302.

11.      Venue in this District is proper under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), 15 U.S.C. § 22, and 15 U.S.C. § 1391(b) and (c). Each Defendant resides, transacts business, committed an illegal act, or is found in this District.

12.      Defendants' general business practices, and the unfair methods of competition alleged herein, are "in or affecting commerce" within the meaning of Section 5 of the FTC Act, 15 U.S.C. § 45.

13.      Vyera and Phoenixus are, and at all times relevant herein have been, corporations as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

14.      Martin Shkreli and Kevin Mulleady are "persons" within the meaning of Section 5 of the Federal Trade Commission Act, as amended, 15 U.S.C. § 45.

## III.     The Parties

### A.      Plaintiff Federal Trade Commission

15.      Plaintiff Federal Trade Commission is an independent administrative agency of the United States government, established, organized, and existing pursuant to the FTC Act, 15 U.S.C. § 41 *et seq.*, with its principal offices in Washington, DC, and a regional office in Manhattan in New York City, New York. The FTC is vested with authority and responsibility for enforcing, *inter alia*, Section 5 of the FTC Act, 15 U.S.C. § 45, and is authorized under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to initiate court proceedings to enjoin violations of any law the FTC enforces.

16.      The FTC is authorized to bring this case in federal court because Defendants are violating or about to violate a provision of law enforced by the Federal Trade Commission, and

this is a proper case for permanent injunctive relief within the meaning of Section 13(b) of the

FTC Act, 15 U.S.C. § 53(b).

    **B.**    **Plaintiff State of New York**

17.    Plaintiff State of New York is a sovereign state. Letitia James is the Attorney

General of the State of New York, the chief legal officer for the state, and brings this action on

behalf of the people of the State of New York to protect the state, its general economy, and its

residents from Defendants' anticompetitive business practices. The Attorney General has

authority under federal and state law to pursue an injunction and other equitable relief to prevent

and remedy the harms caused by anticompetitive conduct. The state also has authority to seek

civil penalties under state law to punish and deter those engaged in anticompetitive conduct.

    **C.**    **Plaintiff State of California**

18.    Plaintiff State of California is a sovereign state. Xavier Becerra is the Attorney

General of the State of California, the chief legal officer for the state, and brings this action on

behalf of the people of the State of California to protect the state, its general economy, and its

residents from Defendants' anticompetitive business practices. The Attorney General has

authority under federal and state law to pursue an injunction and other equitable relief to prevent

and remedy the harms caused by anticompetitive conduct. The state also has authority to seek

civil penalties under state law to punish and deter those engaged in anticompetitive conduct.

    **D.**    **Plaintiff State of Illinois**

19.    Plaintiff State of Illinois is a sovereign state. Kwame Raoul is the Attorney

General of the State of Illinois, the chief legal officer for the state, and brings this action on

behalf of the people of the State of Illinois to protect the state, its general economy, and its

residents from Defendants' anticompetitive business practices. The Attorney General has

authority under federal and state law to pursue an injunction and other equitable relief to prevent

and remedy the harms caused by anticompetitive conduct. The state also has authority to seek

civil penalties under state law to punish and deter those engaged in anticompetitive conduct.

    **E.**    **Plaintiff State of North Carolina**

20.    Plaintiff State of North Carolina is a sovereign state. Joshua H. Stein is the

Attorney General of the State of North Carolina, the chief legal officer for the state, and brings

this action on behalf of the people of the State of North Carolina to protect the state, its general

economy, and its residents from Defendants' anticompetitive business practices. The Attorney

General has authority under federal and state law to pursue an injunction and other equitable

relief to prevent and remedy the harms caused by anticompetitive conduct. The state also has

authority to seek civil penalties under state law to punish and deter those engaged in

anticompetitive conduct.

    **F.**    **Plaintiff State of Ohio**

21.    Plaintiff State of Ohio is a sovereign state. David Yost is the Attorney General of

the State of Ohio, the chief legal officer for the state, and brings this action on behalf of the

people of the State of Ohio to protect the state, its general economy, and its residents from

Defendants' anticompetitive business practices. The Attorney General has authority under

federal and state law to pursue an injunction and other equitable relief to prevent and remedy the

harms caused by anticompetitive conduct. The state also has authority to seek civil penalties

under state law to punish and deter those engaged in anticompetitive conduct.

    **G.**    **Plaintiff Commonwealth of Pennsylvania**

22.    Plaintiff Commonwealth of Pennsylvania is a sovereign state. Josh Shapiro is the

Attorney General of the Commonwealth of Pennsylvania, the chief legal officer for the state, and

brings this action on behalf of the people of the Commonwealth of Pennsylvania to protect the

state, its general economy, and its residents from Defendants' anticompetitive business practices.

The Attorney General has authority under federal and state law to pursue an injunction and other equitable relief to prevent and remedy the harms caused by anticompetitive conduct. The state also has authority to seek civil penalties under state law to punish and deter those engaged in anticompetitive conduct.

### H.   Plaintiff Commonwealth of Virginia

23.     Plaintiff Commonwealth of Virginia is a sovereign state. Mark R. Herring is the Attorney General of the Commonwealth of Virginia, the chief legal officer for the state, and brings this action on behalf of the people of the Commonwealth of Virginia to protect the state, its general economy, and its residents from Defendants' anticompetitive business practices. The Attorney General has authority under federal and state law to pursue an injunction and other equitable relief to prevent and remedy the harms caused by anticompetitive conduct. The state also has authority to seek civil penalties under state law to punish and deter those engaged in anticompetitive conduct.

### I.   Corporate Defendants

24.     Phoenixus AG is a privately-held, for-profit Swiss corporation with its principal place of business located in Baar, Switzerland. Phoenixus was previously known as Turing Pharmaceuticals AG and Vyera Pharmaceuticals AG. Phoenixus transacts or has transacted business in this District.

25.     Phoenixus is engaged in the manufacture and distribution of the pharmaceutical product Daraprim. Phoenixus acquired the rights to market and distribute Daraprim in the United States in August 2015. It designated its wholly-owned subsidiary, Vyera Pharmaceuticals, LLC, as the exclusive U.S. distributor for Daraprim. Phoenixus is responsible for the manufacture and warehousing of Daraprim and sells the product to Vyera for distribution in the United States.

Phoenixus is also involved in the distribution, pricing, and commercial and marketing activities of Daraprim.

26.     Vyera Pharmaceuticals, LLC, is a privately-held, for-profit limited liability corporation that is wholly owned by Phoenixus AG. Vyera is incorporated in Delaware with its principal place of business located in New York City, New York. Vyera was previously named Turing Pharmaceuticals, LLC. Vyera transacts business in this District and throughout the United States.

27.     Vyera is registered with the FDA as the owner of the Daraprim New Drug Application (No. 008578). Vyera purchases Daraprim from Phoenixus and then markets and distributes the product throughout the United States.

28.     Defendants Phoenixus and Vyera have operated and continue to operate as a common enterprise while engaging in the unfair methods of competition alleged below. Defendants have engaged in this conduct as interrelated companies that share directors, officers, employees, business functions, and office locations. Phoenixus has only five direct employees and largely operates through Vyera, which has more than 50 employees. The current CEO of Phoenixus, Averill Powers, is also Vyera's top executive and general counsel and works out of Vyera's New York office. Phoenixus's few Switzerland-based employees perform functions for Vyera. Phoenixus's board of directors controls Vyera, which has no board.

29.     Vyera's sales of Daraprim account for over ███ of Phoenixus's revenues.

30.     Unless otherwise specified, this Complaint refers to Vyera and Phoenixus collectively as "Vyera" when discussing their joint conduct relating to Daraprim.

**J.      Individual Defendants**

**1.  Martin Shkreli**

31.      Martin Shkreli is the founder of Phoenixus and Vyera, the largest shareholder and

former chairman of the board of Phoenixus, and the former CEO of Vyera. At all times material

to this Complaint, acting alone or in concert with others, Shkreli has formulated, directed,

controlled, had the authority to control, or participated in the acts and practices set forth in this

Complaint. Shkreli resided in this District until his federal incarceration for securities fraud in

2017. In connection with the conduct alleged herein, he transacts or has transacted business in

this District and throughout the United States.

32.      Prior to founding Vyera, from 2006 to 2011, Shkreli founded and ran three hedge

funds, all of which failed.

33.      In 2011, Shkreli abandoned hedge funds for pharmaceuticals. He founded the

pharmaceutical company Retrophin, Inc., despite having no pharmaceutical business experience.

34.      During his brief tenure at Retrophin, Shkreli acquired Thiola, a sole-source drug

for a small but dependent patient population, placed it into a restricted distribution system, and

significantly increased the price. He stated at the time that he intended to use distribution

restrictions to prevent generic competition to Thiola.

35.      Shkreli was ousted from Retrophin in 2014 by the board of directors for

misconduct relating to improper grants and trades of company stock.

36.      Upon leaving Retrophin, Shkreli started Vyera to look for similar products with

which to replicate his Retrophin strategy.

37.      As founder and CEO of Vyera, Shkreli directed the minute details of Vyera's

business and strategy, including the decision to acquire Daraprim, securing a source for the

drug's API, and implementing a restricted distribution system.

38.     Shkreli remained CEO until his arrest in December 2015 for securities fraud

stemming from conduct at his hedge funds and at Retrophin. He was subsequently convicted of

several felonies, including securities fraud and conspiracy to commit securities fraud, and

sentenced to seven years in federal prison. Shkreli remained free on bail until September 2017,

when his bail was revoked for making threats against Hillary Clinton.

39.     With the exception of a brief period in the first half of 2017, Shkreli has

maintained his influence over Phoenixus and Vyera through associates as well as his position as

Phoenixus's largest shareholder. Shkreli's longtime ally Ron Tilles served as interim CEO from

Shkreli's departure in December 2015 until April 2017. Tilles co-founded Retrophin with Shkreli

and was a founding board member of Phoenixus. As detailed in a report by the U.S. Senate

Special Committee on Aging, Tilles was Shkreli's "handpicked successor"—"a broker by

training whose main skillset was soliciting investors and who, by his own admission, did not

know the most basic of pharmaceutical concepts."

40.     In April 2017, Mr. Tilles was briefly replaced by Dr. Eliseo Salinas. When Dr.

Salinas proved resistant to Shkreli's influence, however, Shkreli waged a successful proxy fight

to oust Dr. Salinas and the Phoenixus board.

41.     In June 2017, Shkreli's close associates, including Mulleady and Akeel Mithani,

were elected to Phoenixus's board of directors. Mulleady and Mithani were appointed as the only

two members of the board's newly-formed "Executive Committee," which would "perform

executive functions and [] take over the tasks of the Senior Management (CEO, CFO, CCO and

CLO) on a temporary basis." Mulleady was appointed interim CEO notwithstanding the

concerns of some board members that ████████████████████████████████

████████████ Mulleady's appointment ████████████████████████████████

12

██████████████ Mulleady assumed the position of interim CEO of Vyera in September 2017 and CEO in November 2017.

42.      Mithani is Shkreli's protégé. Mithani obtained his undergraduate degree in 2014 and soon began communicating with Shkreli through Twitter. In 2015, Shkreli invited him to apply for a job at Vyera as a junior business development analyst, which Mithani did not get because (in his own words) he "sorely lacked the qualifications." In June 2017, however, Shkreli secured Mithani's election to the Phoenixus board. Since then, Mithani has been a member of the board's Executive Committee as well as executive director and senior vice president of business development of Vyera.

43.      By August 2017, Shkreli was once again formally evaluating business development options for Vyera and working on new tactics to impede generic competition for Daraprim. Phoenixus also initiated a share buy-back initiative, which several shareholders felt was "merely intended to increase Martin Shkreli's holding in the company and to facilitate his control over it."

44.      Since his incarceration in September 2017, Shkreli has remained in regular contact with Mulleady and Mithani through phone calls, emails, in-person visits, WhatsApp messaging, and potentially other means. From June to December 2019 alone, Shkreli exchanged 240 emails with Mulleady and 391 emails with Mithani. In these communications, Shkreli continues to discuss strategies to prevent generic competition to Daraprim, as well as other matters of Vyera business strategy.

45.      In March 2019, a Wall Street Journal article reported that Shkreli "remains the shadow power at Phoenixus AG" and that he was using a contraband cell phone to run Vyera

from prison. ████████████████████████████████████████████

████████████████████████████████████████

46.     Shkreli owns approximately ████ of Phoenixus shares and controls approximately

████ of shareholder votes.

### 2.  Kevin Mulleady

47.     Kevin Mulleady is the current chairman of the Phoenixus board of directors and

former CEO of Vyera. At all times material to this Complaint (with the exception of a brief

period from early 2016 until June 2017), acting alone or in concert with others, he has

formulated, directed, controlled, had the authority to control, or participated in the acts and

practices set forth in this Complaint. Mulleady resides in this District and, in connection with the

matters alleged herein, he transacts or has transacted business in this District.

48.     Before joining Vyera, Mulleady had little pharmaceutical experience.

49.     Following his graduation from college in 2005, Mulleady held entry-level

positions in wealth management and also worked as a real estate broker.

50.     In 2011, Mulleady took a position finding investors for Shkreli's failing hedge

funds. (He was an unindicted co-conspirator in the criminal securities fraud case against Shkreli.)

Mulleady helped Shkreli start both Retrophin and Vyera.

51.     At Vyera, Mulleady initially held the position of managing director and chief of

staff to Martin Shkreli. He assisted with Vyera's search for a drug serving a small patient

population to put into restricted distribution and helped to implement this model for Daraprim. In

2016, not long after Shkreli's arrest, Vyera terminated Mulleady's employment.

52.     Mulleady returned in the summer of 2017 as a member of the Phoenixus board, a

position he still holds, and CEO of Vyera, a position he held until March 2019. In these roles,

Mulleady has directed Vyera's campaign to prevent generic competition to Daraprim, including

14

restricting its distribution and resale to potential generic competitors, paying an API supplier not to supply potential generic competitors, and entering agreements to pay two of Vyera's major distributors not to sell their Daraprim sales information to data-reporting companies.

53.     Mulleady owns more than ▮ of Phoenixus shares.

## IV.     Background

### A.     Federal Law Encourages Generic Competition

54.     The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*., as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 (the "Hatch-Waxman Act") and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, 21 U.S.C. §§ 355(b)(2) and 355(j) and 35 U.S.C. § 271(e), establishes procedures designed to facilitate competition from lower-priced generic drugs.

55.     A company seeking to market a new pharmaceutical product in the United States must file a New Drug Application ("NDA") with the FDA demonstrating the safety and efficacy of the new product. These NDA-based products generally are referred to as "brand-name drugs" or "branded drugs."

56.     A company seeking to market a generic version of a branded drug may file an Abbreviated New Drug Application ("ANDA") with the FDA, referencing the branded drug's NDA. The generic applicant must demonstrate that its generic drug is therapeutically equivalent to the brand-name drug that it references, meaning that the generic drug is the same as the brand-name drug in dosage form, safety, strength, route of administration, quality, performance characteristics, and intended use. If the FDA determines that the generic drug is therapeutically equivalent to the already-approved branded drug, it will assign the generic drug an "AB" rating and will allow the generic company to rely on the studies submitted in connection with the

already-approved branded drug's NDA to establish that the generic drug is safe and effective. 21

U.S.C. § 355(j)(2)(A)(iv).

57.     To establish that the generic drug is therapeutically equivalent to the branded

drug, the ANDA applicant must demonstrate bioequivalence, meaning that there is no significant

difference in the rate and extent to which the active ingredient becomes available in the body. To

make this showing, the applicant must acquire substantial quantities of the referenced branded

drug and conduct bioequivalence testing comparing its generic version against that branded drug.

58.     The ANDA applicant must conduct both in vivo and in vitro bioequivalence

testing. In the in vivo testing, the same small group of human subjects (a minimum of 12, but

often 20 to 30 people) sequentially takes the two products and the pharmacokinetic performance

of the drug is measured through bloodwork. The in vitro dissolution testing compares the rate

and extent to which the branded and generic drugs form a solution from their original dosage

form (e.g., tablet or capsule).

59.     The ANDA applicant must also reserve enough branded drug samples to perform

each of the required tests five times.

60.     Depending on the product, a generic manufacturer may need as many as 1,000 to

5,000 doses of the branded drug to conduct bioequivalence testing, all of which must be from the

same manufacturing lot to assure uniform character and quality.

61.     Normally, the ANDA applicant can obtain sufficient samples of the branded drug

by purchasing them through normal distribution channels, such as drug wholesalers.

62.     An ANDA applicant must also secure an acceptable, steady supply of the drug's

API, which is the ingredient that provides the drug's pharmacological activity. Pharmaceutical

companies typically purchase API from third-party suppliers. In order for an API to be used in a

pharmaceutical product, the FDA must approve the API product, the API manufacturing process, and the API manufacturer's quality controls, facility, and compliance with good manufacturing practices. An ANDA must therefore contain extensive information about the API and its manufacturer, including a complete description of the manufacturing process and process controls, the control of materials used in the manufacture of the drug substance, controls of critical steps and intermediates, process validation, and the manufacturing process development. In addition to reviewing this information in detail, the FDA will typically audit the API manufacturer and its facility.

63.     If a generic cannot find an API supplier with an existing process that can meet the FDA's standards, it will typically need to work with a new supplier to develop a manufacturing process for the API, which can take months or years.

64.     A supplier that has already developed a process to produce an API can separately submit a drug master file ("DMF") to the FDA containing this required information. In that case, an applicant using that supplier can reference the DMF in its ANDA rather than developing and submitting the information anew. The generic applicant's path to FDA approval is easier and faster if the FDA has already inspected the API supplier's facility and approved the manufacturing process. Even if the FDA still needs to inspect the API supplier, the DMF indicates that the manufacturer has an existing, FDA-approvable process to manufacture the API, which can shorten the ANDA development timeline.

**B.      Competition from Lower-Priced Generic Drugs Saves American Consumers Billions of Dollars Each Year**

65.     Generic drugs are uniquely close competitors to their branded counterparts and are a critical part of lowering prescription drug prices in the United States.

66.     All 50 states and the District of Columbia have drug substitution laws that encourage and facilitate substitution of lower-cost AB-rated generic drugs for branded drugs. When a pharmacist fills a prescription written for a branded drug, these laws allow or require the pharmacist to dispense an AB-rated generic version of the drug instead of the more expensive branded drug, unless a physician directs or the patient requests otherwise. Conversely, these laws generally do not permit a pharmacist to substitute a non-AB-rated generic for a branded drug unless the physician specifically prescribes it by writing on the prescription the chemical name of the drug, rather than the brand name.

67.     The Hatch-Waxman Act and state substitution laws have succeeded in facilitating generic competition and generating large savings for patients, healthcare plans, and federal and state governments. The first generic competitor's product is typically offered at a 20% to 30% discount to the branded product. Subsequent generic entry creates greater price competition, with discounts reaching 85% or more off the brand price. According to a 2010 Congressional Budget Office report, the retail price of a generic is 75% lower, on average, than the retail price of a brand-name drug. In 2018 alone, the Association of Accessible Medicines reported that use of generic versions of brand-name drugs saved the U.S. healthcare system $293 billion.

68.     Because of these cost savings, many third-party payers of prescription drugs (e.g., health insurance plans and Medicaid programs) have adopted policies to encourage the substitution of AB-rated generic drugs for their branded counterparts. As a result of these policies and lower prices, many consumers routinely switch from a branded drug to an AB-rated generic drug upon its introduction. Consequently, AB-rated generic drugs typically capture over 80% of a branded drug's unit and dollar sales within six months of market entry.

C.       **Daraprim Is the Gold-Standard Treatment for Toxoplasmosis**

69.      Toxoplasmosis is a common parasitic infection typically transmitted through undercooked meat and infected cat feces. In most humans, toxoplasmosis is easily contained by their immune systems and causes no symptoms.

70.      But in immunocompromised individuals—such as those with HIV/AIDS, cancer patients, or recipients of organ transplants—the infection can morph into a potentially fatal organ infection, most commonly in the brain, lungs, or heart. The parasite can also infect the eyes (ocular toxoplasmosis).

71.      An expectant mother can also pass the *toxoplasma gondii* parasite in utero, causing congenital toxoplasmosis, which left untreated can lead to blindness, severe intellectual disabilities, and other neurological problems.

72.      In the United States, the number of toxoplasmosis cases requiring treatment each year is small (less than 7,000 per year from 2003-2012) and declining as treatment of HIV/AIDS improves.

73.      The gold-standard treatment for toxoplasmosis is pyrimethamine. All U.S. government health authority guidelines identify pyrimethamine as the preferred treatment for the infection. The Centers for Disease Control and Prevention advise that pyrimethamine is the "most effective drug against toxoplasmosis." The National Institute of Health calls pyrimethamine the "initial therapy of choice," and it advises other options only if pyrimethamine is "unavailable or there is a delay in obtaining it."

74.      Pyrimethamine is on the World Health Organization's Model List of Essential Medicines, which identifies the minimum medicines needed for a basic healthcare system.

75.      Daraprim (NDA No. 08578) is a branded version of pyrimethamine. It was first approved by the FDA in 1953. It long ago lost any patent protection or regulatory exclusivity.

76.     Daraprim is available only as a 25-milligram tablet. Generally, a toxoplasmosis infection is diagnosed in an acute hospital setting, and the patient typically remains hospitalized for two to three weeks. During this stage, the starting dosage for adults is 50 to 75 milligrams of Daraprim per day.

77.     Following discharge, patients typically continue on about half that amount for four to five additional weeks, though some patients must remain on pyrimethamine for months or years to prevent recurrence.

78.     From the time Vyera acquired Daraprim in 2015 until the FDA approved a generic version of Daraprim on February 28, 2020, Daraprim was the only FDA-approved pyrimethamine product (branded or generic).

