# 22-728

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

———— ◆ ————

FEDERAL TRADE COMMISSION, STATE OF NEW YORK, STATE OF CALIFORNIA, STATE OF OHIO, COMMONWEALTH OF PENNSYLVANIA, STATE OF ILLINOIS, STATE OF NORTH CAROLINA, COMMONWEALTH OF VIRGINIA,

—against—

*Plaintiffs-Appellees,*

MARTIN SHKRELI, individually, as an owner and former director of Phoenixus AG and as a former executive of Vyera Pharmaceuticals, LLC,

*Defendant-Appellant,*

VYERA PHARMACEUTICALS, LLC, PHOENIXUS AG, KEVIN MULLEADY, individually, and as an owner and director of Phoenixus AG and as a former executive of Vyera Pharmaceuticals, LLC,

*Defendants.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

KIMO S. PELUSO
NOAM BIALE
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600

*Attorneys for Defendant-Appellant
Martin Shkreli*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................... iii

INTRODUCTION .................................................................................1

ARGUMENT .......................................................................................4

I.  THE DISTRICT COURT'S DISGORGEMENT ORDER AGAINST
    SHKRELI CONTRAVENES APPLICABLE LAW ......................................4

    A.  Contrary to State Plaintiff's Forfeiture Argument, This Court
        Should Consider Shkreli's Arguments Based on New York Law .......4

    B.  A Federal Court Hearing State-Law Claims Cannot Order a
        Final Monetary Judgment, Whether Equitable or Legal, That Is
        Unavailable Under State Law ............................................................7

    C.  New York Law Does Not Permit Disgorgement Against a
        Defendant Who Has Not Been Shown to Have Received
        Ill-Gotten Gains ...............................................................................10

    D.  The Laws of Other Plaintiff States Cannot Support Disgorgement
        for Ill-Gotten Gains from Nationwide Sales .....................................14

    E.  Federal Law Does Not Permit Disgorgement Against Shkreli,
        on a Joint-and-Several Basis or Otherwise .......................................15

II. THE PERMANENT INJUNCTION IS OVERLY BROAD ........................17

    A.  Decisions Cited by the FTC and State Plaintiffs Affirm the
        Unprecedented Overbreadth of the Industry-Wide Ban ...................17

    B.  The Permanent Injunction's Industry-Wide Ban Is
        Unprecedented Under New York Executive Law § 63(12)...............21

    C.  The District Court Erred by Imposing an Injunction for Shkreli's
        Lifetime .............................................................................................23

    D.  The District Court Erred by Imposing Unjustified Restraints
        on Expressive Activities....................................................................25

i

E.    The Injunction's Overbreadth Issues Are Compounded by
       Unnecessary Vagueness ........................................................................27

CONCLUSION ............................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*,
 747 F.2d 81 (2d Cir. 1984).....................................................................9

*212 Investment Corp. v. Kaplan*,
 16 Misc.3d 1125(A) (N.Y. Sup. Ct. 2007) ..........................................14

*Asphalt Constr. Co. v. Bouker*,
 150 A.D. 691 (N.Y. App. Div. 1912) ........................................... 12, 13

*Booking v. Gen. Star Mgmt. Co.*,
 254 F.3d 414 (2d Cir. 2001)....................................................................6

*Bosworth v. Allen*,
 168 N.Y. 157 (N.Y. 1901) ............................................................ 12, 13

*California Motor Transp. Co. v. Trucking Unlimited*,
 404 U.S. 508 (1972)...............................................................................26

*CFPB v. Nesheiwat*,
 No. 21-56052, 2022 WL 17958636 (9th Cir. Dec. 27, 2022) ...............21

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
 843 F.3d 48 (2d Cir. 2016).....................................................................23

*City of New York v. Lead Indus. Ass'n*,
 190 A.D.2d 173 (N.Y. App. Div. 1993) ...............................................11

*Clark Equip. Co. v. Armstrong Equip. Co.*,
 431 F.2d 54 (5th Cir. 1970) .....................................................................9

*Corley v. United States*,
 11 F.4th 79 (2d Cir. 2021) .....................................................................13

*Eastman Kodak Co. v. STWB, Inc.*,
 452 F.3d 215 (2d Cir. 2006)....................................................................4

*ES Development, Inc. v. RWM Enters., Inc.*,
939 F.2d 547 (8th Cir. 1991) ...................................................24

*Ford Motor Co. v. United States*,
405 U.S. 562 (1972)................................................... 19, 20

*FTC v. AMG Cap. Mgmt., LLC*,
910 F.3d 417 (9th Cir. 2018) ...........................................202

*FTC v. Digital Altitude, LLC*,
No. LA cv17-00729 JAK (MRWx), 2018 WL 4944419 (C.D. Cal. July 26,
2018) ...............................................................21

*FTC v. Five-Star Auto Club, Inc.*,
97 F. Supp. 2d 502 (S.D.N.Y. 2000) ....................................21

*FTC v. Gill*,
265 F.3d 944 (9th Cir. 2001) ....................................... 20, 28

*FTC v. Grant Connect, LLC*,
763 F.3d 1094 (9th Cir. 2014) .........................................21

*FTC v. Lalonde*,
545 F. App'x 825 (11th Cir. 2013) .....................................20

*FTC v. Micom Corp.*,
No. cv 96-0472 (SS), 1997 WL 226232 (S.D.N.Y. Mar. 12, 1997)...................21

*FTC v. Pukke*,
53 F.4th 80 (4th Cir. 2022) ...........................................18

*FTC v. Qualcomm, Inc.*,
969 F.3d 974 (9th Cir. 2020) ..........................................18

*Guaranty Trust Co. of N.Y. v. York*,
326 U.S. 99 (1945).................................................9, 10

*Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*,
715 F. App'x 54 (2d Cir. 2017) .........................................9

iv

*In re Sanctuary Belize Litig.*,
    482 F. Supp. 3d 373 (D. Md. 2020) .................................................................18

*J.P. Morgan Secs. Inc. v. Vigilant Ins. Co.*,
    37 N.Y.3d 552 (N.Y. 2021) ..............................................................................11

*Jews for Jesus, Inc. v. Jewish Community Relations Council of N.Y., Inc.*,
    968 F.2d 286 (2d Cir. 1992)..............................................................................26

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ..............................................................................................5

*Krumme v. WestPoint Stevens Inc.*,
    238 F.3d 133 (2d Cir. 1996)................................................................................6

