22-728
Federal Trade Commission, et al. v. Shkreli

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of January, two thousand twenty-four.

PRESENT:
        BARRINGTON D. PARKER,
        MYRNA PÉREZ,
        SARAH A. L. MERRIAM,
        *Circuit Judges.*

---

Federal Trade Commission, State of New York, State of California, State of Ohio, Commonwealth of Pennsylvania, State of Illinois, State of North Carolina, Commonwealth of Virginia,

    Plaintiffs-Appellees,

    v.                                                  No. 22-728

Martin Shkreli, individually, as an owner and former director of Phoenixus AG and as a former executive of Vyera Pharmaceuticals, LLC,

    Defendant-Appellant,

Vyera Pharmaceuticals, LLC, Phoenixus AG, Kevin Mulleady, individually, as an owner and director of Phoenixus AG and as a former executive of Vyera Pharmaceuticals, LLC,

Defendants.

---

FOR PLAINTIFF-APPELLEE
FEDERAL TRADE COMMISSION: BRADLEY D. GROSSMAN, Attorney, Federal Trade Commission, Washington, D.C.

FOR STATE PLAINTIFFS-APPELLEES: PHILIP J. LEVITZ, Assistant Solicitor General, for Letitia James, Attorney General for the State of New York, for the State Appellees.

FOR DEFENDANT-APPELLANT: KIMO S. PELUSO (Noam Biale, *on the brief*), Sher Tremonte LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the February 4, 2022, judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellees Federal Trade Commission ("FTC"); the commonwealths of Pennsylvania and Virginia; and the states of California, Illinois, New York, North Carolina, and Ohio filed suit against Defendant-Appellant Martin Shkreli and others in the United States District Court for the Southern District of New York. Plaintiffs-Appellees alleged violations of federal and state antitrust laws for conduct involving the distribution of Daraprim, a brand-name drug used to treat a parasitic infection called toxoplasmosis. Shkreli's co-defendants settled before trial.

Following a seven-day bench trial, the district court found that Plaintiffs-Appellees carried their burden of establishing that Shkreli committed antitrust violations. The district court issued a final judgment that, among other things: (1) ordered disgorgement against Shkreli jointly and severally with defendant Vyera; and (2) entered a permanent injunction imposing a lifetime ban on Shkreli from the pharmaceutical industry. This appeal followed.

For the reasons set forth below, we affirm. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference only as necessary to explain our decision.

**I.** **<u>Disgorgement</u>**

Shkreli argues for the first time on appeal that the district court erred by relying on federal law remedies in imposing joint and several disgorgement on him under New York law. Though Shkreli does not dispute that New York law allows for disgorgement relief, he contends that New York law precludes disgorgement on a joint and several basis. Shkreli never made this argument to the district court, and he proffers no reason now for his failure to raise the arguments there. Additionally, in the district court, Shkreli himself relied exclusively on federal equity jurisprudence in contending that he should not be ordered to disgorge profits. *See* Dist. Ct. ECF No. 462 at 4-6; *see also* Dist. Ct. ECF No. 860 at 1234-35 (Shkreli's trial counsel arguing "in terms of equitable monetary relief, your Honor, the *Liu* [*v. SEC*, 140 S. Ct. 1936 (2020),] case from the Supreme Court says that disgorgement should not be a joint and several remedy"). Therefore, the circumstances here do not persuade us that we should exercise our discretion to address this new argument on appeal. *See Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994) ("Entertaining issues raised for the first time on appeal is discretionary with the panel hearing the appeal."); *see also Doe v. Trump Corp.*, 6 F.4th 400, 410 (2d Cir. 2021). Given his strategic decision in the district court, there is no injustice to Shkreli by us declining to address his new argument.[1]

---

[1] Even if this argument were not waived, it would still fail. We do not read Shkreli's principal case, *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 37 N.Y.3d 552 (N.Y. 2021), to hold that joint and several disgorgement relief is unavailable against codefendants engaged in concerted wrongdoing to wrongfully obtain profits under New York equity jurisprudence.