**D.     Vyera's Acquisition of Daraprim**

**1.  Prior ownership of Daraprim**

79.     GlaxoSmithKline plc and its predecessor entities owned the worldwide rights to Daraprim from its approval in 1953 until 2010.

80.     By 2010, GSK charged around $1 per Daraprim tablet and had relatively low revenues of less than $1 million per year in the United States due to the low incidence of toxoplasmosis.

81.     GSK still sells Daraprim in the United Kingdom, where it charges less than $1 per tablet.

82.     In 2010, GSK sold its U.S. and Canadian Daraprim rights to CorePharma LLC, which then transferred the product to its sister company, Amedra Pharmaceuticals LLC.

83.     Between 2010 and 2015, CorePharma and Amedra gradually increased the price of Daraprim to $13.50 per tablet. Additionally, Amedra developed a plan to remove Daraprim from normal distribution channels and put it into a restricted distribution system.

20

84.     In March 2015, Impax Laboratories, Inc. acquired Daraprim as part of a $700 million acquisition of Amedra's parent company, Tower Holdings, Inc. At the time, Impax assessed Daraprim as a non-core asset with declining annual revenues of $5 million or less.

85.     In June 2015, Impax increased the price of Daraprim by 30%, from $13.50 to $17.50 per tablet. Impax had considered a more "aggressive" price increase, but rejected the idea due to concern about a public backlash from the AIDS community. Impax also began to implement Amedra's restricted distribution system, signing contracts with two distributors.

### 2. Vyera's acquisition of Daraprim

86.     From its inception in fall 2014, Vyera had been looking to acquire a sole-source drug with a small patient population that it could put into restricted distribution. As Vyera explored different drugs that fit this mold, it sought distribution partners that would "help [it] keep a tightly controlled supply chain, where [the] drug is only supplied to verified patients."

87.     In April 2015, unaware of Impax's plan to place Daraprim into restricted distribution, Vyera contacted Impax with an unsolicited bid to acquire the U.S. Daraprim rights for ▮▮▮▮▮▮. At the time, Daraprim had annual U.S. net revenues of approximately ▮▮▮▮▮▮ per year. Impax had assessed Daraprim's net present value at $17.1 million, assuming no generic entry.

88.     On August 7, 2015, Vyera acquired the U.S. rights to Daraprim for the final negotiated price of $55 million—triple Impax's net-present-value assessment and more than 11 times Daraprim's annual net revenues.

89.     Vyera had a plan to turn Impax's $5 million-per-year drug into a $500 million-per-year drug. The plan started with a shocking price increase: the day after finalizing the deal in August 2015, Vyera raised the price from $17.50 to $750 per tablet, an increase of more than 4,000%.

21

90.     In advance of the price increase, Defendant Shkreli predicted that "nobody will notice and there will not be any consequence." He was very wrong. Vyera swiftly faced outcries from health care providers, patients, medical societies, the general public, and Congress.

91.     In the words of Vyera's then chief scientist, "the only person that didn't speak against [the price hike] was the Pope . . . . [I]t was the poster child of everything that is considered wrong about the pharmaceutical industry."

92.     In September 2015, the HIV Medicine Association ("HIVMA") of the Infectious Diseases Society of America publicly urged Vyera "to immediately revise the pricing strategy for" Daraprim. HIVMA deemed the estimated annual cost of pyrimethamine treatment for toxoplasmosis ($336,000-$634,500 depending on the patient's weight) "unjustifiable for the medically vulnerable patient population in need of this medication and unsustainable for the health care system."

**V.      Defendants' Anticompetitive Agreements to Maintain Vyera's Daraprim Monopoly**

93.     Vyera knew that the dramatic price increase on its own would not secure long-term revenues because, with no patent or regulatory protection, Daraprim would be vulnerable to generic entry. Thus, to protect its Daraprim revenues, Vyera launched an elaborate scheme to prevent generic competition: it entered agreements prohibiting distributors and purchasers from reselling Daraprim to potential generic competitors or their agents; entered exclusive agreements prohibiting API manufacturers from supplying pyrimethamine to potential generic competitors; and entered data-blocking agreements to prevent distributors from selling their Daraprim sales data, thus masking the true size of the Daraprim market to deter generic competitors. Defendants Shkreli and Mulleady implemented, oversaw, and participated in this scheme.

A.      **Defendants Implement Agreements Restricting Resale and Limiting Purchases to Block Generic Entry**

94.     Before 2015, Daraprim was distributed openly for more than 60 years without any restrictions. Generic companies were able to purchase Daraprim from a local pharmacy without entering into any written contract or obtaining any type of approval.

95.     But Defendants understood that a restricted distribution system "can be a way to lower competition." One of Vyera's co-founders testified that "closed distribution can increase a product life cycle by preventing generics from potentially getting your referenced product," which they need for FDA-required bioequivalence testing. Vyera's former general counsel further testified that the use of a closed distribution system was "considered an integral part of the company's desire to block a generic entrant for at least three years."

96.     Defendant Shkreli had experience using resale restrictions to block generic competition. In 2014, Shkreli's first pharmaceutical company, Retrophin, acquired the rights to Thiola, a drug used to treat the rare disease cystinuria. At Shkreli's direction, Retrophin raised the price of Thiola by 2,000% and put it into a restricted distribution system.

97.     At that time, Shkreli told Retrophin investors that "[t]he closed distribution system . . . allows for us to control the release of our product. We do not sell Retrophin products to generic companies." As Shkreli explained, blocking generic access to drug samples in this way "takes the AB substitutable rating that generics rely on and neuters it."

98.     When Vyera was seeking to acquire Daraprim, Defendant Mulleady made clear that setting up a similar restricted distribution system for Daraprim would be Vyera's "#1 priority" and "exceptionally time sensitive." He urged Vyera employees to "all work extra long hours to get this done."

23

99.     Upon acquiring Daraprim, Vyera acted to implement Shkreli's blueprint. Vyera started with the restricted distribution system it inherited from Impax, expanding the number of distributors to improve distribution logistics. At the same time, however, Defendants tightened the resale restrictions by signing agreements with the distributors, hospitals, and pharmacies that purchased Daraprim barring resale of the drug to generic companies. The resulting web of contractual restrictions prevents generic companies from purchasing Daraprim at any point in the distribution chain, denying them the ability to conduct the bioequivalence testing necessary for FDA approval.

### 1.   Vyera's contractual restrictions prevent distributors from selling Daraprim to generic companies

100.     Vyera's generic-blocking agreements start with its distributors. Vyera imposes resale restrictions on all of its distributors to "block" generic companies from purchasing Daraprim, thereby "avoid[ing] generic competition." Each Vyera distributor can sell Daraprim only to specifically identified customers or customer types. Any other purchase request requires Vyera's direct approval. As Vyera's director of patient access explained, "[i]f someone else calls and asks for 50 bottles of Daraprim, they would have to come to me for approval."

101.     None of Vyera's distributors is allowed to sell Daraprim to generic companies. Nor does Vyera approve such sales. If a distributor receives a purchase request from an entity that might be a generic company or might sell to one, Vyera will "block that purchase" to "avoid generic competition."

102.     At the top of its distribution system, Vyera uses ICS (formerly Smith Medical Partners) as a third-party logistics provider. ICS receives Daraprim from Vyera's contract manufacturer, warehouses it, and ships it to Vyera's chosen distributors. ICS is compensated through a fixed monthly fee, as well as additional fees for each order it ships.

103.    Under its agreement with Vyera, ICS can only ship Daraprim to four specifically approved distributors: ASD Healthcare, Cardinal Health, BioRidge Pharma, LLC, and Optime Care Inc. Generic companies are not approved purchasers, and ICS cannot sell Daraprim to them without Vyera's approval.

104.    Below ICS, each of these four distributors is authorized to sell only to specific types of purchasers.

105.    First, Vyera has an agreement with ASD Healthcare to distribute Daraprim to hospital and government purchasers. Vyera compensates ASD by paying it ██████ of Daraprim's wholesale acquisition cost ("WAC," i.e. the list price) for each sale it makes.

106.    Initially, Vyera and ASD also agreed to "verbal business rules" that further limited sales to specific government and hospital customers. Vyera and ASD later amended their written contract to enumerate "authorized customers" and to specifically require that Vyera "approve any new authorized customers via email." Generic companies are not and have never been authorized customers under the ASD agreement. Nor was ASD permitted to sell Daraprim to generic companies under the previous contractual iteration and verbal business rules. Consequently, ASD cannot sell Daraprim to generic companies without Vyera's approval.

107.    Second, Vyera has an agreement with BioRidge Pharma to distribute Daraprim to certain identified specialty pharmacies—including those owned by Walgreens. Vyera compensates BioRidge by paying it ████████████████████████████████.

108.    Generic companies are not identified as acceptable purchasers under the BioRidge contract. Consequently, BioRidge cannot sell Daraprim to generic companies without Vyera's approval.

109.    Third, Vyera has an agreement with ████████████ to distribute Daraprim only to "approved classes of trade," which are defined as "[h]ospitals, state AIDS Drug Assistance Programs (ADAPs), and their authorized purchasers." Purchase requests from any other "class of trade . . . require prior written approval by [Vyera]." Vyera compensates ████████ by paying it ███████████████████████████████.

110.    Generic companies are not an approved class of trade under the ████████ contract. Consequently, ████████ cannot sell Daraprim to generic companies without Vyera's approval.

111.    Fourth, Vyera has an agreement with Optime Care to distribute Daraprim only to "[a]uthorized customer types," which include hospitals, government customers, state AIDS Drug Assistance Programs, and patients with a prescription. Optime cannot sell Daraprim to a buyer that falls outside these authorized types without Vyera's approval. Under the agreement, Vyera compensates Optime by paying it ██████████████████████████, as well as ████████████ ███████████████████████████████.

112.    Generic companies are not an authorized customer type under the Optime contract. Consequently, Optime cannot sell Daraprim to generic companies without Vyera's approval.

113.    Taken together, Vyera's contractual restrictions prevent all of its distributors from selling Daraprim to generic companies seeking to conduct FDA-mandated bioequivalence studies unless Vyera approves the sale. And Vyera does not approve any sale of Daraprim to a generic company or a company it believes might sell to a generic company. Indeed, Vyera has denied each request from a distributor to sell Daraprim to a purchaser that might be a generic company or might sell Daraprim to a generic company, even though Vyera would make significant profits from any sales of Daraprim at list price.

### 2. Vyera's contractual restrictions prevent downstream purchasers from selling Daraprim to generic companies

114.    In addition to locking up its distributors, Vyera was also concerned that downstream purchasers, such as hospitals or pharmacies, might sell Daraprim to a generic company. To prevent this, Vyera imposed direct and indirect restrictions on these purchasers.

115.    First, Vyera required distributors to enter agreements with their own customers preventing the resale of Daraprim to generic companies.

116.    For example, in September 2015, Vyera authorized ICS (then retained as a distributor as well as a third-party logistics provider) to sell Daraprim to a group of Puerto Rican pharmacies. As part of the authorization, Vyera required ICS to "provide some wording on the account prohibiting sale of daraprim to a third party." Vyera instructed that "[p]roduct should only be dispensed to patients in their facilities." This requirement prevented ICS's customers from selling Daraprim to generic companies.

117.    Similarly, in May 2018, Vyera instructed Optime to include a "Product Use Attestation" in its agreements with hospitals. This attestation required hospitals to guarantee that Daraprim "will not be sold, resold, diverted or transferred to any other person or entity for any reason unless approved in writing by Vyera or its designee." This requirement prevented the hospitals from selling Daraprim to generic companies.

118.    Second, Vyera also entered direct agreements with hospitals and pharmacies preventing them from reselling Daraprim to generic companies.

119.    As part of its pricing agreements with thousands of hospitals, Vyera requires them to use Daraprim only for their "own use"—which is defined as the treatment of the hospital's patients. As a result, these hospitals are contractually prevented from selling Daraprim to anyone other than patients, including generic companies.

120.     Vyera includes similar terms in its agreements with hospital group purchasing organizations ("GPOs"), which purchase products on behalf of large groups of member hospitals. For example, under Vyera's contract with the GPO Vizient, Vizient's member hospitals can purchase Daraprim only for "the use of the Member" and "not for resale to anyone other than the end use patient or customer." This restriction prevents GPO member hospitals from selling Daraprim to generic companies.

121.     Vyera has also entered direct contracts with Walgreens, which sells Daraprim through its specialty pharmacies. The agreements specify that Walgreens can only provide Daraprim to its specialty pharmacies and to patients with a prescription. The contracts prevent Walgreens or its specialty pharmacies from selling Daraprim to generic companies without Vyera's approval.

122.     Taken together, Vyera's restrictions on downstream purchasers prevent them from selling Daraprim to a generic company seeking to conduct FDA-mandated bioequivalence testing unless Vyera approves the sale. Vyera does not approve downstream purchasers to sell Daraprim to a generic company or a company that might sell to a generic company. Indeed, Vyera has never authorized such a sale, even though it would make significant profits any time Daraprim is sold at its list price.

   **3.  Vyera limits and monitors approved sales of Daraprim to prevent generic companies from obtaining it**

123.     In addition to its agreements with distributors and purchasers not to sell Daraprim to generic companies, Defendants took further steps to ensure generic companies could not purchase the Daraprim they needed to conduct FDA-required bioequivalence testing.

124.    A bottle of Daraprim contains 100 tablets. Defendants knew that, in order to meet FDA requirements for bioequivalence testing, any potential generic competitor would need at minimum 500 to 1,000 tablets, or five to 10 bottles of Daraprim—and likely would need more.

125.    Vyera thus limited the amount of Daraprim that any one approved entity could purchase. As a Vyera senior director informed at least one of Vyera's distributors, the goal of these quantity limits was to reduce the risk "that a generic company could access multiple bottles of [Daraprim], perhaps obtained through a hospital reselling it or distributing product to surrounding retail pharmacies." Thus, even if a generic company broke through Vyera's web of resale restrictions, it could not obtain enough Daraprim to conduct bioequivalence testing.

126.    For example, in August 2015, Vyera and ICS (then a Daraprim distributor) agreed that ICS would not sell more than five bottles to a single customer without Vyera's express approval. The purpose of the ICS restriction was to "ensure that the account is legit and not a generics manufacturer."

127.    Similarly, Vyera's 2018 contract with Optime prevents Optime from selling more than three bottles to any purchaser without Vyera's express approval. Before it will approve such a sale, Vyera requires Optime to obtain "prescription level information" on the purchase, such as the prescriber and prescription quantity. Vyera then uses this information to make sure the requested Daraprim will not be diverted to a generic company.

128.    And in February 2018, Vyera approved sales of Daraprim through a new pharmacy, Drug Mart, but limited Drug Mart to carrying only one bottle of Daraprim in inventory at a time.

129.    In August 2019, Shkreli had separate discussions with Mulleady and Mithani about limiting all sales of Daraprim to one bottle at a time in order to prevent a generic

competitor from obtaining sufficient Daraprim samples to conduct bioequivalence testing. Shkreli urged Mulleady to "really carefully screen every doctor" and ensure that no one could "sell more than one bottle at a time" to prevent a generic company from "get[ting its] hands on anything." Shkreli instructed Mithani that Vyera should "do everything" it could to prevent a generic company from obtaining samples of Daraprim, because preventing generic competition would make Daraprim a "$600 million asset . . . in perpetuity."

130.    Even with Vyera's complex web of resale restrictions and quantity limits, in 2017 Mulleady became concerned that there had been "leakage" to a generic competitor. In September 2017, Mulleady ordered a "full out audit of daraprim" so he could "know where every bottle of daraprim we sold went to." The next month, Mithani directed Vyera employees to establish a system with ASD—one of Vyera's main hospital distributors—for immediate notification of any orders. Mulleady and Mithani wanted to identify "outlier" purchases that might be intended for a generic company. ASD agreed to flag any such orders for Vyera. Mulleady and Mithani would then contact the buyer to "inquire as to what their purpose is."

131.    In at least one instance, this aggressive monitoring allowed Vyera to quickly buy back Daraprim that might otherwise have been sold to a generic company. In April 2018, Vyera employees flagged an unusual purchase from ASD: a company called Centrastate Specialty Script—which shares common ownership with Reliant Specialty LLC—had purchased five bottles of Daraprim at one time, when it had previously never ordered more than two. Mithani was concerned that Centrastate had purchased Daraprim on behalf of a generic.

132.    Mulleady determined that Vyera should buy back the five bottles from Centrastate. Using a middleman, Mulleady repurchased all five bottles for ████████ — ██ the price Centrastate had paid.

133.    As part of the repurchase contract, Centrastate agreed "not to purchase, directly or indirectly . . . any Daraprim, except directly through Vyera." Vyera subsequently directed ASD to block Centrastate from purchasing any further Daraprim.

#### 4. Defendants' generic-blocking restrictions prevent generic competitors from purchasing Daraprim and have no legitimate rationale

134.    Taken together, the purpose and effect of Vyera's resale restrictions, quantity limits, and monitoring is to prevent potential generic competitors from obtaining sufficient samples of Daraprim to conduct FDA-mandated bioequivalence testing.

135.    Due to Vyera's agreements restricting resale, generic companies cannot purchase Daraprim at any point in Vyera's distribution chain. Nor can generic companies purchase Daraprim directly from Vyera, which refuses to sell the product to generic companies or companies that might resell to generic companies. And Vyera's quantity limits and monitoring ensure that, even if a generic company slips through the restrictions and purchases some Daraprim, it will not likely obtain enough to conduct bioequivalence testing.

136.    Generic companies cannot circumvent Vyera's web of restrictions by obtaining a Daraprim prescription from a doctor. Doctors are allowed to write prescriptions for the treatment of a patient; a doctor cannot write a prescription for medication to be used in bioequivalence testing, which does not involve treatment of a patient. Moreover, even if a generic company could obtain a prescription and use that prescription to purchase Daraprim from a distributor or purchaser, Vyera's quantity limits would prevent filling a single prescription for the minimum five bottles needed for bioequivalence testing. And even assuming the generic company were able to acquire Daraprim from a pharmacy with a prescription, it would have no way of ensuring that all the bottles came from the same manufacturing lot, as required by the FDA.

137.    The purpose of Defendants' extensive resale restrictions and quantity limits is to prevent generic companies from obtaining the Daraprim necessary to meet the FDA's bioequivalence testing requirements and thereby impede them from launching generic Daraprim products.

138.    This purpose was publicly reported and widely known. In September 2015, the New York Times reported that "Daraprim's distribution is now tightly controlled, making it harder for generic companies to get the samples they need for the required testing" and that this could prevent generic competition. The Times further reported that Defendant Shkreli had previously used a similar strategy "as a way to thwart generics."

139.    In November 2015, the Senate Special Committee on Aging launched a bipartisan investigation into dramatic price increases on several off-patent drugs, including Daraprim. The Committee concluded that Vyera "put [Daraprim] in a closed distribution system to keep potential generic competitors from getting access to the drug to conduct required bioequivalence tests for developing generic alternatives." The Committee elaborated that "[r]estricted distribution in this case was a deliberate part of [Vyera's] plan to defend its shocking price increase and subsequent increased revenue against potential competition."

140.    As part of the Senate investigation, multiple Vyera executives testified that the purpose of the distribution restrictions was to prevent competition from generic companies by denying them access to the samples they needed for bioequivalence testing.

141.    The restrictions preventing distributors or purchasers from selling Daraprim to generic companies do not have any legitimate business rationale.

142.    The resale restrictions are not related to any safety concerns about Daraprim. Prior to 2015, Daraprim was sold in open distribution without incident for more than 60 years.

32

Additionally, the FDA has never subjected Daraprim to any type of safety program. When drugs pose serious safety concerns, the FDA requires sellers to implement Risk Evaluation Mitigation Strategies (REMS) to minimize those risks. A REMS requirement can include warning labels, educational guides, and restrictions on distribution. The FDA has never required that Daraprim be subject to any form of REMS. Moreover, safety concerns are not, and have never been, the reason for the restricted distribution of Daraprim.

143.    The resale restrictions are also not related to providing patient services as part of the distribution system. Blocking the sale of Daraprim to generic companies does not provide or support any services to Daraprim patients. Additionally, providing patient services is not and has never been the purpose of the restricted distribution system. When Vyera initially explored the logistics of setting up a restricted distribution system, it rejected the idea of including additional patient services because they would "take forever" to set up. And the distribution restrictions have in fact made it harder for patients to obtain Daraprim, leading to adverse medical outcomes.

### B.    Defendants Enter Exclusive Agreements With API Manufacturers to Block Generic Companies' Access to Pyrimethamine API Supply

144.    In addition to denying potential generic competitors access to the Daraprim samples they need to conduct FDA-required testing, Vyera (under the supervision and direction of Defendants Shkreli and Mulleady) further impeded generic competition by locking up the two most viable manufacturers of pyrimethamine, the active pharmaceutical ingredient used in Daraprim.

145.    To develop and commercially market a generic version of Daraprim, a potential generic competitor would need to secure a reliable source of pyrimethamine API.

146.    It is well known in the industry that it is significantly faster and less expensive to source API from a supplier that has a pre-existing manufacturing process that is either approved

by the FDA or a good candidate for FDA approval. Different APIs require different equipment and methods to manufacture. It can take months or years, as well as an investment of hundreds of thousands of dollars or more, for a manufacturer without a pre-existing process to develop one. Moreover, the FDA must approve any API manufacturer's facilities, process, and product before the API can be used in a U.S. product. Retaining an API manufacturer with an unapproved process entails the risk that the FDA will not approve it or will require the manufacturer to invest additional time and expense correcting deficiencies. Thus, even if a manufacturer has a pre-existing process, it will not readily be able to supply API for a U.S. product if its process, facility, or manufacturing practices are not up to FDA standards.