*Liu v. SEC*,
    140 S. Ct. 1936 (2020) ......................................................... 2, 5, 15, 16

*Mack v. Latta*,
    178 N.Y. 525 (N.Y. 1904) ................................................................................13

*Madsen v. Women's Health Ctr.*,
    512 U.S. 753 (1994)..........................................................................................26

*Matter of People v. Imported Quality Guard Dogs, Inc.*,
    88 A.D.3d 800 (N.Y. App. Div. 2011) ..............................................................22

*Matter of People v. Orbital Publ. Grp., Inc.*,
    193 A.D.3d 661 (N.Y. App. Div. 2021) ............................................................11

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*,
    239 F.3d 172 (2d Cir. 2001)..............................................................................25

*Nat'l Ass'n of Mfrs. v. Taylor*,
    582 F.3d 1 (D.C. Cir. 2009) ..............................................................................28

*People ex rel. Vacco v. Appel*,
    258 A.D.2d 957 (N.Y. App. Div. 1999) ............................................................12

*People v. 21st Century Leisure Spa Int'l,*
  153 Misc.2d 938 (N.Y. Sup. Ct. 1991) ...................................................11

*People v. Northern Leasing Sys., Inc.,*
  70 Misc.3d 256 (N.Y. Sup. Ct. 2020) ....................................................22

*Peregrine Myanmar Ltd. v. Segal,*
  89 F.3d 41 (2d Cir. 1996)........................................................................26

*Perfect Fit Indus., Inc. v. Acme Quilting* Co.,
  618 F.2d 950 (2d Cir. 1980)......................................................................8

*Perfect Fit Indus., Inc. v. Acme Quilting Co.,*
  646 F.2d 800 (2d Cir. 1981)......................................................................8

*Pollitz v. Wabash Ry. Co.,*
  167 A.D. 669 (N.Y. App. Div. 1915) ............................................. 12, 13

*Scienton Techs., Inc. v. Computer Assocs. Int'l, Inc.,*
  703 F. App'x 6 (2d Cir. 2017) ..................................................................9

*SEC v. Posner,*
  16 F.3d 520 (2d Cir. 1994)......................................................................20

*SEC v. Razmilovic,*
  738 F.3d 14 (2d Cir. 2013).......................................................................16

*Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.,*
  559 U.S. 393 (2010)................................................................................10

*Smith v. Gen. Motors LLC,*
  988 F.3d 873 (6th Cir. 2021) ....................................................................4

*State v. Fashion Place Assocs.,*
  224 A.D.2d 280 (N.Y. App. Div. 1996) .................................................22

*State v. Midland Equities of N.Y.,*
  117 Misc. 2d 203 (N.Y. Sup. Ct. 1982) .................................................22

vi

*United States Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*,
413 U.S. 548 (1973) ............................................................................28

*United States v. Carson*,
52 F.3d 1173 (2d Cir. 1995) ................................................. 20, 26, 28

*United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*,
995 F.2d 375 (2d Cir. 1993) ......................................................... 20, 28

*Waste Conversion Techs., Inc. v. Warren Recycling, Inc.*,
191 F. App'x 429 (6th Cir. 2006) ........................................................16

*Wendt v. Fischer*,
243 N.Y. 439 (N.Y. 1926) ...................................................................14

*Williams-Guice v. Bd. of Educ. of City of Chicago*,
45 F.3d 161 (7th Cir. 1995) ...................................................................7

*Yee v. City of Escondido*,
503 U.S. 519 (1992) ...............................................................................4

**Statutes**

New York Executive Law § 63(12) ...........................................................21

**Rules**

Fed. R. Civ. P. 1 ........................................................................................13

**Other Authorities**

Charles Alan Wright et al., *Federal Practice & Procedure*, § 4513 (3d ed.) ..........9

## INTRODUCTION

The district court exceeded New York law and federal disgorgement principles when it entered a monetary judgement against Shkreli, despite him having received no ill-gotten gains.  It also issued a permanent injunction with more onerous restrictions on lawful activities than seen in any antitrust case Plaintiffs have cited.  The remedies imposed in this case were needlessly crushing. Both awards should be reversed or modified.

State Plaintiffs obtained their $64.6 million judgment solely by invoking certain of New York's rules on calculating disgorgement amounts, but they now urge the Court to ignore other New York disgorgement principles as forfeited. Shkreli could not, however, forfeit the right to rely on New York law in support of an argument he indisputably preserved: that disgorgement is unavailable against him because he personally obtained no wrongful gains.  Even if unpreserved, this Court should consider New York law in the interests of justice, because that law is controlling under *Erie*.

Under New York disgorgement principles, State Plaintiffs cannot obtain joint-and-several disgorgement against a defendant who received no ill-gotten gains.  State Plaintiffs misconstrue these principles by relying on cases involving a remedy they disavowed here: equitable restitution, which is based on a plaintiff's *losses*.  Nor can State Plaintiffs save their disgorgement award by invoking laws in

other Plaintiff States. The district court's order relied on New York law because New York was the only State whose Attorney General had legal authority to pursue disgorgement of nationwide sales.

Even under federal jurisprudence, the district court's monetary judgment overreaches. Neither the State Plaintiffs nor the FTC can explain how joint-and-several disgorgement is available here without automatically extending it to every case involving stockholders in a corporation. The Supreme Court decision, *Liu v. SEC*, 140 S. Ct. 1936, 1949 (2020), plainly forecloses such a result, limiting joint disgorgement awards to situations where they are not punitive in nature. The order disgorging all of Vyera's gains from Shkreli can only be a penalty. No one contends that they actually benefited him, even in some form entangled with other defendants, much less that he received such gains personally.

The Court should also vacate and modify the Injunction to correct its unprecedented overbreadth. Plaintiffs fail to identify a single civil antitrust case resulting in a remotely similar order. The Injunction bans all participation in an enormous industry, enjoins legal conduct having nothing to do with this lawsuit, lasts for Shkreli's lifetime, and includes express provisions restraining public speech. Plaintiffs cannot identify an antitrust injunction baring any one of these features, much less all of them. Instead, their cases demonstrate that courts generally limit injunctions to particular activities or to specific sectors within an

industry.  Only in rare cases, and only well outside the antitrust arena, have courts banned someone from a significant industry wholesale.  The district court found Shkreli committed specific misconduct—exclusive distribution and supply schemes to thwart generic development—but there were no findings or evidence that such misdeeds are transferrable to even a substantial portion of the pharmaceutical industry.  Plaintiffs try on this appeal to depict Shkreli as an industry-wide threat, but to do so they must imagine him engaged in completely unrelated anticompetitive acts, with no resemblance to his actual conduct.  This Injunction represents a clear case of overbreadth.