3

## II. **Permanent Injunction**

Next, Shkreli provides three unpersuasive reasons to disturb the district court's entry of the permanent injunction in this case.

First, Shkreli contends that the district court abused its discretion by entering an overbroad injunction against him that imposes a lifetime ban from the pharmaceutical industry. Second, Shkreli argues that the injunction unconstitutionally limits his public speech. Third, Shkreli asserts that the injunction is not specific enough and that it thus violates Federal Rule of Civil Procedure 65(d). We address each argument in turn below.

First, we note that Section 13(b) of the Federal Trade Commission Act authorizes the FTC to bring actions seeking injunctive relief for violations of the Act. *See* 15 U.S.C. § 53(b). Section 13(b) imposes prospective, not retrospective, relief. *See AMG Cap. Mgmt, LLC v. FTC*, 141 S. Ct. 1341, 1347-48 (2021). Upon a proper showing, a district court may issue a permanent injunction. *See id.*[2]

In general, a district court has broad discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct. *See Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 951 (2d Cir. 1978). Appellate review of the terms of the injunction is limited to whether there has been an abuse of that discretion. *See SEC v. Posner*, 16 F.3d 520, 521-22 (2d Cir. 1994). A district court has abused its discretion if it: (1) based its ruling on an erroneous view of the law, (2) made a "clearly erroneous factual finding," or (3) rendered a decision that "cannot be located within the range of permissible decisions." *SEC v. Dorozhko*, 574 F.3d 42, 45 (2d Cir. 2009) (internal citations and quotation marks omitted).

---

[2] The Donnelly Act was modeled on the federal Sherman Act of 1890, and thus should generally be construed considering federal precedent. *See People v. Rattenni*, 81 N.Y.2d 166, 171 (1993).

We conclude that the district court did not abuse its discretion by imposing a lifetime ban from the pharmaceutical industry on Shkreli because an injunction of that scope was within the range of permissible decisions. The district court found, and Shkreli does not dispute, that Shkreli's illegal scheme was "egregious, deliberate, repetitive, long-running, and ultimately dangerous." Special App'x at 140. The district court found that Shkreli's comprehensive and effective scheme led to the price increase of a life-saving drug, Daraprim, from $17.50 to $750 per tablet and successfully blocked the entry of generic drug competition to maintain Daraprim's inflated price. The district court further found that Shkreli's scheme was far-reaching and was implemented using many means. It pointed to the record demonstrating that Shkreli facilitated extensive research; established at least two companies; recruited and worked through others even while in prison; and took advantage of regulatory requirements designed to safeguard the pharmaceutical industry to carry out his illegal scheme.

The district court's injunction was a reasonable measure to protect the public from the risk of recurring anticompetitive conduct in the pharmaceutical industry by Shkreli. In his direct written testimony, Shkreli indicated that after release from prison, "[i]f I do pursue employment within the pharmaceutical industry… I hope to continue playing a role in the discovery of cures and treatments for rare and life-threatening diseases… and focus on experimental and research-based opportunities related to discovery of new medicines and new uses for existing medicines." App'x at 801. Given Shkreli's pattern of past misconduct, the obvious likelihood of its recurrence, and the life-threatening nature of its results, we are persuaded that the district court's determination as to the proper scope of the injunction was well within its discretion.

Shkreli fares no better in his challenge to Paragraph II(D) of the permanent injunction. Shkreli argued in the district court that imposing Paragraph II(D) without limits would infringe

his free speech rights by prohibiting him entirely from, among other things, using social media to discuss the pharmaceutical industry. In response to Shkreli's concerns, the record reflects that the district court added the following text to Paragraph II(D):

> Shkreli's public statements about a Pharmaceutical Company will be deemed an action taken to influence or control the management or business of any Pharmaceutical Company if Shkreli intended the statement to have that effect or if a reasonable person would conclude that the statement has that effect.