147.    One method commonly used in the industry to identify API manufacturers with an established, FDA-approvable manufacturing process is to search for DMFs. A DMF is a submission from an API manufacturer to the FDA providing detailed information about the manufacturer's facility and process for a given API. The filing of a DMF indicates that the manufacturer has already developed a manufacturing process for that API that it believes meets FDA standards, and thus that it could serve as a reliable source. As Vyera's director of business development explained, contracting with a DMF holder for API supply diminishes a pharmaceutical company's "execution risk."

148.    Understanding these market dynamics, Defendants acted to prevent generic competitors from obtaining pyrimethamine API from suppliers with an existing, FDA-approvable manufacturing process—especially those holding pyrimethamine DMFs. Defendants decided to sign exclusive contracts with any such manufacturers to force generic competitors to spend substantial time and money working with a new manufacturer to develop an FDA-approvable pyrimethamine manufacturing process.

**1. Vyera locks up the only manufacturer with an FDA-approved manufacturing process for pyrimethamine API**

149.    In the summer of 2015, prior to acquiring Daraprim, Vyera contacted pyrimethamine suppliers from the FDA's DMF database. At that time, two API suppliers had filed DMFs with the FDA: Fukuzyu and Ipca Laboratories Ltd. On or about June 1, 2015, Vyera contacted both Ipca and Fukuzyu seeking to enter into exclusive supply agreements for pyrimethamine API that would prevent generic companies from purchasing pyrimethamine from either company.

150.    The next day, Ipca told Vyera it could not supply pyrimethamine and thus an "exclusivity deal is not possible." Several months earlier, in January 2015, the FDA had banned imports of most of Ipca's APIs, including pyrimethamine, due to manufacturing deficiencies. Vyera quickly understood that this import ban would generate the same effect as exclusivity. In a June 15, 2015 presentation to potential investors, Vyera touted how this import ban would cause "significant disruption" and delay to generic companies planning or desiring to use Ipca.

151.    This left Fukuzyu as the only established manufacturer of pyrimethamine API for the U.S. market. Indeed, Fukuzyu sells pyrimethamine API worldwide and has supplied it for branded Daraprim in the United States for decades. Because Fukuzyu's pyrimethamine was already being used in an FDA-approved product, Vyera knew that the FDA had already approved Fukuzyu's manufacturing process and any company would be able to use Fukuzyu API immediately.

152.    Vyera's initial attempts to reach an exclusivity agreement with Fukuzyu were rejected. But Vyera did not give up. In 2016, it retained a Japanese consultant to negotiate with Fukuzyu on its behalf and sent a formal letter seeking an in-person meeting. Beginning in fall 2016, Vyera and Fukuzyu began serious negotiations, and on or about November 22, 2016, they

reached an oral agreement for the exclusive supply of Fukuzyu API for human use in the United

States. A Vyera executive broke the news of the agreement to colleagues by saying: "Fukuzyu

has accepted our agreement to provide pyrimethamine exclusively for us for human drugs and

will not sell to generic manufacturers. This is a big sigh of relief for us!"

      153.    In January 2017, Phoenixus signed a ███████████████████████ with

Fukuzyu. Following the ██████████ term, the agreement is ██████████████████████

██████████████████████████████████████

      154.    As executed, the contract forbids Fukuzyu from selling pyrimethamine to anyone

other than Vyera for human use in the United States. Vyera expected and intended that the

exclusivity provision would prevent Fukuzyu from selling pyrimethamine API to generic

companies.

      155.    Indeed, during the negotiations, Vyera told Fukuzyu that the "most critical

issue[]" was obtaining an exclusivity provision that would prevent Fukuzyu from selling

pyrimethamine to Vyera's generic competitors. Vyera explained that "[i]f generic products are

put on the U.S. market, [Vyera] will face a serious problem, and may eventually terminate the

marketing of Daraprim." Vyera further stressed that entry of a generic Daraprim could prevent

Vyera from working with Fukuzyu on future projects.

      156.    Fukuzyu has abided by the terms of its exclusive supply agreement and

consistently consulted with Vyera to verify that proposed sales would not violate the exclusivity

provision. Vyera regularly directs Fukuzyu not to sell API to any entity that could use the

pyrimethamine in the United States for human use, such as for a generic version of Daraprim.

Indeed, at least two potential generic competitors sought and were denied API from Fukuzyu due

to the Vyera exclusive contract.

157.    There is no legitimate business rationale for the exclusivity provision in the Fukuzyu supply contract. The exclusivity provision does not ensure Vyera's supply because Fukuzyu is not obligated to reserve any volume of pyrimethamine for Vyera and can sell any amount of pyrimethamine to companies outside the U.S. or for non-human use within the U.S. Nor does the exclusivity provision reflect a recoupment of any investment Vyera made in Fukuzyu. Instead, the purpose of the exclusivity provision is to prevent potential generic companies from obtaining pyrimethamine API from Fukuzyu.

158.    The 2017 exclusive supply agreement with Fukuzyu remains in effect.

### 2. Defendants poach a second API manufacturer from generic competitors

159.    After obtaining exclusivity from Fukuzyu, Vyera then signed a second exclusive agreement to lock up the next most viable manufacturer of pyrimethamine API.

160.    In August 2017, Vyera became aware that another API supplier, RL Fine Chem, was preparing to file a DMF for pyrimethamine API in the United States and was working with two generic companies. RL Fine had a pyrimethamine manufacturing process in place, had filed a European DMF, and had experience manufacturing and selling pyrimethamine to European clients. RL Fine's European DMF indicated its facilities, quality standards, and manufacturing practices were likely sufficient to obtain FDA approval. After Fukuzyu, RL Fine was the next-best option for the supply of pyrimethamine API to any generic company seeking to develop a generic Daraprim product for sale in the U.S.

161.    In August 2017, shortly after taking back control of Vyera through his successful proxy fight, Shkreli directed Mulleady and Mithani to pursue a supply agreement with RL Fine.

162.    On August 21, 2017, Shkreli drafted an email to RL Fine inquiring about pyrimethamine API for the U.S. market and directed co-Executive Director Mithani to send it. RL Fine replied that it was "already working on pyrimethamine and would not be able to offer to

you." Undeterred, Mulleady and Shkreli (through Mithani) pushed for "a more robust

relationship."

163.    On November 2, 2017, Mulleady (then co-executive director with Mithani)

offered RL Fine ██████████ as consideration for entering into an exclusive supply

agreement with Vyera. By November 26, 2017, Vyera had agreed to pay RL Fine even more for

an "exclusive agreement . . . for the distribution of any and all pyrimethamine based product."

On December 27, 2017, Mulleady (then serving as Vyera CEO and Phoenixus board chairman)

executed on behalf of Phoenixus two contracts with RL Fine: a product collaboration agreement

and a distribution and supply agreement.

164.    Under the product collaboration agreement, Vyera paid RL Fine ██████

██, and the parties agreed to collaborate on the development of ██ products. Neither Vyera

nor RL Fine, however, subsequently took any steps to develop any of these products.

165.    Under the distribution and supply agreement, RL Fine designated Vyera as its

exclusive distributor of pyrimethamine API worldwide. Vyera has no API distribution

capabilities and no intention to become an API distributor. As RL Fine's pyrimethamine

distributor, however, Vyera has the power to veto any pyrimethamine API sale outside of India.

This allows Vyera to block any sale of pyrimethamine API from RL Fine to a potential generic

competitor. Indeed, at Vyera's direction, RL Fine ceased supplying pyrimethamine API to the

two generic companies with which it had been working. Since signing the agreement with Vyera,

RL Fine has not supplied pyrimethamine to any company for use in the United States.

166.    In return, Vyera agreed to pay RL Fine ██████████ and ██████



██████████████. Under the distribution and supply agreement, Vyera

has made monthly payments to RL Fine ranging from ██████ to ██████ from February 2018

through at least August 2019. Vyera agreed to make these payments whether or not it receives

any API from RL Fine and irrespective of whether RL Fine's API is approved for use in

Daraprim. To date, Vyera has paid RL Fine approximately ██████ under the distribution and

supply agreement and has not received any API from RL Fine.

167.    The purpose of the RL Fine Agreement was to ensure that RL Fine could not

supply any of Vyera's potential generic competitors.

168.    There is no legitimate business rationale for the exclusivity agreement. Vyera did

not need and was not seeking an additional source of pyrimethamine API. Fukuzyu is, and has

been, a reliable supply partner. Throughout the term of its agreement with Vyera, Fukuzyu has

never had a supply interruption or other event that prevented it from providing Vyera with

pyrimethamine API. Indeed, Fukuzyu's minimum purchase batch size provides Vyera with more

pyrimethamine than it can use. Vyera has purchased pyrimethamine API from Fukuzyu only

twice—on August 1, 2017, and November 19, 2018—for approximately ██████ each time.

And Fukuzyu has the capacity to produce significantly greater quantities of pyrimethamine API,

which it still regularly supplies to other manufacturers for human use outside the U.S. and for

non-human use in the United States.

169.    Even if Vyera had wanted an additional source of pyrimethamine API, it did not

retain RL Fine for that purpose. For the entire term of the agreement, Vyera could not legally use

RL Fine's pyrimethamine API in Daraprim because it never sought or obtained FDA approval to

do so. Nor did RL Fine take any further steps to conform its process to FDA requirements.

170.    Indeed, Vyera's approach to the RL Fine negotiations demonstrates that its goal

was never to obtain usable pyrimethimane API from RL Fine. When negotiating its agreement

with Fukuzyu, Vyera performed extensive diligence to ensure that Fukuzyu would be able to

comply with the FDA's current good manufacturing practices ("cGMPs") and other quality-oriented measures required by the FDA. Numerous Vyera technical personnel were involved in these efforts, and the Vyera executives responsible for Quality, Regulatory Affairs, and Chemistry, Manufacturing and Controls ("CMC") traveled to Japan to meet with their Fukuzyu counterparts.

171.    The RL Fine negotiations, however, were conducted by Mulleady and Mithani alone and without any technical support. Neither Mulleady nor Mithani had any experience with or knowledge of API sourcing or FDA requirements, and neither had any relevant scientific background. No one at Vyera performed any diligence on RL Fine's ability to produce pyrimethamine API. Indeed, nobody from Vyera's CMC or Quality departments were involved in the negotiations with RL Fine in any capacity. As of September 2019, the Vyera chief scientific officer with ultimate responsibility for Daraprim manufacturing was not even aware Vyera had a contract with RL Fine.

172.    On October 25, 2019, Vyera paid RL Fine ███████ to terminate the agreement. By that date, the Federal Trade Commission had sent several discovery requests to Vyera and RL Fine and asked extensive questions about the RL Fine contracts during investigational hearings of Vyera employees.

173.    Vyera's exclusive agreements with Fukuzyu and RL Fine have sidelined the two most viable suppliers of pyrimethamine API for potential generic Daraprim competitors. This has made it significantly more difficult for potential generic competitors to obtain pyrimethamine API. Although other manufacturers might eventually be able to supply pyrimethamine for the U.S. market, during the relevant time period these manufacturers did not have an established

pyrimethamine manufacturing process, did not have facilities and processes in line with cGMP standards sufficient for FDA approval, or both.

174.    Typically, it takes months or years for a supplier to develop and test an API manufacturing process from scratch. For example, ████████████ spent several years and over ██████ working with a supplier to develop an FDA-approvable manufacturing process for pyrimethamine API.

175.    For those manufacturers with a non-compliant FDA process, it would take substantial time and investment to bring their facilities, quality controls, and manufacturing standards in line with cGMP requirements to be eligible for FDA approval. Therefore, Vyera's agreements resulted in significant cost and delay for any potential generic applicant.

**C.    Vyera Enters Data-Blocking Agreements to Mask the True Size of the Pyrimethamine Market**

176.    Vyera also entered into data-blocking agreements with its primary distributors to mask the potential market opportunity for a generic Daraprim product.

177.    One of the first steps for a generic company considering whether to develop a competing generic product is to analyze the branded product's sales data to determine the size of the market opportunity. Based on the market size and sales data, the company can determine the potential profits it can expect from developing the product.

178.    To make this assessment, generic companies rely on commercially available sales information. These data are sold by companies such as IQVIA and Wolters Kluwer. These companies purchase sales data from drug distributors and pharmacies, aggregate the data, and sell it to pharmaceutical industry participants.

179.    Vyera relied on sales data from IQVIA in determining whether to purchase Daraprim in 2015. Vyera continues to use IQVIA data to evaluate other drug opportunities.

180.     Vyera is a privately-held company and does not publicly report Daraprim sales figures. Thus, the only way for a potential generic competitor to assess the size of the Daraprim market is to purchase commercial sales data from a third-party data reporting company.

181.     After acquiring Daraprim, Vyera sought to prevent its distributors from selling Daraprim sales information to IQVIA or other data reporting companies.

182.     Vyera feared that, after it raised the price of Daraprim, the increased sales would attract generic competitors. By preventing reporting companies from obtaining Daraprim sales data, Vyera understood that the publicly available data would be inaccurate, thereby obscuring the true size of the Daraprim market.

183.     Under Vyera's agreements with its distributors, Vyera paid them a "data blocking fee" in exchange for their agreement not to sell data to IQVIA or other similar companies.

184.     In 2017, Vyera agreed to pay ASD a "data restriction" fee of ███ per month in exchange for ASD's agreement not to sell Daraprim sales data to IQVIA, Wolters Kluwer, or other third-party data reporting companies.

185.     In 2017, Vyera agreed to pay █████ a "data blocking fee" of █████ ████████████████████ in exchange for █████ agreement not to sell Daraprim sales data to IQVIA, Wolters Kluwer, or other third-party reporting companies.

186.     Without reporting from significant distributors like ASD and █████, IQVIA's Daraprim data is "extremely incomplete and not very useful."

187.     In April 2018, the FDA noticed that the IQVIA data for Daraprim suggested extremely low sales. The FDA contacted Vyera to ask if Daraprim was in shortage. When Vyera employees looked into the issue, they quickly determined that the low sales figures that had

concerned the FDA "likely related to the business decision [Vyera] made to block dispense/sales data reported by [its] distribution partners."

188.    The purpose and effect of Vyera's data-blocking restrictions was to obscure the size of the Daraprim market to make it less attractive to generic competitors. Vyera engaged in this conduct "to prevent external visibility into [its] corporate performance." Vyera did not "want Gilead or any of the other major infectious disease companies coming in . . . and taking over [] what we created."

189.    Vyera's conduct had the desired anticompetitive effect. As result of Vyera's data-blocking restrictions, at least one generic company decided not to initiate a project to develop a generic version of Daraprim.

190.    The data-blocking restrictions imposed on two of Vyera's most important distributors have no legitimate rationale. While Vyera has no obligation to publicly report its own Daraprim sales data, the wholesalers' Daraprim sales data is not Vyera's to control. Prior to the more lucrative offer from Defendants, ASD and ███████ were regularly selling their Daraprim sales data to IQVIA and others. The sole purpose of the data-blocking agreements is to mask the size of the Daraprim market.

**VI.    Defendants' Anticompetitive Conduct Successfully Delayed and Excluded Numerous Potential Generic Competitors**

191.    Defendants' anticompetitive course of conduct worked. As the result of Vyera's agreements restricting the resale of Daraprim, exclusive API agreements, and data-blocking agreements, at least four potential generic competitors have been delayed or excluded from the market: ███████, ███████, ███████, and Mylan, N.V.



192.    Defendants' exclusionary conduct impeded ███████ ability to develop a generic version of Daraprim. Absent Vyera's conduct, ██████ likely would have entered the market years earlier with a generic version of Daraprim.

193.    Founded in ████, ███████ is a pharmaceutical company with about ██ employees located in ████████████████. Since its inception, ████████ has successfully developed ███████████████ through ANDAs.

194.    In 2013, ████████ decided to develop a generic version of Daraprim. Daraprim was attractive to ██████ because it was off patent and had no generic competition.

195.    ████████ needed a minimum of six bottles of Daraprim for FDA-required bioequivalence testing. At that time, Amedra Pharmaceuticals owned Daraprim and the drug was available through traditional distribution channels.

196.    In August 2013, ████████ bought nine 100-count bottles of Daraprim from a local pharmacy in New Jersey. It paid $10,350 for nine bottles, or $1,150 per bottle.

197.    ████████ purchased this Daraprim with no difficulty. It approached only one pharmacy, did not negotiate, and did not enter any written agreement. It received the nine bottles one day after ordering them. Neither ████████ nor the pharmacy communicated with Amedra Pharmaceuticals or requested approval for the sale.

198.    In 2013, ████████ secured Ipca as its supplier of pyrimethamine API. Ipca had a manufacturing process in place for pyrimethamine. After securing ████████ as a customer, Ipca submitted a DMF for pyrimethamine to the FDA.

199.    Throughout late 2013 and early 2014, ████████ conducted bioequivalence testing comparing its generic product—made with pyrimethamine API from Ipca—to the branded

Daraprim it bought from the local pharmacy. In May 2014, ███████ submitted the results of this testing to the FDA as part of its ANDA.

200.    In January 2015, however, the FDA banned Ipca from importing API into the United States until it remedied certain issues with its manufacturing facility in India. These issues persisted, forcing ████████ to find a new pyrimethamine API supplier.

201.    ████████ then contacted Fukuzyu. In 2016, Fukuzyu agreed to sell ████████ pyrimethamine API, but required an initial purchase of 50 kilograms for approximately $300,000 or $400,000. Even though ████████ wanted only four kilograms for its initial purchase and thought this minimum purchase size was unreasonable, it agreed to purchase 50 kilograms because the alternative of using a non-DMF supplier would have significantly delayed the approval of its generic Daraprim product.

202.    About six months after agreeing to supply ████████, however, Fukuzyu reneged on the deal, citing "economic reasons." Around this time, Fukuzyu had agreed to supply pyrimethamine to Vyera exclusively and not to any generic manufacturers for human use in the United States.

203.    ████████ had a "backup plan" for sourcing pyrimethamine API. In February 2016, ████████ had identified ████████ as another possible supplier of pyrimethamine API. ████████ did not have a U.S. DMF for pyrimethamine API, but it had a European Union DMF and was supplying pyrimethamine in Europe and Asia. This indicated it likely had an FDA-approvable process for manufacturing pyrimethamine API.

204.    In November 2016, ████████ and ████████ entered into a supply agreement for pyrimethamine API. ████████ agreed to supply ████████ with pyrimethamine API until December 31, 2021, for both product development and commercial production. The companies

also agreed that ████ would include in ██████████ all of the

information needed for the FDA to approve ████ as its API supplier.

205.    In April 2017, ████ submitted this ██████████ to the FDA.

206.    On December 26, 2017, the FDA responded to this ██████████ and notified

████ that, to use ████ as its API supplier, ████ had to redo its bioequivalence

testing using ████ pyrimethamine API. ████ had no remaining unexpired Daraprim

and thus had to acquire at least six additional 100-count bottles of Daraprim.

207.    This time, however, Vyera's agreements prohibiting resale to generic companies

made it virtually impossible to obtain sufficient quantities of Daraprim. Over the course of the

next year, ████ tried to obtain Daraprim samples from numerous sources.

208.    On December 29, 2017, ████ approached the local pharmacy from which it

had purchased Daraprim in 2013. The pharmacy responded that it no longer had access to

Daraprim, as the product was no longer available from wholesalers.

209.    On January 11, 2018, ████ tried to buy Daraprim through a pharmacist at a

California hospital. That pharmacist could not obtain Daraprim from the hospital's usual

wholesaler.

210.    On January 18, 2018, ████ contacted a company called ████

██████████, which had access to a variety of drug sources. ██████████

████ checked over 20 wholesalers, as well as multiple hospitals and pharmacies. It also

tried to have an animal clinic order Daraprim. But it was unable to procure Daraprim from any of

these sources.

211.    ████ also engaged numerous companies that specialize in obtaining branded

drug samples for bioequivalence testing, including ██████████, ████,

███████████████████████, ██████████████, and ██████████████. After significant efforts, three of these companies—█████████████████, ███████████, and ████████████████—could not secure even one bottle of Daraprim. As ██████████████ ████████ told ████████, the "US item is impossible to get."

212.     Two of these companies were able to obtain some Daraprim for ████████, but only in limited quantities. In June 2018, ████████████ sold █████████ bottle of Daraprim for $110,000. Over the next several months, ████████████████ tried but failed to obtain more bottles. It told ████████ that "the manufacturer is involved in every bottle transaction, which is very unusual." In November 2018, ████████████ sold █████████ bottles of Daraprim for $125,000 per bottle. ████████████ was unable to obtain additional bottles.

213.     After a year of effort, ████████████ was able to obtain only ████ of the six bottles it needed to conduct FDA-required bioequivalence testing. And because the ██████████████████ bottles were from a different lot than the █████████ bottle, ████████ could not combine them for bioequivalence testing under FDA regulations. ███████████████████████████████████ ██████

214.     ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████████

215.     ███████████████████████████████████████████████
███████████████████████████████████

216.     On February 28, 2020, the FDA approved Cerovene's generic pyrimethamine.

217.   On March 11, 2020, in response to Cerovene's approval, Phoenixus's subsidiary Oakrum Pharma, LLC announced that it would launch an "authorized generic" version of Daraprim. An authorized generic is chemically identical to the brand drug, but is sold as a generic product. Brand pharmaceutical companies often launch lower-priced authorized generic versions of their products when they expect generic entry. The authorized generic captures some of the sales that would otherwise have gone to a generic competitor, allowing the brand to retain some of the revenue it would otherwise lose.

218.   On March 20, 2020, Dr. Reddy's Laboratories—Cerovene's commercial partner for the sale and distribution of generic pyrimethamine—announced that it had launched Cerovene's generic pyrimethamine in the United States after a "seven years' journey."