Plaintiffs also offer no authority for silencing a civil defendant to the extent ordered here.  Review of the Injunction quickly dispels Plaintiffs' argument that it bars conduct and only "incidentally" affects speech.  It explicitly prohibits Shkreli's public statements about any pharmaceutical company if intended to influence that company.  The district court has literally enjoined Shkreli from publishing an editorial expressing his own drug policy opinions if anyone could interpret his comments as intended to make an impact.  Plaintiffs are unable to cite any authority for such a gag order, as this country's First Amendment jurisprudence has left no room for such unabashed prior restraint.

For all of these reasons, the district court's monetary judgment should be reversed, and the Injunction should be vacated and modified.

## ARGUMENT

**I. THE DISTRICT COURT'S DISGORGEMENT ORDER AGAINST SHKRELI CONTRAVENES APPLICABLE LAW**

### A. Contrary to State Plaintiff's Forfeiture Argument, This Court Should Consider Shkreli's Arguments Based on New York Law

State Plaintiffs assert that this Court must apply federal jurisprudence, even if legally irrelevant to their state-law disgorgement claims, because Shkreli forfeited the right to cite New York authorities specifically as to the absence of ill-gotten gains. State Br. 22-23.

New appellate arguments are not forfeited, however, as support for a claim that was presented to the district court. For a claim that was properly presented to the trial court, "a party can make *any argument* in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) (emphasis added). In this Court, parties generally may offer legal authorities and precedents that were not cited to the district court. *See Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006).

That approach applies with particular force to *Erie*, which does not expand the claims under review, but ensures application of the correct law to those claims. One Circuit has observed that, even absent a challenge before the district court, Courts of Appeals may not "abandon[] *Erie* and the Rules of Decision Act entirely" where "they should otherwise apply." *Smith v. Gen. Motors LLC*, 988 F.3d 873, 878-79 & n.5 (6th Cir. 2021). And the Supreme Court has reversed a

4

Court of Appeals for failing to consider state law based on a similar argument that a "petitioner waived her right to the application of anything other than a uniform federal rule." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99-100, 108-09 (1991).

Shkreli's New York law arguments, and the *Erie* analysis pointing to them, are properly before this Court because they are offered solely to support a claim raised below. There is no doubt Shkreli raised and preserved his argument that disgorgement cannot be awarded against him absent a finding that he personally obtained wrongful gains. *See, e.g.*, A-348, A-451, A-2294. This was always his position, including while the district court simultaneously looked exclusively to New York law to determine other disgorgement-related issues. And Shkreli never suggested that the federal district court should ignore state-law rules (including New York's inclusion of nationwide sales figures in calculating ill-gotten gains) in fashioning an equitable monetary remedy. It would make no sense for either side to argue that the other had waived New York disgorgement law on appeal.

The State Plaintiffs are incorrect to suggest that Shkreli's citation to *Liu v. SEC* in the district court somehow affected the course of trial or the Plaintiffs' offer of proof. The district court made no rulings regarding *Liu* until after trial.

SPA-149-50.[1]  Moreover, Shkreli's arguments based on New York law do not

introduce new factual subjects.  The core argument is the same one Shkreli has

always made—to obtain disgorgement against him, the Plaintiffs must prove

Shkreli enjoyed ill-gotten gains from the scheme.  Had Plaintiffs seen every word

of Shkreli's appeal brief ahead of time, the trial would have been exactly the same.

Even if not formally preserved, this Court should exercise its discretion to

consider New York law, including the extent to which it is controlling under *Erie*.

This Circuit employs "broad discretion to consider issues not raised in the District

Court," and the decision is "a prudential one."  *Booking v. Gen. Star Mgmt. Co.*,

254 F.3d 414, 418 (2d Cir. 2001).  This Court exercises this discretion where (1)

"the issue is purely legal" with "no need for additional fact-finding" or (2) "where

consideration of the issue is necessary to avoid manifest injustice."  *Krumme v.*

*WestPoint Stevens Inc.*, 238 F.3d 133, 141-42 (2d Cir. 1996) (quotations omitted).

Both justifications apply here.

Such discretion is appropriate here.  First, *Erie* is a pure legal issue, as are

choice-of-law issues generally.  *Booking*, 254 F.3d at 419 (noting appellate courts

"often opt to consider" choice-of-law issues not raised below).  Courts of Appeals

---

[1] For the same reason, the Court should also reject State Plaintiffs' request that the Court remand this case "for a determination of the disgorgement amount Shkreli owes."  State Br. 41 n.9.

"may and often should" apply "unbidden" the correct governing law, rather than apply an incorrect rule of law to the parties' circumstances." *Williams-Guice v. Bd. of Educ. of City of Chicago*, 45 F.3d 161, 164 (7th Cir. 1995).

Second, consideration of the issue is necessary to avoid manifest injustice because State Plaintiffs' recovery "turned on [the] issue that [the] district court declined to address." *24/7 Records v. Sony Music Ent., Inc.*, 429 F.3d 39, 46-47 (2d Cir. 2005). Plaintiffs' federal-law claims did not support disgorgement claims at all, so the parties turned to New York law for an available disgorgement remedy. The district court then turned *back* to federal law to invoke a joint-and-several remedy that is unavailable in New York. State Plaintiffs are free to defend this back-and-forth application of state and federal law. But it would be unjust to cut off review of that question entirely on grounds of forfeiture. Under either or both prudential reasons, the Court should consider whether New York law precludes the disgorgement judgment against Shkreli, starting with the *Erie* question.

### B. A Federal Court Hearing State-Law Claims Cannot Order a Final Monetary Judgment, Whether Equitable or Legal, That Is Unavailable Under State Law

State Plaintiffs are wrong to suggest that federal courts hearing state-law claims can order equitable remedies that are entirely unavailable in state court. *See* State Br. 31-34. In making this assertion, State Plaintiffs rely on a single decision by this Court from over 40 years ago, *Perfect Fit*.