Special App'x at 166.

The district court added this language to set limitations in light of Shkreli's concerns, while also enjoining possible future antitrust violations. In light of that addition, we are persuaded that Paragraph II(D)'s public statement ban is in the range of permissible decisions, preventing possible future antitrust violations without treading on Shkreli's free-speech rights. *See Nat'l Soc'y. of Pro. Eng'rs v. United States*, 435 U.S. 679, 697-98 (1978) ("In fashioning a remedy, the District Court may, of course, consider the fact that its injunction may impinge upon rights that would otherwise be constitutionally protected, but those protections do not prevent it from remedying the antitrust violations."); *see also Jews for Jesus, Inc. v. Jewish Cmty Rels. Council of N.Y., Inc.,* 968 F.2d 286, 296 (2d Cir. 1992) ("[T]he First Amendment provides no defense to persons who have used otherwise protected speech or expressive conduct to force or aid others to act in violation of a valid conduct-regulating statute.").

Lastly, we conclude that the terms of the district court's injunction are sufficiently clear, specific in terms, and described in reasonable detail to satisfy Federal Rule Civil Procedure 65(d). We review de novo whether the injunction complies with Rule 65(d). *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 143 (2d Cir. 2011). "To comply with the specificity and clarity requirements" of Rule 65(d), "an injunction must be specific and definite

6

1   enough to apprise those within its scope of the conduct that is being proscribed." *S.C. Johnson*

2   *& Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240-41 (2d Cir. 2001) (quotation marks omitted); *see*

3   *also* Fed. R. Civ. P. 65(d)(1).  Shkreli contends that the injunction is vague because it lacks

4   definitions for two of its key terms: "participating" in the pharmaceutical industry and

5   "pharmaceutical industry."  But the district court was not required to define unambiguous terms.

6   Terms of an injunction are construed "according to the general interpretive principles of contract

7   law." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 103 (2d Cir. 2006).  Therefore,

8   undefined terms should be given their plain meaning and construed in light of normal usage. *See*

9   *id*.

10          To be sure, "participating" is "taking part" in an undertaking.[3]  In this case, the

11   undertaking is the pharmaceutical industry.  And the district court's injunction, read in context, is

12   sufficiently clear to put Shkreli on notice as to what the "pharmaceutical industry" consists of.

13   The injunction even defines Pharmaceutical Company, and Pharmaceutical Companies

14   undoubtedly make up the pharmaceutical industry.  Therefore, the plain language is hardly

15   vague.  It squarely forbids Shkreli from directly or indirectly *taking part* in any manner in the

16   pharmaceutical industry, including taking any action to directly or indirectly influence or control

17   the management or business of any Pharmaceutical Company.[4]

18          The language of the permanent injunction requires Shkreli to notify the Plaintiffs-

19   Appellees if he wishes to accept "Qualified Employment" in order to provide an opportunity to

20   object.  *See* Special App'x at 166-67.  As the district court made clear, if Shkreli feels that the

---

[3] Merriam-Webster Online Dictionary, https://perma.cc/W6FM-G5PC (last visited January 5, 2024).
[4] The injunction contains a few exceptions: "Shkreli may retain an Ownership Interest in securities that are under the control of the receiver appointed in *Koestler v. Shkreli,* 1:16cv7175;" and may accept "Qualified Employment" "with a Pharmaceutical Company that is not *primarily* involved in the research, Development, manufacture, commercialization, or marketing of Drug Products or [active pharmaceutical ingredients] and" derives less than 10% of its gross revenues from such activity.  Special App'x at 165-66 (emphasis added).

7

Plaintiffs-Appellees have unreasonably objected to appropriate employment, he may apply for relief.  *See Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 437 (1976) ("[S]ound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.") (quoting *Sys. Fed'n No. 91, Ry. Emps.' Dep't v. Wright*, 364 U.S. 642, 647 (1961)).

\*   \*   \*

We have carefully considered Shkreli's remaining arguments and find them to be without merit.  For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court