219.   Absent Defendants' anticompetitive conduct, ██████ likely would have launched its product in 2018 or earlier.

220.   Even though Cerovene's generic Daraprim is currently being sold in the United States, ████████████████████████ due to Vyera's exclusive API supply agreements. ████████████████████████████████

████████████████████████████ after signing its exclusive supply agreement with Vyera. ████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████

████████████████████████████—which are still subject to Vyera's tightly controlled resale restrictions—████████████████.



221.    Defendants' exclusionary conduct also impeded ██████ ability to develop a generic version of Daraprim. Absent Defendants' conduct, ██████ likely would be on the market today with a generic version of Daraprim.

222.    ████████████ is a pharmaceutical company with about ███████ located in ████████████████. To date, ██████ has developed █ generic products, ██ of which are currently marketed.

223.    In ████, ████████ decided to develop a generic version of Daraprim. Daraprim appealed to ███████ because it was off patent and had no generic competition.

224.    ████████ needed at least six bottles of Daraprim to conduct FDA-required bioequivalence testing. At that time, Amedra Pharmaceuticals owned Daraprim and the drug was available through traditional distribution channels.

225.    In ██████████, ████████ bought six 100-count bottles of Daraprim from a local pharmacy in ██████████. It paid $250 per bottle.

226.    █████████ purchased this Daraprim with no difficulty. It did not sign any liability waivers or enter any indemnification agreements. Nor was ██████████ informed of any risks associated with Daraprim. Neither ██████████ nor the pharmacy communicated about this sale with Amedra Pharmaceuticals.

227.    Like ████████, ████████ initially retained Ipca—which had a U.S. DMF for pyrimethamine—as its API supplier. ████████ preferred a supplier with a DMF because using a supplier with an established manufacturing process would expedite the approval of its generic Daraprim product.

228.    Like ████████, however, ████████ was ultimately not able to use Ipca due to the FDA's January 2015 import ban. ████████ thus had to find a new pyrimethamine API supplier.

229.    In ████, ████ contacted ████ after learning that it was supplying pyrimethamine in the European Union. After some discussions, the companies agreed that ████ would supply ████ with pyrimethamine API for its generic Daraprim product.

230.    In ████, ████ and ████ formalized their partnership by entering a product collaboration agreement. Under this contract, ████ agreed to provide ████ with pyrimethamine API for both development and commercial use. The companies also agreed that ████ would provide a "[c]omplete set of Pyrimethamine DMF documents" for ████ "to include in the filing of [its] ANDA." And ████ agreed to "[a]ddress deficiencies by the USFDA related to the application in a timely manner."

231.    In ████, ████ submitted its ANDA to the FDA. The ANDA included the results from bioequivalence testing that ████ had done using ████ pyrimethamine API and the Daraprim it purchased from the local pharmacy. It also included the information on ████ manufacturing process for pyrimethamine API.

232.    The FDA issued a preliminary response in ████ requiring ████ to correct several deficiencies. ████ immediately sent ████ the deficiencies related to API. But by this time, ████ was negotiating its exclusive contract with Vyera for pyrimethamine API and told ████ that it was "no longer supporting" the company's ANDA.

233.    Later that month, an ████ executive travelled to ████ to try to convince ████ to change its mind. As a potential compromise, he asked if ████ would supply the company with pyrimethamine API just for its initial launch of the product. ████ declined.

234.    In ████, ████ received a complete response from the FDA on its ANDA. The FDA cited numerous deficiencies related to the API manufacturing process

developed by ▇▇▇▇. ▇▇▇▇ once again asked ▇▇▇▇ for help addressing these deficiencies. ▇▇▇▇ again declined.

235.    Faced with ▇▇▇▇ complete refusal to engage, ▇▇▇▇ was forced to switch pyrimethamine API suppliers for a second time. In or around ▇▇▇▇, it settled on an API manufacturer called ▇▇▇▇. ▇▇▇▇ planned to transfer ▇▇▇▇ manufacturing process to ▇▇▇▇ and to inform the FDA of this change in responding to the agency's complete response.

236.    ▇▇▇▇, however, had never manufactured pyrimethamine before. As a result, before ▇▇▇▇ could respond to the FDA, ▇▇▇▇ had to replicate ▇▇▇▇ manufacturing process and redo three months of stability testing that ▇▇▇▇ had previously done. It also had to determine how to respond to the API-related deficiencies cited by the FDA relating to the manufacturing process developed by ▇▇▇▇.

237.    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

238.    Absent Defendants' anticompetitive conduct, ▇▇▇▇ likely would have launched its product in 2019 or earlier. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

239.    Defendants' exclusionary conduct also impeded ▇▇▇▇ ability to develop a generic version of Daraprim. Absent Defendants' conduct, ▇▇▇▇ likely would be on the market today with a generic version of Daraprim.

240.    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



241.    ███ decided to pursue an ANDA for generic Daraprim in early 2016 after seeing

the publicity about Vyera's price increase.

242.    In February 2016, ███ contacted Fukuzyu, then the only active pyrimethamine

API supplier with an approved U.S. DMF, about buying pyrimethamine. Fukyzyu never

responded.

243.    In June 2016, ███ partnered with an ███ manufacturer called ███

█████████. ███ agreed to make pyrimethamine for ███, but did not have a

manufacturing process in place for pyrimethamine API. ███ began working with ███ to

develop a pyrimethamine manufacturing process that ███ would file as a DMF.

244.    Meanwhile, ███ still pursued Fukuzyu because using its API would have been

faster and less expensive. In September 2017, ███ engaged an intermediary to contact Fukuzyu

on its behalf but keep its identity anonymous. Later that month, the intermediary began

discussing pyrimethamine API with Fukuzyu.

245.    In October 2017, Fukuzyu told the intermediary that it had an exclusive

agreement with Vyera for the supply of pyrimethamine API for use in human products in the

United States. At Vyera's direction, Fukuzyu told the intermediary that it would sell

pyrimethamine only if the intermediary attested that the API would "not be used to make

pyrimethamine drug product, for human use, that will find its way back to the US for commercial

purposes."

246.    Because this restriction would prevent ██ from using Fukuzyu's pyrimethamine API for its generic Daraprim product in the U.S., ██ ended the intermediary's discussions with Fukuzyu in January 2018.

247.    This left ██ as ██ best remaining API option. Since 2016, ██ had been working to develop an FDA-approvable manufacturing process for pyrimethamine API. In ██ ██—three years after partnering with ██—██ submitted a DMF for pyrimethamine API.

248.    In addition to the difficulty securing a supply of pyrimethamine API, ██ also struggled to secure Daraprim samples to conduct bioequivalence testing.

249.    In late 2016, ██ sought to buy Daraprim samples through Pharmaceutical Buyer's Inc., a company that specializes in obtaining branded samples. ██ has often purchased samples of other branded products through Pharmaceutical Buyers Inc., but the company was unable to acquire any Daraprim for ██.

250.    In January 2017, ██ contract manufacturer engaged AdiraMedica, LLC—a company that specializes in obtaining branded samples—to buy Daraprim for ██. AdiraMedica first contacted ASD Healthcare, which responded that "Daraprim is available to hospitals and government facilities only at this time."

251.    In early 2017, ██ itself tried to buy Daraprim from a local hospital. But the hospital told ██ it had an agreement with its supplier barring it from selling Daraprim to third parties. At that time, Vyera had its agreements in place with hospitals and hospital GPOs prohibiting the resale of Daraprim to anyone other than patients.

252.    In March 2017, AdiraMedica contacted Vyera directly. Vyera asked for the identity of AdiraMedica's customer and claimed that it "may be interested in negotiating an indemnification agreement from the ultimate purchaser." Over five weeks later, Vyera sent

**A-189**

AdiraMedica a purchase agreement containing a provision requiring the buyer to indemnify Vyera for **all** legal claims related in any way to Daraprim—regardless of whether the claim stemmed from the buyer's purchase or use of the product. Vyera further insisted that if the product was for a generic company, that company had to disclose its identity and sign the agreement.

253.    In August 2017, at ███ request, AdiraMedica asked Vyera to delete the highly unusual and overbroad indemnity provision. Vyera never responded to AdiraMedica on the proposed deletion of this provision. As a result, AdiraMedica could not buy any Daraprim from Vyera for ███.

254.    In January 2018, after a year of efforts, ███ was able to buy two 100-count bottles of Daraprim for $115,250 per bottle from Reliant Specialty LLC. Several months later, Reliant Specialty told ███ that Vyera had barred it from selling Daraprim. Reliant Specialty also told ███ that Defendant Mulleady, on behalf of Vyera, had bought back its remaining Daraprim inventory.

255.    Soon thereafter, ███ was approached by Vyera. In an April 2018 call, Mulleady proposed that ███ drop its effort to develop a competing generic product and instead partner with Vyera on a Daraprim ANDA. At a meeting later that month, Mulleady and Akeel Mithani presented ███ with a financial model showing that ███ would be better off partnering with Vyera than competing with its own generic product.

256.    On May 4, 2018, Mulleady again met with ███ and further discouraged it from competing with Vyera. Mulleady told ███ that he had prevented Reliant Specialty from selling Daraprim. He also bragged that Vyera had entered into an exclusive API agreement with RL

54

Fine that eliminated two potential generic competitors. He then told ███ that he knew ███ was its API supplier.

257.    Discussions between ███ and Vyera ceased in June 2018. ███ then pushed forward with its own ANDA.

258.    ████████████████████████

████████████████████

259.    ████████████████████

████████████████████████

████████████████████████

█████████

260.    ████████████████████

████████████████████████

261.    Absent Defendants' anticompetitive conduct, ███ likely would have launched its product in 2018 or earlier.

**D.  Mylan, N.V.**

262.    Defendants' exclusionary conduct caused Mylan to stop pursuing a generic version of Daraprim. Mylan is one of the largest generic pharmaceutical companies in the world.

263.    In late 2015, Mylan began considering developing a generic version of Daraprim. To assess the sales of Daraprim, Mylan analyzed the IQVIA data on the drug. Mylan knew that this data for Daraprim was underreported, but it could not determine a more accurate sales number because Vyera had no public financial filings.

264.    From October 2015 to April 2018, Mylan inquired about purchasing Daraprim from seven suppliers: ████████████████████████

████████████████████

265.    Multiple suppliers told Mylan they could not access Daraprim. They provided

varying reasons. In 2016, ████████████████ told Mylan that Daraprim was in restricted

distribution and that it was "[f]or inpatient hospitals only." ████████ similarly told Mylan that

Daraprim was "only available to inpatient hospital pharmacies."

266.    In ██████████ Mylan abandoned its pursuit of a generic Daraprim product. It

decided that obtaining Daraprim samples was too difficult and expensive. It also cited its

inability to get a "real sense" of Daraprim's sales because the product was "no longer reported in

[IQVIA]" as a reason for abandoning the project.

### E.   Other generic companies

267.    Vyera's exclusionary conduct has also likely impeded the ability of at least one

other generic company to obtain Daraprim samples. Although the name of this generic company

is not yet known, it tried to procure samples through Ambegen Pharmaceutical and Services Pvt.

Ltd., an Indian company that sources branded drugs for bioequivalence testing.

268.    On April 3, 2019, Ambegen contacted ASD Healthcare about buying Daraprim

for a "pre-clinical study." ASD Healthcare forwarded the request to Vyera, which told the

distributor to "**NOT** fulfill this order/request" and to have Ambegen contact it directly. Ambegen

then spoke to Vyera's deputy general counsel, who denied its request to purchase Daraprim.

269.    The next day, Ambegen contacted ██████████████████████, another

company specializing in obtaining branded drugs, about buying Daraprim.

270.    ██████ initially contacted numerous suppliers, including Myoderm and Low Cost

RX LLC. As Myoderm explained, Daraprim is "restricted with the manufacturer and our

suppliers do not have access due to manufacturer restrictions." Low Cost RX similarly

emphasized: "This is a very strict and limited drug."

271.    In May 2019, ▓▓▓ contacted ASD Healthcare about purchasing Daraprim.

ASD Healthcare told ▓▓▓ that the manufacturer must first approve the request and sent

▓▓▓ a request form to complete. ▓▓▓ completed the form, which ASD Healthcare

forwarded to Vyera.

272.    On June 22, 2019, Vyera told ASD Healthcare to "**NOT** fulfill this order/request"

and to have ▓▓▓ contact it directly. Over the next couple of months, ▓▓▓ communicated

with Vyera's deputy general counsel, who would not approve the sale and instead kept asking for

increasingly more information about ▓▓▓ customer. ▓▓▓ thereafter abandoned its efforts

to buy Daraprim from Vyera.

**VII.    Defendants' Foreclosure of Generic Entry Caused Consumers to Pay Higher Prices**

273.    Defendants' anticompetitive course of conduct delayed generic Daraprim entry.

Absent Defendants' conduct, at least one generic version of Daraprim would have entered the

market in 2018 or earlier, and multiple generic versions would likely be on the market today.

274.    Vyera's agreements prohibiting the resale of Daraprim impeded potential generic

competitors, including ▓▓▓, ▓▓, and Mylan, from procuring sufficient Daraprim samples

to meet FDA testing requirements. Absent these restrictions, potential generic competitors

readily could have purchased sufficient quantities of Daraprim through ordinary distribution

channels.

275.    Vyera's exclusive supply agreements with Fukuzyu and RL Fine—the two most

viable suppliers of pyrimethamine API—impeded potential generic competitors, including

▓▓▓, ▓▓, and ▓▓▓, from securing a reliable source of pyrimethamine API, an

indispensable ingredient of generic Daraprim. Absent these exclusive agreements, potential

generic competitors could have sourced pyrimethamine API from Fukuzyu or RL Fine instead of

a manufacturer that needed to devote the time and expense of developing an FDA-approvable process for manufacturing pyrimethamine API.

276.    Vyera's data-blocking agreements denied potential generic competitors accurate and reliable information to properly assess the generic market opportunity, thereby deterring potential generic competitors from pursuing a generic Daraprim product. Absent these agreements, which distorted Daraprim's reported sales revenues, Mylan and other pharmaceutical companies would have known that Daraprim revenues had grown substantially due to Vyera's 4,000% price increase, and thus offered a lucrative competitive opportunity.

277.    By impeding generic competition, Defendants' anticompetitive conduct denied consumers and other purchasers of Daraprim access to AB-rated generic versions of Daraprim that would offer the same therapeutic benefit as branded Daraprim, but at a fraction of the price.

278.    The first generic competitor's product is typically offered at a 20% to 30% discount to the branded product. Subsequent generic entry creates greater price competition with discounts potentially reaching 85% or more off the brand price. Defendants' anticompetitive conduct has delayed the introduction of this price competition to the detriment of consumers and other purchasers of Daraprim.

279.    Most consumers would have purchased the lower-priced AB-rated substitutes for Daraprim rather than the higher-priced branded product. A 2018 Vyera contemporaneous forecast assumed that approximately ███ of Daraprim unit sales would switch to an AB-rated generic version of Daraprim within three months of generic entry.

280.    Defendants' anticompetitive conduct, however, forced consumers to continue paying Vyera's monopoly price for Daraprim by depriving them of access to a lower-cost generic alternative.

58

281.    Defendants' anticompetitive conduct has caused, and is continuing to cause, significant economic harm. Consumers and other purchasers of Daraprim likely would have saved tens of millions of dollars by purchasing generic versions of Daraprim.

282.    The economic harm from Defendants' conduct is ongoing. Absent Defendants' anticompetitive scheme, there would likely be multiple generic versions of Daraprim available today, leading to more intense price competition and lower prices for consumers.

283.    Defendants' anticompetitive conduct, and the corresponding reduction in the availability of Daraprim, has also resulted in harm to patients from delays in treatment, prolonged hospital stays, and poor medical outcomes. And in at least one case, Defendants' anticompetitive conduct may have contributed to a patient's death.

284.    Toxoplasmosis is a rare condition. Many hospitals treat few or no toxoplasmosis patients each year. Nonetheless, for decades, hospitals regularly stocked Daraprim because it was affordable and because patients with acute toxoplasmosis need to begin taking it immediately. Vyera's massive price increase—maintained through Defendants' anticompetitive scheme— changed hospitals' approach. Due to the price increase, hospitals became reluctant to incur the substantial cost of keeping Daraprim stocked in their inpatient pharmacies when it may never be used to treat a patient. This can lead to delays in treatment when patients present at the hospital with acute toxoplasmosis. Defendants' anticompetitive conduct denied these hospitals the option of stocking lower-cost generic versions of Daraprim.

285.    Similarly, the extremely high price of Daraprim creates challenges in discharging patients from the hospital. Physicians often delay hospital discharge of their toxoplasmosis patients until they are confident the patient will be able to obtain Daraprim after discharge. Because of the high price and limited availability of Daraprim, however, many rehabilitation

facilities will no longer accept patients who need it. These patients instead remain in the hospital for weeks longer than necessary, resulting in unnecessary costs, medical complications, and, in at least one case, even death.

286.    In February 2018, a toxoplasmosis patient was ready to be discharged after several weeks in the hospital. But the hospital was unable to procure Daraprim on an outpatient basis for the patient. The patient continued to be hospitalized and eventually contracted a severe hospital infection that proved fatal.

287.    In another example, a toxoplasmosis patient could not be transferred to a rehabilitation facility because the facility refused to take on the risk that it might be obligated to pay Daraprim's high price. Forced to remain in the hospital, the patient developed medical complications from the prolonged stay, including multi-drug resistant infections.

288.    Absent Defendants' anticompetitive conduct, hospitals and rehabilitation facilities would have had access to lower-cost generic versions of Daraprim years earlier.

289.    Additionally, Defendants' anticompetitive conduct has had the collateral effect of making it more difficult for some patients to obtain Daraprim from hospitals or pharmacies.

290.    For example, in November 2018, one patient with lifelong congenital toxoplasmosis sought to obtain Daraprim for necessary prophylactic outpatient treatment. Neither she nor a local hospital was able to obtain Daraprim immediately, and pharmacies in the area lacked supply. The patient was forced to contact Vyera directly and had Daraprim drop-shipped directly to her residence, where it arrived over two weeks after she first needed it.

291.    Absent relief, Defendants' anticompetitive conduct is likely to recur and cause additional harm to consumers. Defendants have continued to engage in their anticompetitive conduct despite congressional hearings and Plaintiffs' investigations.

292.    Vyera acquired Daraprim for the express purpose of raising its price and protecting that higher price with an anticompetitive scheme. Vyera is and has been actively looking for other drugs with a similar profile to Daraprim that it could acquire and execute a similar strategy to prevent generic competition. Absent relief, Vyera is likely to carry out a similar anticompetitive scheme with another drug.

293.    Defendant Shkreli directed Vyera to acquire Daraprim for the express purpose of raising its price and protecting that higher price with an anticompetitive scheme. Shkreli previously started another pharmaceutical company, Retrophin, for the purpose of purchasing a different drug, raising the price, and enacting distribution restrictions to impede generic competition. Shkreli is and has been actively looking for other drugs with which to replicate this strategy, either through Vyera or a new company. Absent relief, Shkreli is likely to purchase another drug and carry out a similar anticompetitive scheme.

294.    Defendant Mulleady directed, participated in, and carried out the anticompetitive scheme to protect Vyera's Daraprim price increase. Mulleady is and has been actively looking for other drugs with which Vyera or a new company could replicate the Daraprim anticompetitive scheme. Absent relief, Mulleady is likely to direct or participate in a similar anticompetitive scheme with another product.

**VIII.   Vyera Has Monopoly Power in a Relevant Market for FDA-Approved Pyrimethamine Products**

295.    From 2015 until at least March 2020, Vyera exercised monopoly power in the United States with respect to Daraprim.

296.    Vyera's monopoly power can be observed directly. In 2015, Vyera raised the price of Daraprim by more than 4,000%. This massive price increase was extremely profitable: prior to the acquisition, Daraprim had annual revenues of approximately ███████. After raising

the price 4,000%, Vyera's annual Daraprim revenues were approximately ███████—an increase of more than ████.

297.    Vyera sells and has sold Daraprim at prices far above its cost of production, making it highly profitable. Even accounting for other direct expenses Vyera allocates to selling and marketing Daraprim, Vyera's profit margins on Daraprim's net sales are substantial.

298.    Vyera's monopoly power with respect to Daraprim persisted for an appreciable period. Since 2015, Vyera maintained its high price and continued to reap significantly higher profits.

299.    Vyera's monopoly power can also be observed indirectly based on its 100% share of the relevant market for pyrimethamine products approved by the FDA for sale in the United States. Vyera maintained this 100% market share from the time it purchased Daraprim in 2015 at least until generic entry occurred in March 2020.

300.    The relevant product market is FDA-approved pyrimethamine products.

301.    Despite Vyera's 4,000% price increase for Daraprim, most doctors continued to prescribe Daraprim instead of switching patients to non-pyrimethamine products or non-FDA-approved pyrimethamine products.

302.    Non-pyrimethamine pharmaceutical products are not reasonably interchangeable with pyrimethamine products.

303.    Pyrimethamine is the "gold standard" treatment for toxoplasmosis. Guidelines from U.S. government health authorities identify pyrimethamine as "the most effective drug against toxoplasmosis" and advise other options only when pyrimethamine is "unavailable or there is a delay in obtaining it." Many doctors are "at a loss to think of an appropriate alternative to pyrimethamine."

304.    Non-FDA-approved pyrimethamine products, such as compounded

pyrimethamine, also are not reasonably interchangeable with FDA-approved pyrimethamine

products.

305.    Most doctors have serious safety concerns about compounded products because

they are not FDA approved. Additionally, federal law imposes significant restrictions on how

compounded pharmaceuticals are sold, and they are thus not available for all patients.