In an earlier decision in the same lawsuit, this Court found that plaintiff had established a right to an injunction under New York law. *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 952-54 (2d Cir. 1980) ("*Perfect Fit I*"). A year later, the Court considered whether the injunction could include a recall provision. *Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 646 F.2d 800, 805 (2d Cir. 1981) ("*Perfect Fit II*"). The Court held that state law could not preclude the district court from adding that provision to the injunction because "[s]tate law does not govern the scope of the equity powers of the federal court" even where "state law supplies the rule of decision"; a federal court "may afford an equitable remedy" for a state-law right "even though a State court cannot give it." *Id.* at 806 (quotations omitted). Although not necessary to resolve this appeal, the better reading of *Perfect Fit II* is that its discussion of "equity powers" and "equitable remed[ies]" are references to permanent injunction orders specifically, not literally all equitable remedies.[2] But at its broadest possible reading, *Perfect Fit II* suggests that the threshold availability of an equitable remedy against a defendant is determined

---

[2] Equitable monetary remedies were not before the Court in *Perfect Fit II*. Moreover, unlike equitable monetary awards, a permanent injunction is forward-looking, and implicates the court's ongoing role in supervising and enforcing its terms, much more an issue of "process" that *Erie* leaves up to federal law.

solely by state law, and that federal courts may look beyond state law to tailor the scope of the remedy.[3]

Other Second Circuit precedents before and after *Perfect Fit II* apply state law on issues of equitable remedies, *see* Shkreli Br. 20-21 (citing cases), and state law on the availability of disgorgement, without reference to anything resembling federal disgorgement law. *See, e.g.*, *Icebox-Scoops, Inc. v. Finanz St. Honore, B.V.*, 715 F. App'x 54, 57 (2d Cir. 2017) (summary order) (holding disgorgement not available under New York law); *Scienton Techs., Inc. v. Computer Assocs. Int'l, Inc.*, 703 F. App'x 6, 10 (2d Cir. 2017) (summary order) (same); *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 747 F.2d 81, 92-93 (2d Cir. 1984) (same).

State Plaintiffs misconstrue *Perfect Fit II* to mean that state law places no limits on federal court equitable remedies. By their theory, a federal court may award millions in disgorgement against a defendant who would face no liability at all in state court. This cannot be the law. Under *Erie*, the "outcome of the

---

[3] The holdings of both cases cited in *Perfect Fit* are similarly limited. *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 108-09 (1945); *Clark Equip. Co. v. Armstrong Equip. Co.*, 431 F.2d 54, 57 (5th Cir. 1970).

*See also* Charles Alan Wright et al., *Federal Practice & Procedure*, § 4513 (3d ed.) ("[A] federal court, *although perhaps limited by state jurisprudence on the question of whether the injunction remedy may be granted*, is free—*if the answer to the basic question is affirmative*—to decide for itself what the scope and content of that injunction should be." (emphasis added)).

litigation" should be "substantially the same" in federal court as in state court. *York*, 326 U.S. at 109; *see also* Shkreli Br. 22-23.  Even after *Perfect Fit II*, the Supreme Court has proclaimed that federal courts may not "alter[] the rights themselves, *the available remedies*, or the rules of decision by which the court adjudicate[s] either."  *Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407-08 (2010) (emphasis added).  Accordingly, the district court here erred by imposing a disgorgement judgment against Shkreli that disregarded New York law limitations on disgorgement.[4]

### C.  New York Law Does Not Permit Disgorgement Against a Defendant Who Has Not Been Shown to Have Received Ill-Gotten Gains

New York law does not permit joint-and-several disgorgement here, and State Plaintiffs are wrong to argue otherwise.  State Br. 34-40.  The authorities State Plaintiffs cite are either inapposite or tend to validate the distinction between disgorgement and other equitable monetary remedies.  In any event, the task of a federal court under *Erie* is to assess how a state's highest court would rule on an issue were it deciding the issue now.

---

[4] It does not help State Plaintiffs to argue that "the Donnelly Act under which New York sued here was intended to provide remedies consistent with those provided by federal jurisprudence."  State Br. 33.  The pertinent federal analogues here—the FTC Act and the Sherman Act—foreclose disgorgement altogether.  Shkreli Br. 24-26; SPA-10.

The only recent pronouncements from the New York Court of Appeals make clear that it sees the monetary awards issued in federal securities cases— disgorgement against defendants who received no ill-gotten gains—as entirely foreign to New York law. *See* Shkreli Br. 27. State Plaintiffs are wrong that *J.P. Morgan Securities Inc. v. Vigilant Insurance Co.*, 37 N.Y.3d 552 (N.Y. 2021), set apart only federal cases requiring defendants to disgorge profits obtained by "innocent" third parties. State Br. 39-40. The Court of Appeals contrasted New York's notion of disgorgement against federal cases disgorging amounts from a defendant that were "*wrongfully obtained* by third parties." *J.P. Morgan*, 37 N.Y.3d at 567 (emphasis added). The Court of Appeals has left no doubt on this subject.

State Plaintiffs conflate matters by citing several cases that involve awards for joint-and-several *restitution*, not disgorgement. *See Matter of People v. Orbital Publ. Grp., Inc.*, 193 A.D.3d 661, 662 (N.Y. App. Div. 2021); *City of New York v. Lead Indus. Ass'n*, 190 A.D.2d 173, 176 (N.Y. App. Div. 1993); *People v. 21st Century Leisure Spa Int'l*, 153 Misc.2d 938, 939 (N.Y. Sup. Ct. 1991). Put simply, disgorgement is about gains; restitution is about loss. Under New York law, restitution is based on proof of a plaintiff's own losses (as opposed to a defendant's profits), so joint-and-several restitution may be imposed based on any loss the defendant helped cause, including through concerted activities with co-defendants,

whether or not that defendant gained anything. *See People v. Kim*, 91 N.Y.2d 407, 412 (N.Y. 1998) (discussing "joint-and-several liability on all perpetrators for the *entire loss of the victim* caused by their concerted action" (emphasis added)). Because plaintiffs bear the evidentiary burden of proving which defendants caused their loss, *see People ex rel. Vacco v. Appel*, 258 A.D.2d 957, 958 (N.Y. App. Div. 1999), joint-and-several restitution has long been permitted by New York courts. Disgorgement, in contrast, relieves plaintiffs of proving any loss causation by allowing them to recover upon proving only a defendant's net gain.