306.    To the extent that Vyera's 4,000% price increase caused any doctors to prescribe

a non-pyrimethamine product or a non-FDA approved pyrimethamine product, the change was

due to the extreme nature of the price hike and the increased difficulty of obtaining Daraprim,

not because such products are reasonably interchangeable with Daraprim. Indeed, if these

products were reasonably interchangeable with Daraprim, a sufficient number of doctors would

have switched to them to make the price increase unprofitable because they are orders of

magnitude cheaper than Daraprim.

307.    Unlike non-pyrimethamine products and non-FDA-approved pyrimethamine

products, generic Daraprim would be reasonably interchangeable with Daraprim. Vyera

estimates that more than ▮▮▮ of patients would immediately switch to generic Daraprim and that

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Vyera expects a generic Daraprim

product to cause this ▮▮▮▮▮ shift even though it will likely be much more expensive than

existing non-pyrimethamine products and non-FDA-approved pyrimethamine products. Thus,

unlike non-pyrimethamine or non-FDA approved pyrimethamine products, generic Daraprim

would constrain the price of branded Daraprim and is thus in the same relevant product market.

308.    The lack of an adequate substitute to Daraprim is also confirmed by the fact that

the four largest pharmacy benefit managers ("PBMs")—which act as third-party administrators

for a health plan's pharmaceutical benefits—have all continued to include Daraprim on their formularies. PBMs have independent pharmacy and therapeutics committees that determine whether a given drug must be included on a formulary to provide adequate medical coverage. These independent committees for the four largest PBMs determined that their formularies had to include Daraprim despite the price increase and notwithstanding the availability of non-pyrimethamine and compounded pyrimethamine products.

309.    As a Vyera executive explained in January 2016, Vyera has "not had any rejections from commercial payers for Daraprim . . . because payers recognize the potential life-saving value of the medication, it is the only FDA approved therapy for toxo[plasmosis] (there are no on label alternatives), and the budget impact is low given the relatively low volume of patients."

310.    A relevant market consisting of FDA-approved pyrimethamine products can also be observed through application of the "SSNIP" test. The SSNIP test is a well-recognized and widely used economic method to define a relevant product market. The objective of this test is to identify the narrowest set of products for which a hypothetical monopolist could profitably impose a small but significant and non-transitory increase in price. If enough purchasers would accept a SSNIP—rather than switch to another product—such that the price increase would be profitable, then the product set constitutes an antitrust market.

311.    In the past 10 years, the price of Daraprim has increased substantially at least twice: approximately 675% in 2011 and approximately 4,000% in August 2015. Each of these price increases is significantly larger than a SSNIP. In each case, Daraprim retained the majority of its sales and yielded significantly increased profits. Thus, a monopolist owning the only FDA-approved pyrimethamine product has a proven ability to impose a price increase greater than a

SSNIP while retaining enough sales to make the price increase profitable. Indeed, the only possible constraint Impax identified for its June 2015 Daraprim price increase was potential backlash from the HIV/AIDS community.

312.   The relevant geographic market is the United States. Pharmaceutical products are sold and regulated on a nationwide basis. Additionally, because the U.S. market is limited to FDA-approved products, it can only include products sold inside the United States.

313.   Substantial barriers to entry exist in the market for FDA-approved pyrimethamine products. Potential new sellers of pyrimethamine products need to obtain FDA approval, which can take up to several years. Additionally, Vyera has erected additional barriers to entry by (1) blocking generic companies from purchasing sufficient Daraprim for FDA-required bioequivalence testing and (2) blocking generic companies from accessing pyrimethamine API suppliers necessary to make Daraprim.

## COUNT I
## Monopoly Maintenance Against All Defendants

314.   Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 313 above.

315.   From 2015 until at least March 2020, Vyera and Phoenixus had monopoly power in the United States with respect to FDA-approved pyrimethamine products.

316.   Vyera, Phoenixus, Shkreli, and Mulleady willfully maintained this monopoly power through their course of anticompetitive conduct.

317.   There is no valid procompetitive justification for Defendants' exclusionary conduct in the market for FDA-approved pyrimethamine products.

318.    Defendants' anticompetitive acts constitute unlawful monopoly maintenance in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and an unfair method of competition in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT II**
**Agreements in Restraint of Trade (Restrictions and Limitations**
**on Resale of Daraprim) Against All Defendants**

319.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 313 above.

320.    Defendants' agreements with distributors, hospitals, and other downstream purchasers barring them from reselling Daraprim to potential generic competitors, which were conceived, negotiated, signed, and/or enforced by the individual Defendants, are unreasonable restraints of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and unfair methods of competition in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT III**
**Agreements in Restraint of Trade (API Supply**
**Exclusivity Agreements) Against All Defendants**

321.    Plaintiffs re-allege and incorporate by reference the allegations in paragraphs 1 through 313 above.

322.    Defendants' exclusive pyrimethamine API contracts with Fukuzyu and RL Fine, which were conceived, negotiated, signed, and/or enforced by the individual Defendants, are unreasonable restraints of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and unfair methods of competition in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT IV**
### A. Anticompetitive Contracts, Agreements and/or Arrangements in Violation of New York's Donnelly Act Against All Defendants

323.    Plaintiff State of New York re-alleges and incorporates by reference the allegations in paragraphs 1 through 313 above.

324.    Defendants' agreements with distributors, hospitals, and other downstream purchasers barring them from reselling Daraprim to potential generic competitors, which were conceived, negotiated, signed, and/or enforced by the individual Defendants, constitute anticompetitive contracts, agreements, and arrangements in violation of New York's Donnelly Act, New York General Business Law § 340 *et seq*.

325.    Defendants' exclusive pyrimethamine API contracts with Fukuzyu and RL Fine, which were conceived, negotiated, signed, and/or enforced by the individual Defendants, constitute agreements in restraint of trade in violation of New York's Donnelly Act, New York General Business Law § 340 *et seq*.

326.    Defendants' course of conduct as detailed above was done with the purpose of maintaining a monopoly in FDA-approved pyrimethamine and thus violates New York's Donnelly Act, New York General Business Law § 340 *et seq*.

### B. Illegality in Violation of New York Executive Law § 63(12) Against All Defendants

327.    Plaintiff State of New York re-alleges and incorporates by reference the allegations in paragraphs 1 through 313 above.

328.    Defendants' conduct violates § 63(12) of New York's Executive Law, in that Defendants engaged in repeated and/or persistent illegal acts—violations of Sections 1 and 2 of the Sherman Act and sections 340 *et seq* of the Donnelly Act—in the carrying on, conducting, or transaction of business within the meaning and intent of Executive Law § 63(12).

**COUNT V**

**A. Anticompetitive Contracts, Agreements and/or Arrangements in Violation of California's Cartwright Act Against All Defendants**

329.    Plaintiff State of California re-alleges and incorporates by reference the allegations in paragraphs 1 through 313 above.

330.    Defendants' agreements with distributors, hospitals, and other downstream purchasers barring them from reselling Daraprim to potential generic competitors, which were conceived, negotiated, signed, and/or enforced by the individual Defendants, constitute anticompetitive contracts, agreements, and arrangements in violation of California's Cartwright Act, California Business and Professions Code § 16700 *et seq*.

331.    Defendants' exclusive pyrimethamine API contracts with Fukuzyu and RL Fine, which were conceived, negotiated, signed, and/or enforced by the individual Defendants, constitute agreements in restraint of trade in violation of California's Cartwright Act, California Business and Professions Code § 16700 *et seq*.

**B. Anticompetitive Contracts, Agreements and/or Arrangements in Violation of California's Unfair Competition Act Against All Defendants**

332.    Plaintiff State of California re-alleges and incorporates by reference the allegations in paragraphs 1 through 313 above.

333.    Defendants' agreements with distributors, hospitals, and other downstream purchasers barring them from reselling Daraprim to potential generic competitors, which were conceived, negotiated, signed, and/or enforced by the individual Defendants, constitute anticompetitive contracts, agreements, and arrangements in violation of California's Unfair Competition Act, California Business and Professions Code § 17200 *et seq*. Defendants have engaged, and continue to engage, in acts or practices that are unlawful, unfair, or fraudulent, and

which constitute unfair competition within the meaning of § 17200 of the Business and

Professions Code.

334.    These acts or practices include, but are not limited to, Defendants' exclusive

pyrimethamine API contracts with Fukuzyu and RL Fine, which were conceived, negotiated,

signed, and/or enforced by the individual Defendants, which constitute agreements in restraint of

trade in violation of California's Cartwright Act, California Business and Professions Code §

16700 *et seq*.

**COUNT VI**
**Anticompetitive Contracts, Combinations and/or Conspiracies in**
**Violation of the Illinois Antitrust Act Against All Defendants**

335.    Plaintiff State of Illinois re-alleges and incorporates by reference the allegations

in paragraphs 1 through 313 above.

336.    Defendants' contracts and agreements restricting resale of Daraprim, to block

access to pyrimethamine API, and to mask the true size of the pyrimethamine market as

conceived, negotiated, signed, and/or enforced by the individual Defendants, constitute unlawful

contracts, combinations or conspiracies with one or more other persons for the purpose, or with

the effect, of unreasonably restraining trade in violation of the Illinois Antitrust Act, 740 ILCS

10/3(2).

337.    Defendants' course of conduct as detailed above was done with the purpose of

maintaining monopoly power over a substantial part of trade or commerce of Illinois in the

market for FDA-approved pyrimethamine and Daraprim, for the purpose of excluding

competition or controlling, fixing, or maintaining prices for these drugs, in violation of the

Illinois Antitrust Act, 740 ILCS 10/3(3).

**COUNT VII**

**Unfair Methods of Competition and/or Unfair Acts or Practices in Violation of the North Carolina Unfair or Deceptive Practices Act Against All Defendants**

338.    Plaintiff State of North Carolina re-alleges and incorporates by reference the allegations in paragraphs 1 through 313 above.

339.    Defendants' agreements with distributors, hospitals, and other downstream purchasers barring them from reselling Daraprim to potential generic competitors, as well as the data-blocking agreements with its primary distributors, which were conceived, negotiated, signed, and/or enforced by the individual defendants, constitute unfair methods of competition and/or unfair acts or practices within their meaning under the North Carolina Unfair or Deceptive Practices Act, N.C. Gen. Stat. § 75-1 *et seq*.

340.    Defendants' exclusive pyrimethamine API contracts with Fukuzyu and RL Fine, which were conceived, negotiated, signed, and/or enforced by the individual defendants, constitute agreements in restraint of trade in violation of the North Carolina Unfair or Deceptive Practices Act, N.C. Gen. Stat. § 75-1 *et seq.*

341.    Defendants' course of conduct as detailed above was done with the purpose of maintaining a monopoly in FDA-approved pyrimethamine and thus violates the North Carolina Unfair or Deceptive Practices Act, N.C. Gen. Stat. § 75-1 *et seq.*

342.    The aforesaid methods, acts, or practices constitute unfair methods of competition and/or unfair acts or practices within their meaning under the North Carolina Unfair or Deceptive Practices Act, N.C. Gen. Stat. § 75-1 *et seq.*, and are injurious to North Carolina consumers and the general economy of the State of North Carolina.

343.    Plaintiff State of North Carolina is entitled to relief pursuant to the Unfair or Deceptive Acts or Practices Act, N.C. Gen. Stat. § 75-1 *et seq.*

**COUNT VIII**
**Violations of Ohio's Valentine Act Against All Defendants**

344.    Plaintiff State of Ohio re-alleges and incorporates by reference the allegations in paragraphs 1 through 313 above.

345.    Defendants' activities detailed above, including the vertical arrangements, constitute a Trust under Ohio Rev. Code § 1331.01 and are thus illegal under Ohio's Valentine Act, codified in Ohio Rev. Code Chapter 1331.

**COUNT IX**
**A. Pennsylvania's Unfair Trade Practices and Consumer Protection Law**

346.    Plaintiff Commonwealth of Pennsylvania re-alleges and incorporates by reference the allegations in paragraphs 1 through 313 above.

347.    In distributing, marketing and selling of the pharmaceutical product Daraprim to consumers through drug wholesalers and distributors, pharmacy chains, and other downstream purchasers of Daraprim and in otherwise engaging in the conduct more fully described herein with respect to Daraprim, the Defendants are engaging in trade or commerce that has directly or indirectly harmed the Commonwealth of Pennsylvania and Pennsylvania consumers within the meaning of 73 P. S. § 201-2(3) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL").

348.    Defendants' conduct as set forth in the preceding counts has been unfair or unconscionable because it offends public policy as established by statutes, the common law, or otherwise, and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to the Commonwealth of Pennsylvania and Pennsylvania consumers.

349.    The Defendants' impairment of choice and the competitive process has had the following effects: (1) competition in the market for FDA-approved pyrimethamine products has

been restrained, suppressed, and eliminated throughout Pennsylvania; (2) Daraprim prices have

been raised, maintained, and stabilized at artificially-high levels throughout Pennsylvania; (3)

Commonwealth of Pennsylvania and Pennsylvania consumers have been deprived of free and

open markets; and (4) Commonwealth of Pennsylvania and Pennsylvania consumers have paid

supra-competitive, artificially inflated prices for Daraprim.

350.    The aforesaid methods, acts, or practices constitute unfair methods of competition

and/or unfair acts or practices within their meaning under Sections 2 and 3 of the PUTPCPL,

including, but not limited to, "Engaging in any other fraudulent or deceptive conduct which

creates a likelihood of confusion or of misunderstanding" in violation of 73 P.S. § 201-2(4)(xxi).

351.    The above described conduct created the likelihood of confusion and

misunderstanding and exploited unfair advantage of the Commonwealth of Pennsylvania and

Pennsylvania consumers seeking to exercise a meaningful choice in a market expected to be free

of impairment to the competitive process and thus constitutes constructive fraud through one or

more of the following breaches of legal or equitable duties:

      a.  Violating federal antitrust laws as set forth in Counts I through III;

      b.  Violating Pennsylvania antitrust common law through restricting the resale of
          Daraprim;

      c.  Violating Pennsylvania antitrust common law through restricting access to a
          supply of the pyrimethamine API;

      d.  Violating Pennsylvania antitrust common law through willfully maintaining
          its monopoly power over FDA-approved pyrimethamine products; and/or

      e.  Engaging in any conduct which causes substantial injury to consumers.

352.    The above described conduct substantially injured Pennsylvania consumers and

the Commonwealth of Pennsylvania.

353.    The above described conduct has been willful within the meaning of 73 P.S. §

201-8 and is unlawful under the PUTPCPL.

**B. Common Law Doctrine against Restraint of Trade**

354.    Plaintiff Commonwealth of Pennsylvania re-alleges and incorporates by reference

the allegations in paragraphs 1 through 313 above.

355.    The agreements to restrict the resale of Daraprim and the supply of the

pyrimethamine API as set forth in the preceding counts constitute an unreasonable restraint of

trade in violation of Pennsylvania antitrust common law.

356.    The Defendants' contracts in restraint of trade have had the following effects: (1)

competition in the market for FDA-approved pyrimethamine products has been restrained,

suppressed, and eliminated throughout Pennsylvania; (2) Daraprim prices have been raised,

maintained, and stabilized at artificially-high levels throughout Pennsylvania; (3)

Commonwealth of Pennsylvania and Pennsylvania consumers have been deprived of free and

open markets; and (4) Commonwealth of Pennsylvania and Pennsylvania consumers have paid

supra-competitive, artificially inflated prices for Daraprim.

**COUNT X**
**A. Anticompetitive Agreements in Violation of the**
**Virginia Antitrust Act Against All Defendants**

357.    Plaintiff State of Virginia re-alleges and incorporates by reference the allegations

in paragraphs 1 through 313 above.

358.    Defendants' agreements with distributors, hospitals, and other downstream

purchasers barring them from reselling Daraprim to potential generic competitors, which were

conceived, negotiated, signed, and/or enforced by the individual Defendants constitute contracts, combinations, or conspiracies in restraint of trade or commerce in violation of the Virginia Antitrust Act, Virginia Code § 59.1-9.5.

359.    Defendants' exclusive pyrimethamine API contracts with Fukuzyu and RL Fine, which were conceived, negotiated, signed, and/or enforced by the individual Defendants, constitute contracts, combinations, or conspiracies in restraint of trade or commerce in violation of the Virginia Antitrust Act, Virginia Code § 59.1-9.5.

### B. Monopoly Maintenance in Violation of the Virginia Antitrust Act

360.    Plaintiff State of Virginia re-alleges and incorporates by reference the allegations in paragraphs 1 through 313 above.

361.    At all relevant times, Vyera and Phoenixus have had monopoly power in the United States with respect to FDA-approved pyrimethamine products.

362.    Vyera, Phoenixus, Shkreli, and Mulleady have willfully maintained this monopoly power through their course of anticompetitive conduct.

363.    There is no valid procompetitive justification for Defendants' exclusionary conduct in the market for FDA-approved pyrimethamine products.

364.    Defendants' anticompetitive acts constitute unlawful monopoly maintenance in violation of the Virginia Antitrust Act, Virginia Code § 59.1-9.6.

### Prayer for Relief

WHEREFORE, Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to issue a permanent injunction against violations of the FTC Act; Section 16 of the Clayton Act, 15 U.S.C. § 26, authorizes this Court to issue a permanent injunction for violations of the Sherman Act; New York General Business Law § 342 authorizes this Court to issue a permanent

injunction for violations of New York's Donnelly Act; New York Executive Law § 63(12) authorizes this Court to issue a permanent injunction for violation of the aforementioned state and federal antitrust laws; CA Bus & Prof Code § 16754.5 authorizes this Court to issue a permanent injunction in violation of California's Cartwright Act, CA Bus & Prof Code § 16700 *et seq*.; CA Bus & Prof Code § 17203 authorizes this Court to issue a permanent injunction for violations of and California's Unfair Competition Act, Ca Bus & Prof Code § 17200 *et seq.*; the Illinois Antitrust Act, Sections 7(1) and 7(2) authorizes this Court to issue a permanent injunction for violation of the aforementioned state and federal antitrust laws; N.C. Gen. Stat. §75-14 authorizes this Court to issue a permanent injunction for violations of the North Carolina Unfair or Deceptive Practices Act; Ohio Revised Code Chapter 1331 and §109.81(A) authorizes this Court to issue a permanent injunction for violations of Ohio's Valentine Act and the aforementioned federal antitrust laws; 73 P.S. §201-4 authorizes this Court to issue a permanent injunction for violations of Pennsylvania Unfair Trade Practices and Consumer Protection Law; Pennsylvania Common Law Doctrine against Restraints of Trade provides equitable relief including a permanent injunction; the Virginia Antitrust Act § 59.1-9.15(a) authorizes this Court to issue a permanent injunction for violations of the Virginia Antitrust Act, therefore the FTC and the states of New York, California, Illinois, Ohio, North Carolina, Pennsylvania, and Virginia respectfully request that this Court, as authorized by statute and its own equitable powers, enter final judgment against Defendants, declaring, ordering, and adjudging:

1.      That Defendants' course of conduct violates Section 2 of the Sherman Act, 15 U.S.C. § 2;

2.      That Defendants' agreements in restraint of trade violate Section 1 of the Sherman Act, 15 U.S.C. § 1;

3. That Defendants' course of conduct violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a);

4. That Defendants' agreements in restraint of trade violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a);

5. That Defendants' course of conduct violates New York's Donnelly Act, N.Y. GBL § 340 *et seq*.;

6. That Defendants' course of conduct violates New York's Executive Law, N.Y. § 63(12);

7. That Defendants' course of conduct violates California's Cartwright Act, CA Bus & Prof Code § 16700 *et seq.*, and California's Unfair Competition Act, CA Bus & Prof Code § 17200;

8. That Defendants' course of conduct violates Illinois Antitrust Act, 740 ILCS 10/1 *et seq.*;

9. That Defendants' course of conduct violates the North Carolina Unfair or Deceptive Practices Act, N.C. Gen. Stat. § 75-1 *et seq*.;

10. That Defendants' course of conduct violates Ohio's Valentine Act; Ohio Revised Code Chapter 1331;

11. The Defendants' course of conduct violates the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P. S. §§ 201-3, 201-2(4)(xxi) and 201-4, as well as Pennsylvania's Common Law Doctrine against Restraints of Trade;

12. The Defendants' course of conduct violates Virginia Antitrust Act, Virginia Code § 59.1-9.1 *et seq*.;

13. That Defendants are permanently enjoined from continuing their course of conduct;

14. That Defendants are permanently enjoined from engaging in similar and related conduct in the future;

15.    That Shkreli and Mulleady are permanently enjoined from owning in part or whole or working for a company engaged in the pharmaceutical industry;

16.    That the Court grant such other equitable relief, including equitable monetary relief, as the Court finds necessary to redress and prevent recurrence of Defendants' violations of Section 1 of the Sherman Act, Section 2 of the Sherman Act, and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as alleged herein;

17.    That the Court grant such other equitable relief, including equitable monetary relief, as the Court finds necessary to redress and prevent recurrence of Defendants' violations of New York's Donnelly Act, New York Executive Law § 63(12); California's Cartwright Act, Ca Bus & Prof Code §16700 *et seq*.; California's Unfair Competition Act, CA Bus & Prof Code §17200; Illinois Antitrust Act, 740 ILCS 10/1 et seq.; North Carolina Unfair or Deceptive Practices Act, N.C. Gen. Stat. §75-1 et seq; Ohio's Valentine Act, Ohio Rev. Code Chapter 1331; Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-4.1; Pennsylvania Common Law Doctrine against Restraints of Trade; Virginia Antitrust Act, Virginia Code § 59.1-9.1 et seq.;

18.    That the Court grant Plaintiff states of New York, California, Illinois, North Carolina, Pennsylvania, Ohio, and Virginia an award of reasonable attorneys fees and costs;

19.    That the Court order Defendants to pay Plaintiff states of New York, California, Illinois, North Carolina, Ohio, Pennsylvania, and Virginia civil penalties/forfeitures for their violations of the asserted state and/or federal antitrust laws, as authorized by law, N.Y. GBL § 341; CA Bus & Prof Code §17206; 740 ILCS 10/7(1), 740 ILCS 10/7(2) and 740 ILCS 10/7(4); N.C. Ge. Stat. §75-15.2; Ohio Rev. Code § 109.81 and Ohio Rev. Code §§

1331; Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-8(b); and Virginia Code § 59.1-9.11.