State Plaintiffs cite older awards that were likewise premised on losses.[5] In all three cases, plaintiffs sued corporate directors on behalf of the corporation for unlawful gain at the expense of the corporation. *Bosworth v. Allen*, 168 N.Y. 157, 165 (N.Y. 1901); *Asphalt Constr. Co. v. Bouker*, 150 A.D. 691, 692-93 (N.Y. App. Div. 1912); *Pollitz v. Wabash Ry. Co.*, 167 A.D. 669, 685 (N.Y. App. Div. 1915). The reasoning in each case makes clear that joint-and-several liability rested on proof of the corporation's loss, not defendants' gains. In *Bosworth*, the Court of Appeals justified its joint-and-several award because the defendants' ill-gotten profits were treated as the corporation's "property," and, "[t]he loss of money by

---

[5] Though older cases may use the terms "restitution" and "disgorgement" interchangeably, or use different terms altogether, they apply a strict distinction between loss-based and gain-based remedies, as described below.

the corporation" justified the award. 168 N.Y. at 167. Similarly, in *Bouker*, the First Department reasoned that the plaintiff corporation's "funds were diverted," and defendants could be ordered to "*restore* to the corporation the entire sum which they actively participated in diverting." 150 A.D. at 693 (emphasis added). And in *Pollitz*, the First Department "compel[led] restitution," meaning "the restoration of [the corporation's] funds to its treasury." 167 A.D. at 686. These cases make clear: a joint-and-several awards are not disgorgement awards, they involve proof of loss, not ill-gotten gains.

State Plaintiffs overlook these features in their response to two cases cited in Shkreli's Opening Brief —*Mack v. Latta* and *Wendt v. Fischer*. In *Mack*, 178 N.Y. 525 (N.Y. 1904), the Court of Appeals recognized that disgorgement could not lie against the directors of the corporation because the corporation itself had received the plaintiff's payment. *Id.* at 529. Recovery was available against the directors *not* as a matter of equity, but because they "could not escape" a "judgment for *such damages as plaintiff sustained*" in an action "at law." *Id.* (emphasis added). The Court of Appeals permitted the plaintiff to move forward against both the corporation and the directors solely "to prevent multiplicity of suits."[6] *Id.* at 530.

---

[6] Federal courts today would not need to make such a specification because they no longer distinguish between legal and equitable actions. *See Corley v. United States*, 11 F.4th 79, 84 (2d Cir. 2021) (citing Fed. R. Civ. P. 1).

State Plaintiffs argue the limits articulated for disgorgement in *Wendt v. Fischer*, 243 N.Y. 439, 443 (N.Y. 1926), merely reflected the absence of wrongdoing by the individual brokers, State Br. 39, but that is demonstrably incorrect. Then-Judge Cardozo concluded in no uncertain terms that the brokers violated their duties of loyalty. *See Wendt*, 243 N.Y. at 444. They were not personally liable for *the company's* profits, however, because they "had no share" in them. *Id*. (emphasis added). Elsewhere, the Court of Appeal confirmed that it regarded joint-and-several liability as relevant only for loss-based remedies when it concluded that it "did not need to consider" joint liability considering the absence of relevant losses. *Id.*

The decision in *212 Investment Corp. v. Kaplan*, 16 Misc.3d 1125(A) (N.Y. Sup. Ct. 2007), did not apply New York law. The court was reviewing an arbitration award pursuant to the arbitration panel's "broad equitable powers under AAA Rule 43(a)." *See id.* at *10 (citing *federal* cases for the proposition that "a significant body of authority" permits joint-and-several disgorgement).

### D. The Laws of Other Plaintiff States Cannot Support Disgorgement for Ill-Gotten Gains from Nationwide Sales

State Plaintiffs assert that, should the Court find joint-and-several disgorgement prohibited by New York law, the Court can turn to the law of any of the other Plaintiff States to affirm the order. State Br. 41-43. But the district court's order relied on New York claims in lieu of other state-law claims because

the conduct at issue occurred in New York. State Plaintiffs cite no authority that would permit the remedy awarded here: joint-and-several disgorgement based on gains derived from *national* sales.

New York was the only State Plaintiff with a legal basis to seek redress for nationwide Daraprim sales. The district court held it "unnecessary to decide" whether other States could do so because the New York Attorney General could seek disgorgement for everyone. SPA-11. "To the extent the defendants violated either the federal or state statutes at issue here, they did so from *decisions made and contracts executed in New York.*" SPA-11 (emphasis added); *see also* SPA-14 (citing "a State's quasi-sovereign interest . . . to seek redress for illegality occurring within its borders"). In contrast, State Plaintiffs point to no jurisdiction wherein any of them could seek a nationwide joint-and-several disgorgement remedy. *See* State Br. 41-43.

### E. Federal Law Does Not Permit Disgorgement Against Shkreli, on a Joint-and-Several Basis or Otherwise

Even if federal law were relevant, *see* State Br. 23-29, the district court erred by concluding it permits joint-and-several disgorgement against Shkreli purely based on his deep involvement in the multi-defendant scheme.

Under *Liu,* there is a clear requirement that any disgorgement award not be "punitive when applied to multiple individuals." 140 S. Ct. at 1949. When the *Liu* Court remanded to the Court of Appeals to consider whether a multi-defendant

award was non-punitive, it focused not on their involvement in the scheme but the extent to which they both benefited from it. *Id.* (questioning whether "one spouse was a mere passive recipient of profits" or "that their finances were not commingled," or "that one spouse did not enjoy the fruits of the scheme"). In their brief, State Plaintiffs simply ignore this non-punitive requirement and devote pages to the separate requirement that the defendant was meaningfully involved in the group's concerned wrongdoing. State Br. 23-28. Excess focus on one of *Liu*'s requirements, however, does not somehow eliminate the other. Here, Plaintiffs offered no evidence and obtained no findings that the award against Shkreli would be non-punitive, akin to the commingling issues raised in *Liu*.

State Plaintiffs are also wrong that federal standards place the burden on Shkreli to show the profits he did *not* obtain. *See* State Br. 28-29. The burden shifts to the defendant only once plaintiffs demonstrate a "reasonable approximation" of his profits. *SEC v. Razmilovic*, 738 F.3d 14, 31 (2d Cir. 2013). State Plaintiffs have never alleged any approximation of Shkreli's profits, only Vyera's. *See* A-428; A-789; SPA-148 ("Shkreli's Liability for *Vyera's* Excess Profits" (emphasis added)). And as a matter of hornbook corporate law, courts presume that a shareholder does not personally enjoy beneficial ownership of assets that belong to a corporation. *See Waste Conversion Techs., Inc. v. Warren Recycling, Inc.*, 191 F. App'x 429, 434 (6th Cir. 2006), *abrogated on other*

*grounds by Sanderson Farms, Inc. v. Gasbarro*, 299 F. App'x 499, 505 n.2 (6th Cir. 2008).