Dated: April 14, 2020                              Respectfully submitted,


Ian R. Conner (D.C. Bar No. 979696)               Markus H. Meier (D.C. Bar No. 459715)
Director                                              (admitted pro hac vice)
Bureau of Competition                             Federal Trade Commission
                                                  600 Pennsylvania Avenue, N.W.
Gail F. Levine (D.C. Bar No. 454727)              (202)326-3759
Deputy Director                                   mmeier@ftc.gov
Bureau of Competition
                                                  Bradley S. Albert (Md. Bar)
Alden Abbott                                          (admitted pro hac vice)
General Counsel                                   J. Maren Schmidt (D.C. Bar No. 975383)
                                                      (admitted pro hac vice)
                                                  Daniel W. Butrymowicz (N.Y. Bar)
                                                      (admitted pro hac vice)
                                                  Neal J. Perlman (N.Y. Bar)
                                                      (admitted pro hac vice)
                                                  D. Patrick Huyett (Pa. Bar No. 319668)
                                                      (admitted pro hac vice)
                                                  James H. Weingarten (S.D.N.Y. JW1979)
                                                  *Attorneys for Plaintiff*
                                                  *Federal Trade Commission*

Dated:   April 13, 2020

Respectfully submitted,

FOR PLAINTIFF STATE OF NEW YORK

LETITIA JAMES
Attorney General

Christopher D'Angelo
Chief Deputy Attorney General
Economic Justice Division
(pro hac vice forthcoming)

Elinor R. Hoffmann
Elinor.Hoffmann@ag.ny.gov
Saami Zain
Saami.Zain@ag.ny.gov
Amy McFarlane
Amy.Mcfarlane@ag.ny.gov
Jeremy Kasha
Jeremy.Kasha@ag.ny.gov
Bryan Bloom
Bryan.Bloom@ag.ny.gov

Attorneys for Plaintiff State of New York

Dated:  April 6, 2020

Respectfully submitted,

FOR PLAINTIFF STATE OF
CALIFORNIA

XAVIER BECERRA
Attorney General

KATHLEEN FOOTE
Senior Assistant Attorney General

PAULA L. BLIZZARD
Supervising Deputy Attorney General

Michael D. Battaglia
Michael.Battaglia@doj.ca.gov
Jacqueline Malafa (pro hac vice
forthcoming)
Jacqueline.Malafa@doj.ca.gov
California Office of the Attorney General
455 Golden Gate Avenue Suite 11000
San Francisco, CA 94102
Tel:  (415) 510-4400

Attorneys for Plaintiff State of California

Dated:  April 14, 2020          Respectfully submitted,

                  FOR PLAINTIFF STATE OF ILLINOIS

                  KWAME RAOUL
                  Attorney General

                  *Blake L. Harrop*

                  _____

                  Blake L. Harrop
                  Antitrust Bureau Chief
                  bharrop@atg.state.il.us

                  Richard S. Schultz
                  rschultz@atg.state.il.us

                  Office of the Illinois Attorney General
                  100 W. Randolph Street
                  Chicago, IL 60601
                  Tel:  (312) 814-3000
                  Fax:  (312) 814-4902

                  Attorneys for Plaintiff State of Illinois

Dated: April 8 , 2020

Respectfully submitted,

FOR PLAINTIFF
STATE OF NORTH CAROLINA

JOSHUA H. STEIN
Attorney General of North Carolina

K.D. Sturgis
Special Deputy Attorney General
ksturgis@ncdoj.gov

Jessica V. Sutton
Assistant Attorney General
jsutton2@ncdoj.gov

North Carolina Dept. of Justice
Consumer Protection Division
114 West Edenton Street
Raleigh, NC 27603
Telephone: (919) 716-6000
Fax: (919) 716-6050

83

April __8___, 2020

                             FOR THE PLAINTIFF STATE OF OHIO

                             DAVE YOST
                             Attorney General

                             BETH A. FINNERTY
                             Assistant Section Chief

                             Elizebeth M. Maag
                             Associate Assistant Attorney General

                             Office of the Ohio Attorney General
                             Antitrust Section
                             150 E. Gay Street, 22nd Floor
                             Columbus, OH  43215
                             Telephone: 614.466.4328
                             beth.finnerty@ohioattorneygeneral.gov
                             Liz.Maag@ohioattorneygeneral.gov

Dated:  April 8, 2020

Respectfully submitted,

FOR PLAINTIFF
COMMONWEALTH OF PENNSYLVANIA

JOSH SHAPIRO
Attorney General of Pennsylvania


Tracy W. Wertz
Chief Deputy Attorney General
twertz@attorneygeneral.gov


Joseph S. Betsko
Senior Deputy Attorney General
jbetsko@attorneygeneral.gov

Stephen Scannell
Deputy Attorney General
sscannell@attorneygeneral.gov

Pennsylvania Office of Attorney General
Strawberry Square, 14th Floor
Harrisburg, PA 17120

Attorneys for Plaintiff Commonwealth of
Pennsylvania

Dated:  April 3, 2020                    Respectfully submitted,

                                         FOR PLAINTIFF
                                         COMMONWEALTH OF VIRGINIA

                                         MARK R. HERRING
                                         Attorney General of Virginia

                                         Sarah Oxenham Allen
                                         Senior Assistant Attorney General/Unit Manager
                                         soallen@oag.state.va.us

                                         Tyler T. Henry
                                         Assistant Attorney General
                                         thenry@oag.state.va.us

                                         Office of the Attorney General of Virginia
                                         202 North Ninth Street
                                         Richmond, VA  23219

**A-222**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,
STATE OF NEW YORK,
STATE OF CALIFORNIA,
STATE OF ILLINOIS,
STATE OF NORTH CAROLINA,
STATE OF OHIO,
COMMONWEALTH OF PENNSYLVANIA,
and COMMONWEALTH OF VIRGINIA,

                    Plaintiffs,

VYERA PHARMACEUTICALS, LLC,
PHOENIXUS AG,

MARTIN SHKRELI, individually, as an owner
and former director of Phoenixus AG and a
former executive of Vyera Pharmaceuticals, LLC,

       and

KEVIN MULLEADY, individually, as an owner
and director of Phoenixus AG and a former
executive of Vyera Pharmaceuticals, LLC,
                    Defendants.

Case No. 1:20-cv-00706-DLC

### DEFENDANT KEVIN MULLEADY'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Kevin Mulleady ("Mr. Mulleady"), by and through his undersigned counsel,

Kasowitz Benson Torres LLP, answers the Amended Complaint by plaintiffs the Federal Trade

Commission, the State of New York, the State of California, the State of Illinois, the State of

North Carolina, the State of Ohio, the Commonwealth of Pennsylvania, and the Commonwealth

of Virginia (collectively, the "Plaintiffs"), filed on April 14, 2020 (the "Amended Complaint"),

and asserts affirmative defenses as follows:

I.      **Nature of the Case**[1]

1.      Mr. Mulleady denies the allegations in the first sentence of Paragraph 1 of the Amended Complaint insofar as they relate to Mr. Mulleady and his conduct, and denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning other Defendants, except admits that Daraprim was used to treat the potentially fatal parasitic infection toxoplasmosis.  The allegations in the second sentence of Paragraph 1 call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 1 of the Amended Complaint.

2.      Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Amended Complaint.

3.      Mr. Mulleady denies the allegations in Paragraph 3 of the Amended Complaint insofar as they relate to him, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3.

4.      Mr. Mulleady denies the allegations in the first and second sentences of Paragraph 4 of the Amended Complaint insofar as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 4 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the third, fourth, fifth, and sixth sentences of Paragraph 4 of the Amended Complaint.

---

[1]      The headings are copied from the Amended Complaint for ease of reference.  The headings do not constitute part of Mr. Mulleady's answer.  To the extent that responses to the headings are required, Mr. Mulleady denies them.

5.      Mr. Mulleady denies the allegations in the first and second sentences of Paragraph 5 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 5 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

6.      Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Amended Complaint, except Mr. Mulleady admits that Defendants executed an exclusive supply agreement with RL Fine Chem Pvt. Ltd.

7.      Mr. Mulleady admits that Defendants signed agreements with Vyera's distributors concerning the sales of Daraprim sales data.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second, third, and fourth sentences of Paragraph 7 of the Amended Complaint.  Mr. Mulleady denies the allegations in the fifth sentence of Paragraph 7 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in the fifth sentence of Paragraph 7 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

8.      Mr. Mulleady denies the allegations in the first sentence of Paragraph 8 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 8 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 8 of the Amended Complaint.

A-225

## II.     Jurisdiction and Venue

9.     The allegations in Paragraph 9 of the Amended Complaint call for legal conclusions to which no response is required.

10.     The allegations in Paragraph 10 of the Amended Complaint call for legal conclusions to which no response is required.

11.     The allegations in Paragraph 11 of the Amended Complaint call for legal conclusions to which no response is required.

12.     The allegations in Paragraph 12 of the Amended Complaint call for legal conclusions to which no response is required.

13.     The allegations in Paragraph 13 of the Amended Complaint call for legal conclusions to which no response is required.

14.     The allegations in Paragraph 14 of the Amended Complaint call for legal conclusions to which no response is required.

## III.    The Parties

### A.     Plaintiff Federal Trade Commission

15.     The allegations in Paragraph 15 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Amended Complaint.

16.     The allegations in Paragraph 16 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 16 of the Amended Complaint.

**B.      Plaintiff State of New York**

17.      The allegations in Paragraph 17 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Amended Complaint.

**C.      Plaintiff State of California**

18.      The allegations in Paragraph 18 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Amended Complaint.

**D.      Plaintiff State of Illinois**

19.      The allegations in Paragraph 19 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Amended Complaint.

**E.      Plaintiff State of North Carolina**

20.      The allegations in Paragraph 20 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Amended Complaint.

**F.      Plaintiff State of Ohio**

21.      The allegations in Paragraph 21 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Amended Complaint.

**G.      Plaintiff Commonwealth of Pennsylvania**

22.      The allegations in Paragraph 22 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Amended Complaint.

**H.      Plaintiff Commonwealth of Virginia**

23.      The allegations in Paragraph 23 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Amended Complaint.

**I.      Corporate Defendants**

24.      Mr. Mulleady admits the allegations in Paragraph 24 of the Amended Complaint.

25.      Mr. Mulleady admits that Phoenixus AG is engaged in the manufacture and distribution of Daraprim in the United States, that Phoenixus AG sells Daraprim to Vyera Pharmaceuticals, LLC for distribution in the United States, and that Phoenixus AG is involved in the distribution, pricing, and commercial and marketing activities of Daraprim.  Mr. Mulleady denies the remaining allegations in Paragraph 25.  Mr. Mulleady states that Turing Pharmaceuticals AG (the predecessor to Phoenixus AG) acquired the rights to market and distribute Daraprim in the United States in August 2015, and that Turing Pharmaceuticals AG designated its wholly-owned subsidiary, Turing Pharmaceuticals, LLC (the predecessor to Vyera Pharmaceuticals, LLC), as the exclusive distributor of Daraprim in the United States.

26.     Mr. Mulleady admits that Vyera Pharmaceuticals, LLC is a privately-held, for-profit limited liability corporation, is wholly owned by Phoenixus AG, is incorporated in Delaware with its principal place of business located in New York City, transacts business in the Southern District of New York and throughout the United States, and was previously named Turing Pharmaceuticals, LLC.

27.     Mr. Mulleady admits that Vyera Pharmaceuticals, LLC is registered with the FDA as the owner of the Daraprim New Drug Application and that Vyera Pharmaceuticals, LLC purchases Daraprim from Phoenixus AG and then markets and distributes Daraprim throughout the United States.

28.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Amended Complaint, except admits that Averill Powers is the current CEO of Phoenixus and is also Vyera's top executive and general counsel and works out of Vyera's New York office.  Mr. Mulleady also admits that Phoenixus has only five direct employees and largely operates through Vyera.

29.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Amended Complaint.

30.     Paragraph 30 does not contain any allegations of fact to which a response is required.  To the extent a response is required, Vyera denies the allegations in Paragraph 30.

**J.      Individual Defendants**

**1. Martin Shkreli**

31.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Amended Complaint.

32.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the Amended Complaint.

33.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Amended Complaint, except admits that Mr. Shkreli founded Retrophin, Inc.

34.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of the Amended Complaint, except admits that Retrophin acquired Thiola and increased its price.

35.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Amended Complaint.

36.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Amended Complaint, except admits that Mr. Shkreli started Vyera after leaving Retrophin.

37.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Amended Complaint.

38.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Amended Complaint, except admits that Mr. Shkreli remained CEO until his arrest in December 2015.

39.     Certain allegations in Paragraph 39 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 39 of the Amended Complaint, except admits that Ron Tilles served as interim CEO of Vyera from approximately January 1, 2016 until April 11, 2017.

40.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Amended Complaint, except admits that Mr. Tilles was replaced by Dr. Eliseo Salinas.

41.     Certain allegations in Paragraph 41 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady admits that he was elected to Phoenixus' board of directors, that he and Akeel Mithani were appointed as the only two members of the board's newly-formed "Executive Committee," and that he assumed the position of interim CEO of Vyera on or about October 2017 and CEO from January 1, 2018 to February 19, 2019.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 41 of the Amended Complaint.

42.     Certain allegations in Paragraph 42 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 42 of the Amended Complaint, except admits that Mr. Mithani was elected to the board of directors of Phoenixus AG in June 2017.

43.     Certain allegations in Paragraph 43 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 43 of the Amended Complaint.

44.     Certain allegations in Paragraph 44 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady admits that he has communicated with Mr. Shkreli since Mr. Shkreli's incarceration in September 2017.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 44 of the Amended Complaint.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 44 of the Amended Complaint as they relate to Mr. Shkreli's communications with Mr. Mithani, and denies the allegations in the third sentence of Paragraph 44 of the Amended Complaint as they relate to Mr. Shkreli's communications with Mr. Mulleady.

45.     Certain allegations in Paragraph 45 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 45 of the Amended Complaint.

46.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of the Amended Complaint.

**2. Kevin Mulleady**

47.     Mr. Mulleady admits the allegations in the first sentence of Paragraph 47 of the Amended Complaint.  Mr. Mulleady denies the allegations in the second sentence of Paragraph 47 of the Amended Complaint.  Mr. Mulleady admits the allegations in the third sentence of Paragraph 47 of the Amended Complaint.

48.     Mr. Mulleady admits the allegations in Paragraph 48 of the Amended Complaint.

49.     Mr. Mulleady admits the allegations in Paragraph 49 of the Amended Complaint.

50.     Mr. Mulleady admits that he took a position finding investors for Mr. Shkreli's hedge fund and that he helped found Retrophin and was an early employee of Vyera, but otherwise denies the allegations in Paragraph 50 of the Amended Complaint.

51.     Mr. Mulleady admits that, prior to his termination in 2016, Mr. Mulleady held the position of Managing Director of Turing Pharmaceuticals AG from October 27, 2014 to June 3, 2016, but otherwise denies the allegations in the first sentence of Paragraph 51 of the Amended Complaint.  Mr. Mulleady denies the allegations in the second sentence of Paragraph 51 of the Amended Complaint.  Mr. Mulleady admits the allegations in the third sentence of Paragraph 51 of the Amended Complaint.

52.     Mr. Mulleady admits that he returned to Vyera in the summer of 2017 as a member of the Phoenixus board, a position he still holds, and CEO of Vyera, a position he held until February 19, 2019, but otherwise denies the allegations in Paragraph 52 of the Amended Complaint.

53.     Mr. Mulleady admits the allegations in Paragraph 53 of the Amended Complaint.

IV.     **Background**

   A.     **Federal Law Encourages Generic Competition**

54.     The allegations in Paragraph 54 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Amended Complaint.

55.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 of the Amended Complaint.

56.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Amended Complaint.

57.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Amended Complaint.

58.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 of the Amended Complaint.

59.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Amended Complaint.

60.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 of the Amended Complaint.

61.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 of the Amended Complaint.

62.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 of the Amended Complaint.

63.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 of the Amended Complaint.

64.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 of the Amended Complaint.

**B.      Competition from Lower-Priced Generic Drugs Saves American Consumers Billions of Dollars Each Year**

65.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 of the Amended Complaint.

66.     The allegations in Paragraph 66 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66 of the Amended Complaint.

67.     Certain allegations in Paragraph 67 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 67 of the Amended Complaint.

68.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68 of the Amended Complaint.

    **C.**     **Daraprim Is the Gold-Standard Treatment for Toxoplasmosis**

69.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69 of the Amended Complaint.

70.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 of the Amended Complaint.

71.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71 of the Amended Complaint.

72.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72 of the Amended Complaint.

73.     Certain allegations in Paragraph 73 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 73 of the Amended Complaint.

74.    Certain allegations in Paragraph 74 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 74 of the Amended Complaint.

75.    Mr. Mulleady admits the allegations in the first sentence of Paragraph 75 of the Amended Complaint.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 75 of the Amended Complaint.

76.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 of the Amended Complaint.

77.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 of the Amended Complaint.

78.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 of the Amended Complaint.

**D.    Vyera's Acquisition of Daraprim**

**1. Prior ownership of Daraprim**

79.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79 of the Amended Complaint.

80.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 of the Amended Complaint.

81.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81 of the Amended Complaint.

82.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 of the Amended Complaint.

83.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 of the Amended Complaint.

84.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84 of the Amended Complaint.

85.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85 of the Amended Complaint.

### 2. Vyera's acquisition of Daraprim

86.     Certain allegations in Paragraph 86 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 86 of the Amended Complaint

87.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 87 of the Amended Complaint, except admits that Vyera contacted Impax with a bid to acquire the U.S. Daraprim rights.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentence of Paragraph 87 of the Amended Complaint.

88.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88 of the Amended Complaint, except Mr. Mulleady admits that Vyera acquired the U.S. rights to Daraprim for $55 million.

89.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89 of the Amended Complaint.

90.     Certain allegations in Paragraph 90 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 90 of the Amended Complaint.

91.     Certain allegations in Paragraph 91 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 91 of the Amended Complaint.

92.     Certain allegations in Paragraph 92 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 92 of the Amended Complaint.

**V.      Defendants' Anticompetitive Agreements to Maintain Vyera's Daraprim Monopoly**

93.     Mr. Mulleady denies the allegations in Paragraph 93 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 93 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

A.      **Defendants Implement Agreements Restricting Resale and Limiting Purchases to Block Generic Entry**

94.      Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94 of the Amended Complaint.

95.      Certain allegations in Paragraph 95 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 95 of the Amended Complaint.

96.      Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96 of the Amended Complaint, except Mr. Mulleady admits the allegations that Retrophin had acquired the rights to Thiola.

97.      Certain allegations in Paragraph 97 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 97 of the Amended Complaint.

98.      Certain allegations in Paragraph 98 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady otherwise denies the allegations in Paragraph 98 of the Amended Complaint.

99.      Mr. Mulleady denies the allegations in Paragraph 99 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief

as to the truth of the remaining allegations of Paragraph 99 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

**1. Vyera's contractual restrictions prevent distributors from selling Daraprim to generic companies**

100.    Certain allegations in Paragraph 100 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 100 of the Amended Complaint.

101.    Certain allegations in Paragraph 101 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 101 of the Amended Complaint.

102.    Mr. Mulleady admits that Vyera has a contractual relationship with ICS and that the terms of that relationship are embodied in their contract, which is a document that speaks for itself, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 102 of the Amended Complaint.

103.    Certain allegations in Paragraph 103 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 103 of the Amended Complaint.

104.     Certain allegations in Paragraph 104 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 104 of the Amended Complaint.

105.     Certain allegations in Paragraph 105 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 105 of the Amended Complaint, except admits that Vyera has agreement contractual relationship with ASD Healthcare.

106.     Certain allegations in Paragraph 106 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 106 of the Amended Complaint.

107.     Certain allegations in Paragraph 107 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 107 of the Amended Complaint, except admits that Vyera has an agreement with BioRidge Pharma.

108.     Certain allegations in Paragraph 108 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 108 of the Amended Complaint.

109.     Certain allegations in Paragraph 109 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge of information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 109 of the Amended Complaint, except admits that Vyera has a contractual relationship with ███████████.

110.     Certain allegations in Paragraph 110 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 110 of the Amended Complaint.

111.     Certain allegations in Paragraph 111 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 111 of the Amended Complaint, except admits that Vyera has a contractual relationship with Optime Care.

112.     Certain allegations in Paragraph 112 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 112 of the Amended Complaint.

113.     Certain allegations in Paragraph 113 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 113 of the Amended Complaint.

**2. Vyera's contractual restrictions prevent downstream purchasers from selling Daraprim to generic companies**

114.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114 of the Amended Complaint.

115.     Certain allegations in Paragraph 115 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 115 of the Amended Complaint.

116.     Certain allegations in Paragraph 116 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 116 of the Amended Complaint.

117.    Certain allegations in Paragraph 117 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 117 of the Amended Complaint.

118.    Certain allegations in Paragraph 118 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 118 of the Amended Complaint.

119.    Certain allegations in Paragraph 119 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 119 of the Amended Complaint.

120.    Certain allegations in Paragraph 120 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 120 of the Amended Complaint.

121.    Certain allegations in Paragraph 121 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady

admits the allegations in the first sentence of Paragraph 121 of the Amended Complaint, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 121 of the Amended Complaint.

122.   Certain allegations in Paragraph 122 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of remaining the allegations in Paragraph 122 of the Amended Complaint.