## II.    THE PERMANENT INJUNCTION IS OVERLY BROAD

The Injunction is unprecedented in its scope, combining its indiscriminate ban from the vast and varied pharmaceutical industry, its lifetime duration, and its prior restraint on Shkreli's First Amendment rights.  The FTC and State Plaintiffs offer no support for the counter-intuitive remedy of enforcing antitrust laws by permanently excluding a person from an entire market.  Instead, in several respects, their arguments demonstrate the Injunction's overbreadth.

### A.    Decisions Cited by the FTC and State Plaintiffs Affirm the Unprecedented Overbreadth of the Industry-Wide Ban

The FTC and State Plaintiffs have found no antitrust case in which a court imposed a lifetime, industry-wide ban on a defendant, much less for an industry as vast as the pharmaceutical industry.  Instead, Plaintiffs rely principally on cases involving criminal and quasi-criminal conduct, such as consumer fraud and racketeering.  These precedents are dubious benchmarks for Shkreli's case, which involves civil antitrust violations subject to a rule-of-reason analysis.  Rule-of-reason cases often reside on an unclear line "between *anti*competitive behavior, which is illegal under federal antitrust law, and *hyper*competitive behavior, which

17

is not." *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 982 (9th Cir. 2020).[7] Antitrust laws are actively enforced in the pharmaceutical industry, and Plaintiffs' inability to cite a single comparable order from this field is telling.

Plaintiffs' best case is *FTC v. Pukke*, 53 F.4th 80 (4th Cir. 2022), a consumer protection case. There, in the face of a thinly briefed overbreadth argument, the Fourth Circuit affirmed a district court order indefinitely barring one defendant, Pukke,[8] from the real-estate industry. *Id.* at 110. Importantly, the district court decision reveals that the judge justified an industry-wide ban on Pukke in part based on findings of the "clear transferability" of Pukke's acts of fraud to other ventures throughout the real-estate industry. *See In re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373, 393-96 (D. Md. 2020). If anything, *Pukke* illustrates exactly the "fencing in" analysis that the district court here neglected to apply as to Shkreli.

---

[7] Both the district court and the FTC repeatedly cite Shkreli's comment that he "would have raised prices higher," FTC Br. at 13 (quoting Supp-90), as evidence of his remorselessness. But even this is taken out of context. Shkreli was commenting on his "primary duty" to shareholders: "No one wants to say it, no one's proud of it, but this is a capitalist society, capitalist system and capitalist rules, and my investors expect to me [sic] to maximize profits[.]" *Id.* 90-91.

[8] Pukke's fraudulent conduct was spectacular for a non-criminal action, involving over a decade of fraud across multiple industries and continents, contempt citations, an obstruction of justice conviction, and numerous outright lies to the very judge who imposed the lifetime ban. *See In re Sanctuary Belize Litig.*, 482 F. Supp. 3d 373, 393-96 (D. Md. 2020).

In his opening brief, Shkreli highlighted that his conduct would have no conceivable relevance in multiple pharmaceutical industry segments.[9]  Shkreli Br. at 45-47.  The FTC responds with a parade of horribles: bad actors may invent or misuse patents to impede generic or OTC competitors, FTC Br. 46-48, and they may enter into illicit profit-sharing agreements, FTC Br. 49.  True and true.  However, this lawsuit has nothing to do with such schemes.  More on point, the FTC asserts that "generic companies can harm competition by entering exclusive-supply agreements to block rivals," FTC Br. 49.  But on this appeal, Shkreli has proposed modifying the Injunction to prohibit him from using such agreements to impair the development of generics.  Shkreli Br. 60.  That would be a defensible restraint.  The Injunction here is not defensible because it bans Shkreli from an entire industry for misdeeds he undertook within one narrow sector, after the issuing court never considered whether his misdeeds would be transferable.

Plaintiffs cite other examples of purported "industry" bans, but only by using the term "industry" very loosely.  In *Ford Motor Co. v. United States*, 405

---

[9] Contrary to the FTC's suggestion, Shkreli's trial counsel never made any concessions inconsistent with this argument.  FTC Br. at 46-47.  Rather, at summation, Shkreli's trial counsel opposed any finding of liability and, consequently, any injunctive relief, but proposed that, were some restraint necessary, it should be limited to the conduct alleged in the complaint, namely exclusive supply, restrictive distribution, and data blocking agreements.  A-2289.  This was not a concession at all, and certainly did not purport to waive other restrictions that might be fair and prudent.

U.S. 562 (1972), the defendant was barred from the manufacture of "spark plugs," *id.* at 572, not from the automobile industry as a whole. Likewise, the "business" barred in *FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001), was the "credit repair business," a narrow prohibition that nevertheless permitted participation in broader credit-related services. *Id.* at 954. And in *FTC v. AMG Cap. Mgmt., LLC*, the Ninth Circuit affirmed enjoining the defendant from "engaging in consumer lending." 910 F.3d 417, 428 (9th Cir. 2018). The defendant was not barred from the financial services industry, or even lending generally.[10]

In the other federal cases cited by Plaintiffs, courts enjoined defendants from specified conduct and business activities, rather than banning them from entire industries—precisely the approach that the district court here should have pursued. *See United States v. Carson*, 52 F.3d 1173 (2d Cir. 1995) (affirming injunction barring defendant from participating in labor organizations, not any industry); *SEC v. Posner*, 16 F.3d 520 (2d Cir. 1994) (affirming injunction barring defendant from serving as an officer or director in a public company, not any industry); *FTC v. Lalonde*, 545 F. App'x 825, 831 (11th Cir. 2013) (summary order) (affirming

---

[10] In *United States v. Private Sanitation Industry Association of Nassau/Suffolk, Inc.*, 995 F.2d 375 (2d Cir. 1993) (per curiam), the defendant was barred from waste carting and associating with organized crime, but did not ask this Court to narrow the scope of the injunction, and the injunction was premised on RICO's unique statutory provisions (Shkreli Br. 41), not, as here, the district court's equitable powers. *See id.* at 377-78.