### 3. Vyera limits and monitors approved sales of Daraprim to prevent generic companies from obtaining it

123.   Mr. Mulleady denies the allegations in Paragraph 123 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 123 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

124.   Mr. Mulleady admits that Vyera offers Daraprim in different package quantities, including in a 100 tablet-count bottle.  Mr. Mulleady denies the remaining allegations in Paragraph 124 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 124 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

125.   Certain allegations in Paragraph 125 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady

denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 125 of the Amended Complaint.

126.    Certain allegations in Paragraph 126 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 126 of the Amended Complaint

127.    Certain allegations in Paragraph 127 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 127 of the Amended Complaint.

128.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128 of the Amended Complaint.

129.    Certain allegations in Paragraph 129 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady admits that he had conversations with Martin Shkreli in August 2019, but denies the inaccurate characterization of those conversations and denies the remaining allegations in Paragraph 129 of the Amended Complaint as they relate to Mr. Mulleady.  Mr. Mulleady also denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 129 of the Amended Complaint.

130.     Certain allegations in Paragraph 130 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies the remaining allegations in Paragraph 130 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth the remaining allegations of Paragraph 130 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

131.     Certain allegations in Paragraph 131 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 131 of the Amended Complaint.

132.     Mr. Mulleady denies the allegations in Paragraph 132 of the Amended Complaint.

133.     Certain allegations in Paragraph 133 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 133 of the Amended Complaint.

### 4. Defendants' generic-blocking restrictions prevent generic competitors from purchasing Daraprim and have no legitimate rationale.

134.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 134 of the Amended Complaint.

135.     Certain allegations in Paragraph 135 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady

refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 135 of the Amended Complaint.

136.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 136 of the Amended Complaint.

137.    Mr. Mulleady denies the allegations in Paragraph 137 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 137 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

138.    Certain allegations in Paragraph 138 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 138 of the Amended Complaint.

139.    Certain allegations in Paragraph 139 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 139 of the Amended Complaint.

140.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140 of the Amended Complaint, except Mr. Mulleady admits that multiple Vyera executives testified as part of the Senate investigation.

141.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141 of the Amended Complaint.

142.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142 of the Amended Complaint.

143.    Certain allegations in Paragraph 143 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 143 of the Amended Complaint.

**B.      Defendants Enter Exclusive Agreements With API Manufacturers to Block Generic Companies' Access to Pyrimethamine API Supply**

144.    Mr. Mulleady denies the allegations in Paragraph 144 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 144 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

145.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145 of the Amended Complaint.

146.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146 of the Amended Complaint.

147.    Certain allegations in Paragraph 147 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 147 of the Amended Complaint.

148.     Mr. Mulleady denies the allegations in Paragraph 148 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

### 1. Vyera locks up the only manufacturer with an FDA-approved manufacturing process for pyrimethamine API

149.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149 of the Amended Complaint.

150.     Certain allegations in Paragraph 150 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 150 of the Amended Complaint.

151.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151 of the Amended Complaint.

152.     Certain allegations in Paragraph 152 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 152 of the Amended Complaint.

153.     Mr. Mulleady admits that Phoenixus signed an agreement with Fukuzyu, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 153 of the Amended Complaint.

154.    Certain allegations in Paragraph 154 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 154 of the Amended Complaint.

155.    Certain allegations in Paragraph 155 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 155 of the Amended Complaint.

156.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 156 of the Amended Complaint.

157.    Certain allegations in Paragraph 157 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  The allegations in Paragraph 157 of the Amended Complaint also call for legal conclusions to which no response is required.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 157 of the Amended Complaint.

158.    Mr. Mulleady admits the allegations in Paragraph 158 of the Amended Complaint.

**2. Defendants poach a second API manufacturer from generic competitors**

159.    Mr. Mulleady denies the allegations in Paragraph 159 of the Amended Complaint.

160.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160 of the Amended Complaint.

161.     Mr. Mulleady denies the allegations in Paragraph 161 of the Amended Complaint.

162.     Certain allegations in Paragraph 162 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 162 of the Amended Complaint.

163.     Certain allegations in Paragraph 163 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady admits the allegations in Paragraph 163 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

164.     Certain allegations in Paragraph 164 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 164 of the Amended Complaint, except admits that Vyera paid RL Fine in connection with its contractual arrangements.

165.     Certain allegations in Paragraph 165 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady

refers to those documents for a true and complete statement of their contents.  Mr. Mulleady

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 165 of the Amended Complaint.

166.    Certain allegations in Paragraph 166 purport to characterize, summarize, or quote

from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady

refers to those documents for a true and complete statement of their contents.  Mr. Mulleady

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 166 of the Amended Complaint

167.    Mr. Mulleady denies the allegations in Paragraph 167 of the Amended Complaint.

168.    Mr. Mulleady denies the allegations in the first sentence of Paragraph 168 of the

Amended Complaint.  Mr. Mulleady denies knowledge or information sufficient to form a belief

as to the truth of the remaining allegations in Paragraph 168 of the Amended Complaint.

169.    Certain allegations in Paragraph 169 purport to characterize, summarize, or quote

from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady

refers to those documents for a true and complete statement of their contents.    Mr. Mulleady

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 169 of the Amended Complaint.

170.    Mr. Mulleady denies the allegations in the first sentence of Paragraph 170 of the

Amended Complaint.  Mr. Mulleady denies knowledge or information sufficient to form a belief

as to the truth of the allegations in the second and third sentences of Paragraph 170 of the

Amended Complaint.

171.    Certain allegations in Paragraph 171 appear to purport to characterize or

summarize one or more documents, which speak for themselves.  Mr. Mulleady refers to those

documents for a true and complete statement of their contents.  Mr. Mulleady otherwise denies the allegations in the first, second and third sentence of Paragraph 171 of the Amended Complaint.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 171 of the Amended Complaint.

172.    Mr. Mulleady admits that Vyera paid RL Fine ████████ to terminate the agreement, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 172 of the Amended Complaint.

173.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 173 of the Amended Complaint.

174.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 174 of the Amended Complaint.

175.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175 of the Amended Complaint.

C.    **Vyera Enters Data-Blocking Agreements to Mask the True Size of the Pyrimethamine Market**

176.    Mr. Mulleady denies the allegations in Paragraph 176 of the Amended Complaint.

177.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 177 of the Amended Complaint.

178.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 178 of the Amended Complaint.

179.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 179 of the Amended Complaint.

180.    Mr. Mulleady admits that Vyera Pharmaceuticals, LLC and Phoenixus AG are privately-held companies, but denies knowledge or information sufficient to form a belief as to

the truth of the remaining allegations in the first sentence of Paragraph 180 of the Amended Complaint.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 180.

181.    Mr. Mulleady denies the allegations in Paragraph 181 of the Amended Complaint.

182.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182 of the Amended Complaint.

183.    Certain allegations in Paragraph 183 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies the remaining allegations in Paragraph 183 of the Amended Complaint.

184.    Certain allegations in Paragraph 184 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies the remaining allegations in Paragraph 184 of the Amended Complaint.

185.    Certain allegations in Paragraph 185 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies the remaining allegations in Paragraph 185 of the Amended Complaint.

186.    Certain allegations in Paragraph 186 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 186 of the Amended Complaint.

187.    Certain allegations in Paragraph 187 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 187 of the Amended Complaint.

188.    Certain allegations in Paragraph 188 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies the allegations in the first sentence of Paragraph 188 of the Amended Complaint, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 188 of the Amended Complaint.

189.    Mr. Mulleady denies the allegations in the first sentence of Paragraph 189 and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189 of the Amended Complaint.

190.    Mr. Mulleady admits that Vyera has no obligation to publicly report its own Daraprim sales data.  Mr. Mulleady denies the remaining allegations in Paragraph 190 of the Amended Complaint, but denies knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 190.

**VI.    Defendants' Anticompetitive Conduct Successfully Delayed and Excluded Numerous Potential Generic Competitors**

191.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191 of the Amended Complaint.

192.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192 of the Amended Complaint.

193.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 193 of the Amended Complaint.

194.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 194 of the Amended Complaint.

195.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 195 of the Amended Complaint.

196.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 196 of the Amended Complaint.

197.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 197 of the Amended Complaint.

198.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 198 of the Amended Complaint.

199.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 199 of the Amended Complaint.

200.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 200 of the Amended Complaint.

201.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 201 of the Amended Complaint.

202.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 202 of the Amended Complaint.

203.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 203 of the Amended Complaint.

204.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 204 of the Amended Complaint.

205.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 205 of the Amended Complaint.

206.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 206 of the Amended Complaint.

207.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 207 of the Amended Complaint.

208.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 208 of the Amended Complaint.

209.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 209 of the Amended Complaint.

210.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 210 of the Amended Complaint.

211.    Certain allegations in Paragraph 211 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 211 of the Amended Complaint.

212.    Certain allegations in Paragraph 212 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady

refers to those documents for a true and complete statement of their contents.  Mr. Mulleady

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 212 of the Amended Complaint.

213.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 213 of the Amended Complaint.

214.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 214 of the Amended Complaint.

215.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 215 of the Amended Complaint.

216.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 216 of the Amended Complaint.

217.     Mr. Mulleady admits that Oakrum Pharma, LLC announced the launch of an

"authorized generic" version of Daraprim on March 11, 2020, but denies knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in Paragraph

217 of the Amended Complaint.

218.     Certain allegations in Paragraph 218 purport to characterize, summarize, or quote

from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady

refers to those documents for a true and complete statement of their contents.  Mr. Mulleady

denies knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph 218 of the Amended Complaint.

219.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 219 of the Amended Complaint.

220.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 220 of the Amended Complaint.

███████████████████████████

221.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 221 of the Amended Complaint.

222.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 222 of the Amended Complaint.

223.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 223 of the Amended Complaint.

224.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 224 of the Amended Complaint.

225.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 225 of the Amended Complaint.

226.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 226 of the Amended Complaint.

227.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 227 of the Amended Complaint.

228.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 228 of the Amended Complaint.

229.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 229 of the Amended Complaint.

230.    Certain allegations in Paragraph 230 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady

refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 230 of the Amended Complaint.

231.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 231 of the Amended Complaint.

232.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 232 of the Amended Complaint.

233.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 233 of the Amended Complaint.

234.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 234 of the Amended Complaint.

235.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 235 of the Amended Complaint.

236.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 236 of the Amended Complaint.

237.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 237 of the Amended Complaint.

238.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 238 of the Amended Complaint.

239.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 239 of the Amended Complaint.

240.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 240 of the Amended Complaint.

241.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 241 of the Amended Complaint.

242.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 242 of the Amended Complaint.

243.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 243 of the Amended Complaint.

244.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 244 of the Amended Complaint.

245.     Certain allegations in Paragraph 245 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 245 of the Amended Complaint.

246.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 246 of the Amended Complaint.

247.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 247 of the Amended Complaint.

248.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 248 of the Amended Complaint.

249.     Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 249 of the Amended Complaint.

250.    Certain allegations in Paragraph 250 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 250 of the Amended Complaint.

251.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 251 of the Amended Complaint.

252.    Certain allegations in Paragraph 252 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 252 of the Amended Complaint.

253.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 253 of the Amended Complaint.

254.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 254 of the Amended Complaint.

255.    Mr. Mulleady denies the allegations in Paragraph 255 of the Amended Complaint, but admits that he had discussions with ███ concerning a potential partnership.

256.    Mr. Mulleady denies the allegations in Paragraph 256 of the Amended Complaint.

257.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 257 of the Amended Complaint

258.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 258 of the Amended Complaint.

259.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 259 of the Amended Complaint.

260.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 260 of the Amended Complaint.

261.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 261 of the Amended Complaint.

**D.    Mylan, N.V.**

262.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 262 of the Amended Complaint.

263.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 263 of the Amended Complaint.

264.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 264 of the Amended Complaint.

265.    Certain allegations in Paragraph 265 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 265 of the Amended Complaint.

266.    Certain allegations in Paragraph 266 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 266 of the Amended Complaint.

E.      Other generic companies

267.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 267 of the Amended Complaint.

268.    Certain allegations in Paragraph 268 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 268 of the Amended Complaint.

269.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 269 of the Amended Complaint.

270.    Certain allegations in Paragraph 270 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 270 of the Amended Complaint.

271.    Certain allegations in Paragraph 271 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 271 of the Amended Complaint.

272.    Certain allegations in Paragraph 272 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady

denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 272 of the Amended Complaint.

**VII.    Defendants' Foreclosure of Generic Entry Caused Consumers to Pay Higher Prices**

273.    The allegations in Paragraph 273 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 273 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 273 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

274.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 274 of the Amended Complaint.

275.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 275 of the Amended Complaint.

276.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 276 of the Amended Complaint.

277.    The allegations in Paragraph 277 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 277 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 277 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

278.    The allegations in Paragraph 278 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies the allegations in Paragraph 278 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 278 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

279.    Certain allegations in Paragraph 279 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 279 of the Amended Complaint.

280.    The allegations in Paragraph 280 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 280 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 280.

281.    The allegations in Paragraph 281 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 281 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 281 of the Amended Complaint.

282.    The allegations in Paragraph 282 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 282 of the Amended Complaint as they relate to

Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 282 of the Amended Complaint.

283.   The allegations in Paragraph 283 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 283 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 283 of the Amended Complaint.

284.   The allegations in Paragraph 284 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 284 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 284 of the Amended Complaint.

285.   Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 285 of the Amended Complaint.

286.   Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 286 of the Amended Complaint.

287.   Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 287 of the Amended Complaint.

288.   The allegations in Paragraph 288 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 288 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 288 of the Amended Complaint.

289.    The allegations in Paragraph 289 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 289 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 289 of the Amended Complaint.

290.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 290 of the Amended Complaint.

291.    The allegations in Paragraph 291 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 291 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 291 of the Amended Complaint.

292.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 292 of the Amended Complaint.

293.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 293 of the Amended Complaint.

294.    Mr. Mulleady denies the allegations in Paragraph 294 of the Amended Complaint.

**VIII.   Vyera Has Monopoly Power in a Relevant Market for FDA-Approved Pyrimethamine Products**

295.    The allegations in Paragraph 295 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 295 of the Amended Complaint.

296.    The allegations in the first sentence of Paragraph 296 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 296 of the Amended Complaint.

297.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 297 of the Amended Complaint.

298.    The allegations in the first sentence of Paragraph 298 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 298 of the Amended Complaint.

299.    The allegations in the first sentence of Paragraph 299 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 299 of the Amended Complaint.

300.    The allegations in Paragraph 300 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 300 of the Amended Complaint.

301.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 301 of the Amended Complaint.

302.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 302 of the Amended Complaint.

303.    Certain allegations in Paragraph 303 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 303 of the Amended Complaint.

304.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 304 of the Amended Complaint.

305.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 305 of the Amended Complaint. The allegations in the second sentence of Paragraph 305 call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 305 of the Amended Complaint.

306.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 306 of the Amended Complaint.

307.    Certain allegations in Paragraph 307 purport to characterize or summarize one or more documents, which speak for themselves.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 307 of the Amended Complaint.

308.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 308 of the Amended Complaint.

309.    Certain allegations in Paragraph 309 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Mulleady

refers to those documents for a true and complete statement of their contents.  Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 309 of the Amended Complaint.

310.    The allegations in Paragraph 310 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 310 of the Amended Complaint.

311.    The allegations in Paragraph 311 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 311 of the Amended Complaint.

312.    The allegations in Paragraph 312 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 312 of the Amended Complaint.

313.    Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 313 of the Amended Complaint.

**COUNT I**
**Monopoly Maintenance Against All Defendants**

314.    Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this Answer as if fully set forth herein.

315.    The allegations in Paragraph 315 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 315 of the Amended Complaint.

316.    The allegations in Paragraph 316 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 316 of the Amended Complaint as they relate to Vyera, Phoenixus, and Mr. Shkreli, and denies the allegations in Paragraph 316 of the Amended Complaint as they relate to Mr. Mulleady.

317.    The allegations in Paragraph 317 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 317 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 317 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

318.    The allegations in Paragraph 318 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 318 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 318 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

**COUNT II**
**Agreements in Restraint of Trade (Restrictions and Limitations**
**on Resale of Daraprim) Against All Defendants**

319.    Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this Answer as if fully set forth herein.

320.     The allegations in Paragraph 320 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 320 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 320 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

**COUNT III**
**Agreements in Restraint of Trade (API Supply**
**Exclusivity Agreements) Against All Defendants**

321.     Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this Answer as if fully set forth herein.

322.     The allegations in Paragraph 322 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 322 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 322 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

**COUNT IV**
**A.  Anticompetitive Contracts, Agreements and/or Arrangements in**
**Violation of New York's Donnelly Act Against All Defendants**

323.     Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this Answer as if fully set forth herein.

324.     The allegations in Paragraph 324 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 324 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 324 of the Amended Complaint as they relate to the other
Defendants and the other Defendants' conduct.

325.    The allegations in Paragraph 325 of the Amended Complaint call for legal
conclusions to which no response is required.  To the extent that a response is required, Mr.
Mulleady denies the allegations in Paragraph 325 of the Amended Complaint as they relate to
Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of
the allegations in Paragraph 325 of the Amended Complaint as they relate to the other
Defendants and the other Defendants' conduct.

326.    The allegations in Paragraph 326 of the Amended Complaint call for legal
conclusions to which no response is required.  To the extent that a response is required, Mr.
Mulleady denies the allegations in Paragraph 326 of the Amended Complaint as they relate to
Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of
the allegations in Paragraph 326 of the Amended Complaint as they relate to the other
Defendants and the other Defendants' conduct.

**B.  Illegality in Violation of new York Executive Law § 63(12) Against All Defendants**

327.    Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this
Answer as if fully set forth herein.

328.    The allegations in Paragraph 328 of the Amended Complaint call for legal
conclusions to which no response is required.  To the extent that a response is required, Mr.
Mulleady denies the allegations in Paragraph 328 of the Amended Complaint as they relate to
Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of
the allegations in Paragraph 328 of the Amended Complaint as they relate to the other
Defendants and the other Defendants' conduct.

**COUNT V**

**A. Anticompetitive Contracts, Agreements and/or Arrangements in Violation of California's Cartwright Act Against All Defendants**

329.   Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this Answer as if fully set forth herein.

330.   The allegations in Paragraph 330 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 330 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 330 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

331.   The allegations in Paragraph 331 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 331 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 331 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

**B. Anticompetitive Contracts, Agreements and/or Arrangements in Violation of California's Unfair Competition Act Against All Defendants**

332.   Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this Answer as if fully set forth herein.

333.   The allegations in Paragraph 333 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 333 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 333 of the Amended Complaint as they relate to the other

Defendants and the other Defendants' conduct.

334.    The allegations in Paragraph 334 of the Amended Complaint call for legal

conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies the allegations in Paragraph 334 of the Amended Complaint as they relate to

Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 334 of the Amended Complaint as they relate to the other

Defendants and the other Defendants' conduct.

## COUNT VI
### Anticompetitive Contracts, Combinations and/or Conspiracies in Violation of the Illinois Antitrust Act Against All Defendants

335.    Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this

Answer as if fully set forth herein.

336.    The allegations in Paragraph 336 of the Amended Complaint call for legal

conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies the allegations in Paragraph 336 of the Amended Complaint as they relate to

Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 336 of the Amended Complaint as they relate to the other

Defendants and the other Defendants' conduct.

337.    The allegations in Paragraph 337 of the Amended Complaint call for legal

conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies the allegations in Paragraph 337 of the Amended Complaint as they relate to

Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 337 of the Amended Complaint as they relate to the other

Defendants and the other Defendants' conduct.

**COUNT VII**
**Unfair Methods of Competition and/or Unfair Acts or Practices in Violation of the**
**North Carolina Unfair or Deceptive Practices Act Against All Defendants**

338.    Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this

Answer as if fully set forth herein.

339.    The allegations in Paragraph 339 of the Amended Complaint call for legal

conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies the allegations in Paragraph 339 of the Amended Complaint as they relate to

Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 339 of the Amended Complaint as they relate to the other

Defendants and the other Defendants' conduct.

340.    The allegations in Paragraph 340 of the Amended Complaint call for legal

conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies the allegations in Paragraph 340 of the Amended Complaint as they relate to

Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 340 of the Amended Complaint as they relate to the other

Defendants and the other Defendants' conduct.

341.    The allegations in Paragraph 341 of the Amended Complaint call for legal

conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies the allegations in Paragraph 341 of the Amended Complaint as they relate to

Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 341 of the Amended Complaint as they relate to the other

Defendants and the other Defendants' conduct.

342.    The allegations in Paragraph 342 of the Amended Complaint call for legal

conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies the allegations in Paragraph 342 of the Amended Complaint as they relate to

Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 342 of the Amended Complaint as they relate to the other

Defendants and the other Defendants' conduct.

343.    The allegations in Paragraph 343 of the Amended Complaint call for legal

conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies the allegations in Paragraph 343 of the Amended Complaint as they relate to

Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 343 of the Amended Complaint as they relate to the other

Defendants and the other Defendants' conduct.

**COUNT VIII**
**Violations of Ohio's Valentine Act Against All Defendants**

344.    Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this

Answer as if fully set forth herein.

345.    The allegations in Paragraph 345 of the Amended Complaint call for legal

conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies the allegations in Paragraph 345 of the Amended Complaint as they relate to

Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of

the allegations in Paragraph 345 of the Amended Complaint as they relate to the other

Defendants and the other Defendants' conduct.

**COUNT IX**
**A.  Pennsylvania's Unfair Trade Practices and Consumer Protection Law**

346.    Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this

Answer as if fully set forth herein.