injunction barring defendant from engaging in debt relief, mortgage lending, telemarketing services, and obtaining consumer data); *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 536 (S.D.N.Y. 2000) (barring defendants from participation in multi-level marketing schemes; not participation in financial services industry, or even sales or marketing); *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1097 (9th Cir. 2014) (affirming permanent injunction barring the defendant from engaging in a "variety of marketing *tactics*" and a "variety of advertising *practices*.") (emphases added); *CFPB v. Nesheiwat*, No. 21-56052, 2022 WL 17958636, at *3 (9th Cir. Dec. 27, 2022) (mem. decision) (barring defendant from engaging in debt relief, mortgage loans, telemarketing service, and obtaining consumer data; not participation in financial services industry).[11]

## B. The Permanent Injunction's Industry-Wide Ban Is Unprecedented Under New York Executive Law § 63(12)

The other purported industry-wide bans handed down by New York courts premised on New York Executive Law § 63(12) and cited by the State Plaintiffs

---

[11] *See also FTC v. Micom Corp.*, No. cv 96-0472 (SS), 1997 WL 226232, at *4 (S.D.N.Y. Mar. 12, 1997) (barring defendants from the promotion, advertising, marketing, or sale of (1) application support services for federal permits, and (2) investments or offerings involving federal permits; not participation in financial services industry); *FTC v. Digital Altitude, LLC*, No. LA cv18-00729 JAK (MRWx), 2018 WL 4944419, *2-3 (C.D. Cal. July 26, 2018) (default judgment in consumer protection case involving fraudulent business coaching services, barring conduct such as selling business coaching programs, credit card laundering, defrauding payment processors, and making certain types of misrepresentations to clients).

similarly demonstrate the unprecedented nature of the Injunction's industry-wide ban. None of these injunctions constituted an industry-wide ban as broad as that imposed by the district court here.

The First Department decision in *State v. Fashion Place Associates*, 224 A.D.2d 280 (N.Y. App. Div. 1996), concerned fraud—not antitrust—and did not result in an industry-wide ban. Rather, the defendant, having misrepresented a building's tax benefits and rent regulation status, was enjoined from engaging in acts involving the offer and sale of real estate securities. He was in no sense barred from the securities or real estate industries as a whole.[12] *Matter of People v. Imported Quality Guard Dogs, Inc.*, 88 A.D.3d 800 (N.Y. App. Div. 2011), likewise, concerned fraud and did not impose an industry-wide ban. Shkreli Br. 43.

---

[12] Trial court cases cited by the State Plaintiffs (all fraud, not antitrust cases) also do not provide precedent for the Injunction here. In *People v. Northern Leasing Sys., Inc.*, 70 Misc. 3d 256, 279-280 (N.Y. Sup. Ct. 2020), *aff'd*, 193 A.D.3d 67 (N.Y. App. Div.), *lv. dismissed*, 37 N.Y.3d 1088 (N.Y. 2021), the injunction concerned conduct, barring the defendants from equipment leasing or collecting debts under equipment finance leases.

In *State v. Midland Equities of N.Y.*, 117 Misc. 2d 203, 208 (N.Y. Sup. Ct. 1982), defendants were enjoined from engaging in the business of mortgage foreclosure consultation, offering legal advice to consumers, and soliciting legal business, *not* the real estate industry as a whole or even the sub-industry of home mortgages.

In sum, the decisions cited by the FTC and State Plaintiffs concerned substantially narrower injunctions that prohibited participation in particular industry subsectors, barred specific business activities, or were otherwise tailored to redress the defendants' unlawful conduct. These cases illustrate how and why the Injunction against Shkreli should be narrowed.

## C. The District Court Erred by Imposing an Injunction for Shkreli's Lifetime

The FTC never attempts to explain how a lifetime ban here (as opposed to a shorter ban) comports with the basic requirements that a permanent injunction be "no broader than necessary to cure the effects of the harm caused by the violation," and that it "not impose unnecessary burdens on lawful activity." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 843 F.3d 48, 72 (2d Cir. 2016). The Injunction subjects Shkreli, who is 39 years old, to decades of restraint, no matter the degree to which his desired conduct may be lawful and distinct from district court's findings. The lifetime duration aggravates the Permanent Injunction's other overbreadth issues, as this expansive remedy will ultimately fall to new generations of judges, FTC enforcement lawyers, and attorneys general.

The FTC's initial argument is that Shkreli might not be prejudiced by the lifetime ban, FTC Br. at 40, but this is beside the point. To maintain this extent of equitable restraint over Shkreli's career, the FTC must explain why any shorter duration is inadequate.

23

The FTC's main argument is that Shkreli *could* repeat his schemes for the rest of his life—a generic proposition that could be said of any defendant found liable for anything, even rule-of-reason antitrust violations. The FTC thus posits that lifetime bans are "routine," FTC Br. at 50, but, again, it points to consumer fraud cases, typically imposing a lifetime ban on telemarketing—the *conduct* by which the defendant committed the underlying fraud. The FTC also misquotes Shkreli stating he planned to continue his scheme "forever" and "in perpetuity." FTC Br. at 22, 51. That is not what he said. Shkreli stated in an email that Daraprim was a valuable drug because patients generally stayed on it "forever." Appellee's Supp. App'x at 86. And he valued the asset of the drug at $600 million "in perpetuity" only if generic competition remained absent. *Id.* at 69. These statements hardly bear on or justify the lifetime duration of the district court's injunction.

The FTC attempts to distinguish *ES Development, Inc. v. RWM Enterprises, Inc.*, 939 F.2d 547, 558 (8th Cir. 1991), as having "little pertinence here because the violation involved a discrete set of events targeted at a specific and time-limited construction project." FTC Br. at 50. But Shkreli's conduct was also limited—concerning at most three relatively obscure drugs and the particular technique of employing restrictive distribution and supply agreements to impair development of generic alternatives (which now exist). SPA-41-44, SPA-50-57,

24

SPA-72-88. A lifetime duration is not proportionate to the conduct found by the district court any more than it was in *ES Development*.

### D. The District Court Erred by Imposing Unjustified Restraints on Expressive Activities

The Injunction, with its express ban on "public statements," is an egregious prior restraint. State Plaintiffs, in head-spinning logic, argue that "[t]he injunction prohibits '*action* [to influence pharmaceutical companies]. . .'—not expression standing alone," and "merely recognizes that 'public statements' may be 'deemed [such] an action . . . .'" State Br. 52. The FTC likewise attempts to characterize the Injunction as barring only the "expressive component" of restrained *conduct*, FTC Br. at 52, citing cases that uphold injunctions that "incidentally affect expression." FTC Br. at 55.