347.     Paragraph 347 contains allegations relating to Count IX(A) of the Complaint, which has been dismissed by the Court, and thus no response to those allegations is required. The allegations in Paragraph 347 of the Amended Complaint also call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 347 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 347 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

348.     Paragraph 348 contains allegations relating to Count IX(A) of the Complaint, which has been dismissed by the Court, and thus no response to those allegations is required. The allegations in Paragraph 348 of the Amended Complaint also call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 348 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 348 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

349.     Paragraph 349 contains allegations relating to Count IX(A) of the Complaint, which has been dismissed by the Court, and thus no response to those allegations is required. The allegations in Paragraph 349 of the Amended Complaint also call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 349 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph 349 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

350.    Paragraph 350 contains allegations relating to Count IX(A) of the Complaint, which has been dismissed by the Court, and thus no response to those allegations is required. The allegations in Paragraph 350 of the Amended Complaint also call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 350 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 350 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

351.    Paragraph 351 contains allegations relating to Count IX(A) of the Complaint, which has been dismissed by the Court, and thus no response to those allegations is required. The allegations in Paragraph 351 of the Amended Complaint also call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 351 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 351 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

352.    Paragraph 352 contains allegations relating to Count IX(A) of the Complaint, which has been dismissed by the Court, and thus no response to those allegations is required. The allegations in Paragraph 352 of the Amended Complaint also call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 352 of the Amended Complaint as they relate to Mr. Mulleady, and

denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 352 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

353.     Paragraph 353 contains allegations relating to Count IX(A) of the Complaint, which has been dismissed by the Court, and thus no response to those allegations is required. The allegations in Paragraph 353 of the Amended Complaint also call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 353 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 353 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

### B.  Common Law Doctrine against Restraint of Trade

354.     Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this Answer as if fully set forth herein.

355.     The allegations in Paragraph 355 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 355 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 355 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

356.     The allegations in Paragraph 356 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 356 of the Amended Complaint as they relate to

Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 356 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

## COUNT X
### A.  Anticompetitive Agreements in Violation of the Virginia Antitrust Act Against All Defendants

357.    Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this Answer as if fully set forth herein.

358.    The allegations in Paragraph 358 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 358 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 358 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

359.    The allegations in Paragraph 359 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 359 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 359 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

### B.  Monopoly Maintenance in Violation of the Virginia Antitrust Act

360.    Mr. Mulleady incorporates the responses of Paragraphs 1 through 313 of this Answer as if fully set forth herein.

361.    The allegations in Paragraph 361 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr.

Mulleady denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 361 of the Amended Complaint.

362.    The allegations in Paragraph 362 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 362 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 362 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

363.    The allegations in Paragraph 363 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 363 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 363 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

364.    The allegations in Paragraph 364 of the Amended Complaint call for legal conclusions to which no response is required.  To the extent that a response is required, Mr. Mulleady denies the allegations in Paragraph 364 of the Amended Complaint as they relate to Mr. Mulleady, and denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 364 of the Amended Complaint as they relate to the other Defendants and the other Defendants' conduct.

## GENERAL DENIAL

Mr. Mulleady denies each and every allegation in the Complaint not specifically admitted or otherwise addressed above.

### AFFIRMATIVE DEFENSES

Mr. Mulleady sets forth below his affirmative defense.  By setting forth this affirmative defense, Mr. Mulleady does not assume the burden of proving any fact, issue or element of a cause of action where such burden properly belongs to any or all of the Plaintiffs.  Moreover, nothing stated herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to the Plaintiffs' allegations.  Mr. Mulleady has not knowingly and intentionally waived any applicable defenses, and he hereby reserves the right, to the extent permitted by applicable law, to assert and rely upon other defenses and affirmative defenses that become available or apparent as this matter proceeds.  Mr. Mulleady reserves the right to amend or seek to amend his answers and/or his affirmative defenses as additional facts concerning his defenses become known to him.

#### First Affirmative Defense

1.      Plaintiffs' claims are barred, in whole or in part, because the Complaint fails to state a claim upon which relief may be granted.

#### Second Affirmative Defense

2.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs lack standing to assert them.

#### Third Affirmative Defense

3.      Plaintiffs' claims for injunctive relief are barred, in whole or in part, because Plaintiffs seek to enjoin alleged events that have allegedly already transpired without demonstrating threatened future harm or continuing harm.  Plaintiffs' claims for injunctive relief are accordingly moot and Plaintiffs lack standing to assert such claims.

**Fourth Affirmative Defense**

4.      Plaintiffs' claims are barred, in whole or in part, because the alleged conduct of Mr.

Mulleady was not a proximate cause of the loss or damage, if any, to Plaintiffs.  Any damage to

Plaintiffs was caused by the generic companies' own conduct, or by the conduct of other individuals.

**Fifth Affirmative Defense**

5.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' injuries, if any,

were caused, executed or approved in whole or in part by individuals or entities not under the control

of Mr. Mulleady.

**Sixth Affirmative Defense**

6.      Plaintiffs' claims are barred, in whole or in part, because any damages it may

have suffered were the result of the intervening or superseding conduct of third parties.

**Seventh Affirmative Defense**

7.      Plaintiffs' claims are barred, in whole or in part, because Mr. Mulleady's acts were

based upon bona fide business reasons.

**Eighth Affirmative Defense**

8.      Plaintiffs' claims are barred, in whole or in part, because the conduct of Mr.

Mulleady was justified, privileged, and/or not improper.

**Ninth Affirmative Defense**

9.      Plaintiffs' claims are barred, in whole or part, because Plaintiffs have not suffered

antitrust injury.

**Tenth Affirmative Defense**

10.      Plaintiffs' claims for damages are barred, in whole or in part, because its damages

as alleged are speculative and because of the impossibility of the ascertainment and allocation of

these alleged damages.

**Eleventh Affirmative Defense**

11.    Plaintiffs' claims are barred, in whole or in part, because Mr. Mulleady's alleged conduct did not unreasonably restrain trade and was lawful, procompetitive, and based on legitimate business and economic justifications.

**Twelfth Affirmative Defense**

12.    Plaintiffs' claims are barred, in whole or in part, because Mr. Mulleady's alleged conduct has not harmed competition, the competitive process, or consumers, and was lawful, procompetitive, and based on legitimate business and economic justifications.

**Thirteenth Affirmative Defense**

13.    Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations and/or the doctrine of laches.

**Fourteenth Affirmative Defense**

14.    Plaintiffs' claims are barred, in whole or in part, insofar as the Federal Trade Commission purports to seek equitable monetary relief, since Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), does not authorize the Federal Trade Commission to seek such relief.

**Fifteenth Affirmative Defense**

15.    Plaintiffs' claims are barred, in whole or in part, by the single entity doctrine, pursuant to which an antitrust conspiracy cannot be found among a corporation, its wholly-owned subsidiary and/or its officers and directors.

**Sixteenth Affirmative Defense**

16.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not properly alleged a relevant product market.

**Seventeenth Affirmative Defense**

17.     Plaintiffs' claims are barred, in whole or in part, because neither Mr. Mulleady's nor Vyera's alleged conduct led to the acquisition or maintenance of monopoly power in any properly defined relevant antitrust market, and was lawful, procompetitive, and based on legitimate business and economic justifications.

**Eighteenth Affirmative Defense**

18.     Plaintiffs' claims are barred, in whole or in part, because any harm to competition complained of stems from the intricate multi-tiered regulatory regime that governs the production, sale, and manufacture of pharmaceutical products, including the Hatch-Waxman Act.

**Nineteenth Affirmative Defense**

19.     The contemplated relief would not be in the public interest because it would, among other things, harm consumers.

**Twentieth Affirmative Defense**

20.     Mr. Mulleady adopts and incorporates by reference any applicable defense pleaded by any other Defendant not otherwise expressly set forth herein.

**Twenty-First Affirmative Defense**

21.     Plaintiffs' claims are barred, in whole or in part, because the underlying conduct did not concern or involve Mr. Mulleady, nor did he approve or ratify it.

**Reservation of Affirmative and Other Defenses**

Mr. Mulleady hereby gives notice that it intends to rely upon any other affirmative defenses that become available or appear during further proceedings in this action, and hereby reserves his right to amend his Answer and Affirmative Defenses to assert any such defense.

**Prayer for Relief**

WHEREFORE, Defendant denies that Plaintiffs are entitled to any relief of any kind and respectfully requests that the Court enter judgment:

1.       Dismissing the Claims against Mr. Mulleady, with prejudice;

2.       Awarding Mr. Mulleady his reasonable attorney's fees incurred in this action, as well as costs, to the full extent permitted by law; and

3.       Awarding such other and further relief in favor of Mr. Mulleady as the Court may deem just and proper.

**Demand for Jury Trial**

Mr. Mulleady demands a trial by jury on all claims that are triable before a jury.

Dated: September 15, 2020
        New York, New York

                                    By:    /s/ Kevin Arquit
                                            Kevin Arquit
                                              (karquit@kasowitz.com)
                                            Albert Shemmy Mishaan
                                              (amishaan@kasowitz.com)
                                            Kenneth R. David
                                              (kdavid@kasowitz.com)
                                            Kasowitz Benson Torres LLP
                                            1633 Broadway
                                            New York, New York 10019
                                            Tel: (212) 506-1700

                                            *Attorneys for Defendant Kevin Mulleady*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL TRADE COMMISSION; STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF NORTH CAROLINA; STATE OF OHIO; COMMONWEALTH OF PENNSYLVANIA; and COMMONWEALTH OF VIRGINIA, | |
| *Plaintiffs*, | |
| v. | Case No. 1:20-cv-00706-DLC |
| | ECF Case |
| VYERA PHARMACEUTICALS, LLC; PHOENIXUS AG; MARTIN SHKRELI, individually, as an owner and former officer of Vyera Pharmaceuticals, LLC and Phoenixus AG; and KEVIN MULLEADY, individually, as an owner and director of Phoenixus AG and a former executive of Vyera Pharmaceuticals, LLC, | |
| *Defendants*. | |

**DEFENDANT MARTIN SHKRELI'S ANSWER TO PLAINTIFFS' AMENDED**
**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF**

Defendant Martin Shkreli, by and through his attorneys, submits this Answer to Plaintiffs' Amended Complaint for Injunctive and Other Equitable Relief ("Complaint"). *See* ECF No. 87.

Pursuant to Federal Rule of Civil Procedure 8(b)(3), Mr. Shkreli denies each and every one of the allegations except to the extent those allegations are specifically admitted below. Mr. Shkreli further responds to the allegations in the Complaint as follows:

**I.    "Nature of the Case"**[1]

1.    Mr. Shkreli admits that Daraprim has been used to treat toxoplasmosis. Mr. Shkreli denies that he is an executive of Phoenixus and/or Vyera (collectively, the "Company"). Mr. Shkreli admits that he is a minority shareholder of Vyera. Mr. Shkreli denies all other allegations in Paragraph 1 directed toward Mr. Shkreli. Mr. Shkreli lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 1 directed toward the Company and/or Kevin Mulleady and on that basis denies them.

2.    Mr. Shkreli admits that Daraprim has been sold for more than 60 years and that, in 2015, Vyera acquired the U.S. rights to Daraprim. Mr. Shkreli denies the remaining allegations in Paragraph 2.

3.    Mr. Shkreli admits that, as of 2015, Daraprim had no patent protection. Mr. Shkreli denies the remaining allegations in Paragraph 3 directed toward Mr. Shkreli. Mr. Shkreli lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 3 directed toward the Company and Mr. Mulleady on that basis denies them.

4.    Insofar as Paragraph 4 alleges that the U.S. Food & Drug Administration ("FDA") requires any generic applicant to conduct bioequivalence testing comparing its product to samples

---

[1] The headings in quotation marks are copied from the Complaint for ease of reference. They do not constitute part of Mr. Shkreli's answer. To the extent that responses to the headings are required, Mr. Shkreli denies them.

of the branded drug, that allegation states a legal conclusion to which no response is required.  Mr. Shkreli lacks knowledge or information sufficient to form a belief about the allegations in Paragraph 4 concerning generic companies, including whether they could secure enough branded Daraprim for bioequivalence testing and whether any generic company abandoned development plans, and on that basis denies them.  Mr. Shkreli denies the remaining allegations in Paragraph 4.

5.      Mr. Shkreli admits that, in January 2017, Turing Pharmaceuticals AG (the predecessor to Phoenixus AG) entered into a supply agreement for pyrimethamine with Fukuzyu Pharmaceutical Co, Ltd. ("Fukuzyu"), the terms of which speak for themselves.  Plaintiffs refer to an "exclusive supply agreement," a document in writing, the terms of which speak for themselves, and Plaintiffs' characterization thereof in Paragraph 5 is therefore denied.  Mr. Shkreli denies the remaining allegations in Paragraph 5.

6.      Mr. Shkreli admits that the Company executed another exclusive supply agreement with RL Fine Chem Pvt. Ltd.  Mr. Shkreli lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 6, and on that basis, denies them.

7.      Mr. Shkreli lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 7, and on that basis, denies them.

8.      Mr. Shkreli denies the allegations in Paragraph 8.

**II.    "Jurisdiction and Venue"**

9.      Paragraph 9 states legal conclusions to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 9.

10.     Paragraph 10 states legal conclusions to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 10 directed toward Mr. Shkreli.  Mr. Shkreli lacks sufficient knowledge or information to form a belief as to the truth

of the allegations in Paragraph 10 directed toward the Company or Mr. Mulleady, and therefore, these allegations are denied.

11.      Paragraph 11 states legal conclusions to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 11 directed toward Mr. Shkreli.  Mr. Shkreli lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 11 directed toward the Company or Mr. Mulleady, and therefore, these allegations are denied.

12.      Paragraph 12 states legal conclusions to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 12.  It is further denied that Mr. Shkreli possesses any "general business practices," as he has not been employed by the Company in nearly five years.

13.      Paragraph 13 states legal conclusions to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 13.

14.      Paragraph 14 states legal conclusions to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 14 directed toward Mr. Shkreli.  Mr. Shkreli lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 14 directed toward Mr. Mulleady, and therefore, these allegations are denied.

**III.      "The Parties"**

**A.      "Plaintiff Federal Trade Commission"**

15.      Paragraph 15 states legal conclusions to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 15.

16.      Paragraph 16 states legal conclusions to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 16.

**B.**     **"Plaintiff State of New York"**

17.     Paragraph 17 states legal conclusions and assertions of intent to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 17.

**C.**     **"Plaintiff State of California"**

18.     Paragraph 18 states legal conclusions and assertions of intent to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 18.

**D.**     **"Plaintiff State of Illinois"**

19.     Paragraph 19 states legal conclusions and assertions of intent to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 19.

**E.**     **"Plaintiff State of North Carolina"**

20.     Paragraph 20 states legal conclusions and assertions of intent to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 20.

**F.**     **"Plaintiff State of Ohio"**

21.     Paragraph 21 states legal conclusions and assertions of intent to which no response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 21.

**G.**     **"Plaintiff Commonwealth of Pennsylvania"**

22.     To the extent Paragraph 22 states allegations relating to Claim IX(A), that claim has been dismissed by the Court, and thus no response is required.  Paragraph 22 contains legal

conclusions and assertions of intent to which no response is required.  To the extent a response is

required, Mr. Shkreli denies the allegations in Paragraph 22.

> **H.   "Plaintiff Commonwealth of Virginia"**

23.     Paragraph 23 states legal conclusions and assertions of intent to which no response

is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph

23.

> **I.   "Corporate Defendants"**

24.     Mr. Shkreli admits the allegations in Paragraph 24.

25.     Mr. Shkreli admits that Phoenixus AG is engaged in the manufacture and

distribution of Daraprim in the United States, that Phoenixus AG sells Daraprim to Vyera

Pharmaceuticals, LLC for distribution in the United States, and that Phoenixus AG is involved in

the distribution, pricing, and commercial and marketing activities of Daraprim.  Mr. Shkreli denies

the remaining allegations in Paragraph 25.  Mr. Shkreli states that Turing Pharmaceuticals AG (the

predecessor to Phoenixus AG) acquired the rights to market and distribute Daraprim in the United

States in August 2015, and that Turing Pharmaceuticals AG designated its wholly-owned

subsidiary, Turing Pharmaceuticals, LLC (the predecessor to Vyera Pharmaceuticals, LLC), as the

exclusive distributor of Daraprim in the United States.

26.     Mr. Shkreli admits that Vyera Pharmaceuticals, LLC is a privately-held, for-profit

limited liability corporation, is wholly owned by Phoenixus AG, is incorporated in Delaware with

its principal place of business located in New York City, transacts business in the Southern District

of New York and throughout the United States, and was previously named Turing

Pharmaceuticals, LLC.

27.     Mr. Shkreli admits that Vyera Pharmaceuticals, LLC is registered with the FDA as

the owner of the Daraprim New Drug Application and that Vyera Pharmaceuticals, LLC purchases

Daraprim from Phoenixus AG and then markets and distributes Daraprim throughout the United States.

28.     Mr. Shkreli admits that Phoenixus AG has five direct employees, that Averill Powers is the Chief Executive Officer of Phoenixus AG and the Chief Strategy Officer and General Counsel of Vyera Pharmaceuticals, LLC, and that Vyera Pharmaceuticals, LLC has no board of directors.  Mr. Shkreli admits that Phoenixus's board of directors controls Vyera, which has no board.  Mr. Shkreli denies the remaining allegations in Paragraph 28.

29.     Mr. Shkreli lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 29, and therefore, these allegations are denied.

30.     Paragraph 30 does not contain any allegations of fact to which a response is required.  To the extent a response is required, Mr. Shkreli denies the allegations in Paragraph 30.

**J.     "Individual Defendants"**

**1.     "Martin Shkreli"**

31.     Mr. Shkreli admits that he founded Turing Pharmaceuticals AG (the predecessor to Phoenixus AG) and Turing Pharmaceuticals, LLC (the predecessor to Vyera Pharmaceuticals, LLC), that he is a former chairman of the board of Phoenixus AG, that he is a former CEO of Vyera Pharmaceuticals, LLC, that he is presently reflected as a minority shareholder on the books and records of Phoenixus AG, and that he resided in this District until September 2017.  Mr. Shkreli denies the remaining allegations in Paragraph 31.  Insofar as Paragraph 31 alleges that Mr. Shkreli is the "largest shareholder" of Phoenixus AG, such allegation states a legal conclusion to which no response is required.

32.     Mr. Shkreli admits that he founded hedge funds prior to founding Vyera.  Mr. Shkreli denies the remaining allegations in Paragraph 32.  Mr. Shkreli further states that Plaintiffs' allegations in Paragraph 32 are immaterial, impertinent and scandalous.

7

33.    Mr. Shkreli admits that he founded Retrophin, Inc.  Mr. Shkreli denies the remaining allegations in Paragraph 33. Mr. Shkreli further states that Plaintiffs' allegations in Paragraph 33 are immaterial, impertinent and scandalous.

34.    Certain allegations in Paragraph 34 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Shkreli refers to those documents for a true and complete statement of their contents.  Mr. Shkreli denies the remaining allegations in Paragraph 34.

35.    Mr. Shkreli admits that he was ousted in 2014 by the board of directors of Retrophin for alleged misconduct, but denies that he committed any such misconduct.  Mr. Shkreli subsequently sued the directors for ousting him, and the matter was settled.  Mr. Shkreli further states that Plaintiffs' allegations in Paragraph 35 are immaterial, impertinent and scandalous.

36.    Mr. Shkreli admits that he founded Vyera after he left Retrophin.  Mr. Shkreli denies the remaining allegations in Paragraph 36.

37.    Mr. Shkreli denies the allegations in Paragraph 37.

38.    Mr. Shkreli admits that he was the CEO of Phoenixus AG and Vyera Pharmaceuticals LLC until his arrest in December 2015, and that he was incarcerated in September 2017.  The remaining allegations in Paragraph 38 purport to characterize, summarize, or quote from selected portions of one or more documents relating to court proceedings, which speak for themselves.  Mr. Shkreli refers to those documents for a true and complete statement of their contents.  Mr. Shkreli further states that Plaintiffs' allegations in Paragraph 38 are immaterial, impertinent and scandalous.

39.    Mr. Shkreli admits that Ron Tilles served as CEO of Turing Pharmaceuticals AG and Turing Pharmaceuticals, LLC from January 1, 2016 to April 11, 2017 and that Mr. Shkreli is

presently reflected as a minority shareholder on the books and records of Phoenixus AG.  Certain allegations in Paragraph 39 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Shkreli refers to those documents for a true and complete statement of their contents.  Mr. Shkreli denies the remaining allegations in Paragraph 39 directed toward Mr. Shkreli.  Insofar as Paragraph 39 alleges that Mr. Shkreli is the "largest shareholder" of Phoenixus AG, such allegation states a legal conclusion to which no response is required.

40.     Mr. Shkreli admits that Dr. Eliseo Salinas replaced Ron Tilles as interim CEO of Turing Pharmaceuticals, LLC in April 2017.  Mr. Shkreli denies the remaining allegations in Paragraph 40 directed toward Mr. Shkreli.

41.     Mr. Shkreli admits that Mr. Mulleady and Akeel Mithani joined the board of directors of Phoenixus AG in June 2017 and that Mr. Mulleady formerly served as CEO of Phoenixus AG and Vyera Pharmaceuticals, LLC from January 1, 2018 to February 19, 2019.  Certain allegations in Paragraph 41 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Shkreli refers to those documents for a true and complete statement of their contents.  Mr. Shkreli denies the remaining allegations in Paragraph 41 directed toward Mr. Shkreli.  Mr. Shkreli lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 41 directed toward the Company or Mr. Mulleady and therefore denies them.

42.     Certain allegations in Paragraph 42 purport to characterize, summarize, or quote from selected portions of one or more documents, which speak for themselves.  Mr. Shkreli refers to those documents for a true and complete statement of their contents.  Mr. Shkreli admits that he suggested to Mr. Mithani that he apply for a job at Vyera.  Mr. Shkreli admits that Mr. Mithani