Plaintiffs are talking about a very different injunction. Paragraph II(D) explicitly forbids "public statements"; the effect on speech is not "incidental" to some other restraint. It proscribes Shkreli from publicly speaking about any Pharmaceutical Company if he intends (or someone would reasonably *think* he intends) to "influence" people in the industry. Any influence Shkreli may hold solely as a public commentator is at the core of his First Amendment rights. *See Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 239 F.3d 172, 176 (2d Cir. 2001) (injunction proscribing defamatory or harassing speech, when intended to "exert what [the petitioner] perceives as

25

legitimate social pressure" constitutes a "prior restraint" subject to "a 'heavy presumption' against its constitutional validity").

The FTC and State Plaintiffs have not cited any authority upholding such an explicit and broad order silencing a person from public comments on an entire industry. Each case they cite involved narrow forms of speech or association closely tied to, or implicit in, prohibited conduct. *See, e.g.*, *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 776 (1994) (affirming noise restrictions against anti-abortion protesters and those acting in concert with them); *Jews for Jesus, Inc. v. Jewish Community Relations Council of N.Y., Inc.*, 968 F.2d 286, 296 (2d Cir. 1992) (affirming injunction against coercive boycott intended solely to compel the cancellation of a contract); *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51-52 (2d Cir. 1996) (defendant prohibited from contacting associates of plaintiff, victim of defendant's tortious activity); *id.* (defendant enjoined from making false statements as to her ownership interest in company); *Carson*, 52 F.3d 1173 (2d Cir. 1995) (affirming injunction against civil RICO defendant prohibiting him from associating with organized crime figures); *see also California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) (not even an injunction case).

The restriction on Shkreli's speech constitutes a prior restraint, and the Injunction should be modified to eliminate any restriction on Shkreli's public comments.

### E.     The Injunction's Overbreadth Issues Are Compounded by Unnecessary Vagueness

In addition to its overbreadth, Shkreli set forth in his opening brief the myriad ways in which the terms of the Injunction are vague. *See* Shkreli Br. at 56-60. The FTC and State Plaintiffs' response is simply to recite language from the injunction, as though repetition of its vague language made it clear.

Neither the FTC nor the State Plaintiffs offer a persuasive reason why the undefined terms "pharmaceutical industry" and "participating" cannot be confined to the Injunction's enumerated restrictions, which might or might not have been intended despite the word "including" in the Injunction's preamble. Shkreli Br. 57-58.[13] The FTC addresses this point, arguing that the Injunction's open-ended meaning was "by design," in order to capture any form of participation "outside the enumerated list of examples." FTC Br. 61. Vagueness by design is no more consistent with Rule 65(d), which prohibits injunctions that purport to reach unenumerated conduct.

---

[13] Plaintiffs argue that Shkreli waived an objection to the term "pharmaceutical industry." Plaintiffs assert, however (FTC Br. 57-58; State Br. 57, that term takes its meaning from the Injunction's definition of "Pharmaceutical Company," to which Shkreli did object. SPA-156-57. Regardless, the term "pharmaceutical company" appears only in the preamble and is problematic only because it potentially reaches beyond the Injunction's enumerated provisions. Shkreli objected to the use of the word "including," SPA-158, and that objection is preserved.

Even on this appeal, Plaintiffs cite the enumerated provisions as outer boundaries, alerting Shkreli to ways in which he is *not* restrained. *E.g.*, FTC Br. 58 (Shkreli not barred from involvement in dietary supplements); FTC Br. 59 (Injunction "makes plain" which conversations with friends are off-limits); *id.* 60 (positing the Injunction does not bar Shkreli from advocacy unless he works for or makes public comments about a Pharmaceutical Company); State Br. 57 (term "pharmaceutical industry" limited to defined term for "Pharmaceutical Companies"). But if those provisions are mere illustrations, then the boundaries are illusory.

Plaintiffs cite other cases upholding the term "participating," but these cases involve statutory text, or injunctions unchallenged on vagueness grounds. *United States Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 576-77 & n.21 (1973); *Nat'l Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 23-25 (D.C. Cir. 2009); *Gill*, 265 F.3d at 957-58; *Carson*, 52 F.3d at 1183-85; *Private Sanitation*, 995 F.2d at 377-78. The State Plaintiffs embrace construing this term by "ordinary common sense." State Br. 58. The Injunction's enumerated provisions, however, already reach beyond a common sense reading of "participating" in the pharmaceutical industry. By ordinary common sense, making public statements about a pharmaceutical company is not "participating in the pharmaceutical industry"—but that conduct is squarely (and unconstitutionally) prohibited by the Injunction.

Conversely, the FTC insists the order be "read literally" to the point of banning Shkreli from serving as a drugstore cashier. By that approach, the Injunction "read literally" also bars Shkreli from participating in the industry as a consumer (i.e., filling a prescription). That would be absurd, but there is no written limitation that "literally" confines the Injunction from reaching this everyday activity. Such an absurdity lies at the intersection of overbreadth and vagueness, and the district court's unprecedented Injunction should be vacated and modified.

## CONCLUSION

For the foregoing reasons, the district court's disgorgement judgment against Shkreli should be reversed and the Injunction should be vacated and modified.

Dated: New York, New York
April 13, 2023

SHER TREMONTE LLP

By:  /s/ Kimo S. Peluso
Kimo S. Peluso
Noam Biale
90 Broad Street, 23rd Floor
New York, NY 11201
Telephone: (212) 202-2600
Facsimile: (212) 202-4156
Email: kpeluso@shertremonte.com

*Attorneys for Defendant-Appellant Martin Shkreli*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant-Appellant Martin Shkreli

certifies pursuant to Federal Rule of Appellate Procedure 32(g)(1) that the

foregoing brief contains 6,843 words, excluding the parts of the brief exempted by

Federal Rule of Appellate Procedure 32(f), according to the Word Count feature on

Microsoft Word; and that the brief has been prepared in 14-point Times New

Roman font.

Dated:  New York, New York
       April 13, 2023


               */s/ Kimo S. Peluso*
                  Kimo S. Peluso
              SHER TREMONTE LLP